## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QCE FINANCE LLC, *et al.*,[1] | ) | Case No. 14-_____ ( ) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |

### DEBTORS' MOTION FOR ENTRY OF
### AN ORDER (A) SCHEDULING A COMBINED HEARING
### ON DEBTORS' DISCLOSURE STATEMENT AND PLAN
### CONFIRMATION, (B) ESTABLISHING AN OBJECTION DEADLINE
### AND PROCEDURES FOR OBJECTING TO THE DISCLOSURE STATEMENT, PLAN
### AND ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
### (C) APPROVING SOLICITATION PROCEDURES, (D) APPROVING THE FORM AND
### NOTICE OF THE COMBINED HEARING, (E) WAIVING THE REQUIREMENT
### FOR A MEETING OF CREDITORS AND (F) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), seek entry of an order (the "***Order***"), substantially in the form attached hereto as **Exhibit A**: (a) scheduling a combined hearing (the "***Combined Hearing***") on the (i) adequacy of the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* (as amended from time to time, the "***Disclosure Statement***") and (ii) confirmation of the *Debtors' Joint Prepackaged Plan of Reorganization* (as amended from time to time, the "***Plan***");[2] (b) establishing a deadline and procedures for filing objections to the Disclosure Statement and the Plan, including the proposed assumption pursuant section 365 of title 11 of the United States

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: QCE Finance LLC (7897); American Food Distributors LLC (8099); Quiznos Global LLC (2772); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); QAFT, Inc. (6947); Restaurant Realty LLC (8293); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); National Marketing Fund Trust (4951); The Regional Advertising Program Trust (2035); and TQSC II LLC (8683). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and the Disclosure Statement, as applicable, filed contemporaneously herewith.

Code (the "*Bankruptcy Code*") of certain of the Debtors' executory contracts and unexpired leases (respectively, the "*Executory Contracts*" and "*Unexpired Leases*") and the payment of cure amounts associated therewith (the "*Cure Amounts*"), if any; (c) approving the solicitation procedures (the "*Solicitation Procedures*") used in connection with the Debtors' prepetition solicitation of the Plan described below and further discussed in the Disclosure Statement; (d) approving the form and manner of notice of the Combined Hearing; (e) waiving the requirement that the United States Trustee for the District of Delaware (the "*U.S. Trustee*") convene a meeting of creditors (the "*Creditors' Meeting*") if the Plan is confirmed within 80 days of the Petition Date; and (f) granting related relief.  In support of this motion, the Debtors submit the Declaration of Stuart K. Mathis in Support of First Day Pleadings (the "*First Day Declaration*") and respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are Bankruptcy Code sections 105, 341, 1125, 1126 and 1128, Rules 2002, 3017, 3018, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rules 2002-1, 3017-1 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*").

## BACKGROUND

**A.      General Background**

4.      On the date hereof (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue

2

to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases. No official committees have been appointed or designated.

5.     A description of the Debtors' business and the reasons for filing the Chapter 11 Cases is set forth in the First Day Declaration filed contemporaneously herewith and incorporated by reference as if fully set forth herein.

**B.     Prepetition Restructuring Efforts**

6.     In an effort to right-size their capital structure and position themselves for ongoing success in the current industry and economic environment, beginning in the fall of 2013, the Debtors and their advisors commenced negotiations with the Consenting Parties, and their respective advisors, regarding the terms of a potential restructuring of the Debtors' obligations under the Debtors' various prepetition credit facilities. After months of good faith, arm's length negotiations, the Debtors reached an agreement with the Consenting First Lien Lenders, Avenue and Fortress with respect to a consensual restructuring on the terms set forth in the Plan, and formalized by the Restructuring Support Agreement, a copy of which is attached as Exhibit B to the Disclosure Statement. The Restructuring Support Agreement was executed on March 11, 2014, by approximately 61% of the Holders of First Lien Facility Claims and approximately 99% of the Holders of Second Lien Facility Claims.

7.     Separately, the Debtors have also reached an informal agreement with Vectra with respect to the restructuring of the indebtedness under the Market Fund Trusts Credit Agreement.

8.     The Restructuring Support Agreement requires, as a condition to the Consenting First Lien Lenders', Avenue's and Fortress's respective support of the Plan, that the Debtors, among other things, meet certain agreed upon milestones, including: (a) obtaining entry of the

3

Confirmation Order by no later than June 2, 2014, and (b) the Effective Date of the Plan

occurring no later than June 22, 2014.

**C.    Summary of the Plan**

9.      The Plan, which embodies a settlement and compromise among the Debtors and

the majority of their key stakeholders, will achieve the Debtors' restructuring goals by (a)

reducing the Debtors' total principal amount of senior secured indebtedness by over $400 million

and (b) positioning the Debtors for ongoing growth through, among other things, the amendment

of the First Lien Credit Agreement, execution of the New Delayed-Draw Term Facility

Agreement and the amendment of the Marketing Fund Trusts Credit Agreement.

10.     Specifically, the Plan contemplates, among other things, that:

- Consenting First Lien Lenders will provide the Debtors with a DIP Facility in the amount of $15 million on the terms and conditions set forth in the DIP Credit Agreement.  The DIP Facility will act as a bridge loan for the Debtors to implement and consummate the restructuring transactions contemplated by the Plan and support the Debtors' operations during the Chapter 11 Cases and, on the Effective Date, will be repaid in full in Cash, unless otherwise agreed to by the Debtors and the Holders of such DIP Facility Claims.

- The Reorganized Debtors will enter into the New Delayed-Draw Term Facility Agreement, pursuant to which the Consenting First Lien Lenders will provide the Debtors with access to $25 million, with availability as of the Effective Date, to repay the DIP Facility, pay transaction expenses, fund Cash payments under the Plan and provide the Reorganized Debtors with working capital necessary to run their business (each such use in accordance with the terms of the New Delayed-Draw Term Facility Agreement).

- In full and complete satisfaction, discharge and release of all outstanding obligations under the First Lien Credit Agreement, the Holders of First Lien Facility Claims will (a) receive their Pro Rata share of (i) $200 million under the Amended First Lien Credit Agreement and (ii) 100% of the New Common Interests issued as of the Effective Date, subject to dilution by any New Common Interests issued under the New Management Equity Incentive Plan or by the Remaining Equity to be distributed to Holders of Allowed Unsecured Claims that make the Stock

in Lieu Election, and (b) forego any distribution in respect of their First Lien Facility Deficiency Claims.

- Except to the extent they agree to a less favorable treatment, in full and complete satisfaction, discharge and release of Unsecured Claims against the Debtors, the Holders of such Claims, which include Second Lien Facility Claims, will receive their Pro Rata share of the Company Specified Litigation Proceeds, unless such Holders elect to make the Stock in Lieu Election, following receipt of the Stock in Lieu Election Notice. The Consenting Second Lien Lenders have committed to make the Stock in Lieu Election.

- In full and complete satisfaction of the Marketing Fund Trusts Facility Secured Claim, (i) Reorganized QAFT, solely as trustee for the Reorganized Marketing Fund Trusts, and Vectra will enter into the Amended Marketing Fund Trusts Credit Agreement and (ii) Vectra shall forgo any distribution on account of its Marketing Fund Trusts Facility Guaranty Claim.

- Intercompany Interests in the Debtors, will be Reinstated and the legal, equitable or contractual rights to which Holders of such Allowed Intercompany Interests are entitled shall remain unaltered so as to maintain the organizational structure of the Debtors as it existed on the Petition Date.

- Interests in Holdco will be cancelled and discharged.

- The Reorganized Debtors, Avenue and Fortress will enter into the Specified Litigation Agreement (as discussed in Section V.C. of the Disclosure Statement), which provides for, among other things, the joint pursuit of the Specified Litigation Claims to be funded by Avenue and Fortress on the terms set forth in the Specified Litigation Agreement, and a sharing of the proceeds that may be recognized therefrom pursuant to the Specified Litigation Waterfall.

## D.    Solicitation Procedures

11.    To effectuate the terms of the proposed consensual restructuring, on March 11, 2014, the Debtors caused the Balloting Agent to distribute packages (the "*Solicitation Packages*") containing (a) the Disclosure Statement and the Plan, (b) a Ballot (each, a "*Ballot*" and collectively, the "*Ballots*") for each Holder of Class A1 First Lien Facility Claims and the Class B1 Marketing Fund Trusts Facility Secured Claim, the only impaired classes of creditors

entitled to vote to accept or reject the Plan (collectively, the "*Voting Classes*"), and (c) directions for voting on the Plan electronically. The Balloting Agent transmitted the Solicitation Packages to Voting Classes by electronic mail, and where unavailable, by overnight mail.[3] Other Holders of Claims and Interests were not provided a Solicitation Package because such Holders are: (a) unimpaired under, and conclusively presumed to accept, the Plan under Bankruptcy Code section 1126(f); or (b) Holders of Unsecured Claims against the Debtors who are impaired, entitled to receive distribution on account of such Claims but are deemed to have rejected the Plan; or (c) impaired, entitled to receive no distribution on account of such Claims or Interests under the Plan, and therefore deemed to have rejected the Plan under Bankruptcy Code section 1126(g).

12.    The Debtors established March 14, 2014 at 12:00 p.m. (prevailing Eastern Time) as the deadline for the Class A 1 Holders of First Lien Facility Claims and Class B1 Marketing Fund Trusts Credit Facility Secured Claims to vote to accept or reject the Plan (the "*Voting Deadline*"). Each Holder of Class A1 and Class B1 Claims was explicitly informed in the applicable Ballot that such Holder needed to submit its Ballot such that it is actually received by the Balloting Agent on or before the Voting Deadline to be counted. Pursuant to the instructions contained in the Ballot, Holders of Claims in the Voting Classes were required to return the completed Ballots by electronic mail.

13.    The Balloting Agent is in the process of tabulating the Ballots for each of the Voting Classes. As soon as reasonably practicable, the Balloting Agent will file a voting report (the "*Voting Report*"), which will certify the results and methodologies for tabulation of Ballots accepting or rejecting the Plan with respect to the Voting Classes.

---

[3]    In addition, the Disclosure Statement and the Plan were also posted on the website maintained by the First Lien Agent for the First Lien Lenders to provide additional means for First Lien Lenders to access the Disclosure Statement and the Plan.

## RELIEF REQUESTED

14.      By this motion, the Debtors seek entry of the Order:  (a) scheduling the Combined Hearing; (b) establishing the deadline for filing objections to the Disclosure Statement and the Plan, including the proposed assumption of Executory Contracts and Unexpired Leases and the proposed Cure Amounts associated therewith (the "***Objection Deadline***"), and approving related procedures; (c) approving the Solicitation Procedures; (d) approving the form and manner of notice of the Combined Hearing; (e) waiving the requirement for the Creditors' Meeting if the Plan is confirmed within 80 days of the Petition Date; and (f) granting related relief.

15.      Below is a table highlighting the dates relevant to the Solicitation Procedures and setting forth the Debtors' proposed dates for the mailing of the Combined Hearing Notice (as defined herein), the Objection Deadline and the Combined Hearing.  The dates set forth below are consistent with the terms of the Restructuring Support Agreement.

| Proposed Schedule | |
|---|---|
| Voting Record Date | March 10, 2014 |
| Distribution of Solicitation Package | March 11, 2014 |
| Voting Deadline | March 14, 2014, at 12:00 p.m. (prevailing Eastern Time) |
| Petition Date | March 14, 2014 |
| Distribution of Combined Hearing Notice | March 19, 2014 |
| Objection Deadline | April 16, 2014, at 4:00 p.m. (prevailing Eastern Time) |
| Reply Deadline | April 21, 2014, at 4:00 p.m. (prevailing Eastern Time) |
| Combined Hearing | April 24, 2014 |

## SUPPORTING AUTHORITY

### A.    Scheduling a Combined Hearing

16.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice . . . to consider the disclosure statement and any objections or modifications thereto." FED. R. BANKR. P. 3017(a).   Bankruptcy Code section 1128(a) provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." 11 U.S.C. § 1128(a). Furthermore, Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation." FED. R. BANKR. P. 3017(c).

17.    Bankruptcy Code section 105 expressly authorizes courts to combine a hearing on a disclosure statement with a hearing on confirmation of a plan of reorganization, stating: "[T]he hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan." 11 U.S.C. § 105(d)(2)(B)(vi).  In cases involving pre-packaged plans, for example, courts routinely conduct combined hearings to approve the disclosure statement, solicitation procedures and plan shortly after a debtor files its chapter 11 petition. *See, e.g., In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013), Docket No. 49; *In re Jackson Hewitt Tax Servs. Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. May 25, 2011), Docket No. 47; *In re Revel AC, Inc.*, No. 13-16253 (Bankr. D. Del. March 26, 2013), Docket No. 22; *In re Geokinetics, Inc.*, No. 13-10472 (Bankr. D. Del. Mar. 12, 2013), Docket No. 81; *In re AR Broadcasting Holdings, Inc.*, No. 11-13674 (Bankr. D. Del. Nov. 18, 2011), Docket No. 40; *In re CIT Group Eng'g, Inc.*, No. 09-16565 (Bankr. S.D.N.Y. Nov. 3, 2009), Docket No. 45.

18.    The Debtors request that the Court schedule the Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Plan on or about April 24, 2014 at a time convenient for the Court.  The Debtors submit that cause exists to approve this date and

hold the Combined Hearing. First, the Debtors have requested the Court to schedule the Combined Hearing 36 days after the date of the Combined Hearing Notice, which is more than the 28 days required under the applicable Bankruptcy Rules, and the Debtors will serve the Combined Hearing Notice consistent with Bankruptcy Rules 2002 and 3017(a) and Bankruptcy Code section 1128(a). Second, as described herein, the Debtors commenced solicitation on March 11, 2014, which solicitation was in accordance with Bankruptcy Code sections 1125(g) and 1126(b). The Solicitation Package was distributed to each Holder of a Claim entitled to vote on the Plan. Third, the Debtors secured the support of approximately 61% of the Holders of First Lien Facility Claims and approximately 99% of the Holders of Second Lien Facility Claims prior to commencing solicitation of the Plan. Fourth, a combined hearing will reduce the time the Debtors remain in bankruptcy, thereby cutting the costs of administering and funding the Chapter 11 Cases.

**B.      Objection Deadline and Related Procedures**

19.      Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider . . . any objections or modifications" to the Disclosure Statement. FED. R. BANKR. P. 3017(a). Similarly, Bankruptcy rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors [of] not less than 28 days . . . by mail of the time fixed (1) for filing objections and the hearing to consider approval of a disclosure statement . . . and (2) for filing objections and the hearing to consider confirmation of a [chapter 11] plan." FED. R. BANKR. P. 2002(b). Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." FED. R. BANKR. P. 3020(b)(1).

20.      The Debtors request that the Court set (a) the Objection Deadline at 4:00 p.m. (prevailing Eastern Time) on April 16, 2014 and (b) the deadline for the Debtors and other

9

parties in interest to reply to objection at 4:00 p.m. (prevailing Eastern Time) on April 21, 2014 (the "*Reply Deadline*"). The Debtors' proposed schedule would provide entities at least 28 days' notice of the Objection Deadline to file objections to the Plan and the Disclosure Statement as required by Bankruptcy Code section 2002(b)(1).

21.     Additionally, as set forth above, the Objection Deadline also serves as the deadline for non-Debtor contract counterparties to file objections to the proposed assumption of Executory Contracts and Unexpired Leases and the associated proposed Cure Amounts pursuant to the Plan. Specifically, pursuant to Article V, Section 5.1 of the Plan, except as otherwise set forth therein, as of the Effective Date, all Executory Contracts or Unexpired Leases of the Debtors shall be deemed assumed unless such contract or lease: (a) was previously assumed or rejected by the Debtors; (b) previously expired or terminated pursuant to its terms; (c) is the subject of a motion to assume or reject filed by the Debtors under Bankruptcy Code section 365 pending as of the Effective Date; or (d) is specifically designated on the Schedule of Rejected Executory Contracts and Unexpired Leases. The proposed Cure Amount for an Executory Contract or Unexpired Lease that is assumed pursuant to the Plan shall be zero dollars unless otherwise indicated in the Schedule of Proposed Cure Amounts. At least 7 days before the Objection Deadline, as part of the Plan Supplement, the Debtors will file and serve on affected non-Debtor contract counterparties a Schedule of Proposed Cure Amounts,[4] which shall contain a list of those Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, with respect to which the proposed Cure Amount is greater than zero, and which identifies such proposed Cure Amount. Any objections to the proposed assumption of Executory

---

[4]     In addition, as part of the Plan Supplement, the Debtors will file the Schedule of Rejected Executory Contracts and Unexpired Leases, which will contain the contracts and/or leases to be rejected or repudiated by the Debtors pursuant to the Plan. The deadline and procedures for filing a Proof of Claim that may result from such rejection or repudiation are set forth in Section 5.6 of the Plan.

Contracts and Unexpired Leases pursuant to the terms of the Plan or the proposed Cure Amounts associated therewith shall be filed and served in accordance with the procedures set forth below.

22.    The Debtors request that the Court require that objections to the Disclosure Statement or confirmation of the Plan, as well as any objections to the proposed assumption of Executory Contracts and Unexpired Leases and the associated proposed Cure Amounts, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or the Disclosure Statement, as applicable, and with respect to objections to the proposed Cure Amounts, the requested Cure Amount(s); and (e) be filed with the Court with proof of service thereof and served upon (i) the Debtors, QCE Finance LLC, 1001 17th Street, Suite 200, Denver, Colorado 80202, Attn: Kenneth Cutshaw; (ii) co-counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Philip C. Dublin and Jason P. Rubin, and Richards Layton & Finger P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins and Amanda R. Steele, (iii) counsel to Avenue, O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036, Attn: John J. Rapisardi and Joseph Zujkowski; (iv) counsel to Fortress, Skadden Arps Slate Meagher & Flom, 30 South Grand Avenue, Los Angeles, California 90071, Attn:  Van C. Durrer, II; (v) co-counsel to the Consenting First Lien Lenders, Milbank Tweed Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017, Attn: Thomas R. Kreller and David B. Zolkin, and Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Robert J. Dehney; (vi) counsel to the First Lien Agent,

Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Mark R. Somerstein; (vii) counsel to the Second Lien Agent, Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036, Attn: Bart Pisella and Timothy P. Kober; (viii) counsel to Vectra, Kasowitz Benson Torres & Friedman LLP, 1633 Broadway, New York, New York 10019, Attn: Adam L. Shiff; (ix) counsel to any statutory committee appointed in these chapter 11 cases; and (x) the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, Suite 2207, Lockbox 35, 844 N. King Street, Wilmington, DE 19801, by email at tiiara.patton@usdoj.gov or by fax at (302) 573-6497, Attn:  Tiiara Patton so as to be _actually received_ by the Objection Deadline.

     23.    The Debtors believe that the proposed timing and procedures for filing and service of objections comply with the applicable rules and will afford the Court, the Debtors and other parties in interest sufficient time to consider the relevant objections prior to the Combined Hearing.

**C.    Approval of Solicitation Procedures and Forms of Ballots**

     24.    As described herein, the Debtors distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date in accordance with Bankruptcy Code sections 1125 and 1126.  _See_ 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); 11. U.S.C. § 1126(b)(2) (holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information). Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purposes of soliciting their votes to accept or reject a plan of reorganization.  In addition, Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by Bankruptcy Rule 3017(d) to beneficial

holders of stock, bonds, debentures, notes and other securities, determine the adequacy of such procedures and enter such orders as the court deems appropriate." FED. R. BANKR. P. 3017(e). As set forth herein, the Solicitation Procedures are in compliance with the Bankruptcy Code and the Bankruptcy Rules, and the Debtors seek approval of the Solicitation Procedures, the Ballots and the procedures used for collection, acceptance, and tabulations of votes to accept or reject the Plan.

25.    Indeed, similar procedures to the Solicitation Procedures have been approved in other prepackaged chapter 11 cases in this and other districts. *See, e.g., In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013), Docket No. 49 (approving prepackaged solicitation procedures substantially similar to those utilized here); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. Jul. 25, 2013), Docket No. 44 (same); *In re Revel AC, Inc.*, No. 13-16253 (JHW) (Bankr. D.N.J. Mar. 28, 2013); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (same); *In re Peak Broad., LLC*, No. 12-10183 (MFW) (Bankr. D. Del. Jan. 12, 2012), Docket No. 45 (same).[5]

     (i)     *Voting Record Date*

26.    Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." FED. R. BANKR. P. 3018(b). The Ballots clearly identified March 10, 2014 as the date for determining for which Holders of Claims were entitled to vote to accept or reject the Plan (the "***Voting Record Date***"). Accordingly, the Debtors' designation of the Voting Record Date conforms to the appropriate Bankruptcy Rules.

---

[5]    Due to the voluminous nature of the orders cited here and throughout this motion, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed co-counsel.

(ii)     *Plan Distribution and Voting Deadline*

27.     Bankruptcy Code section 1125(g) provides that "[n]otwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law." 11 U.S.C. § 1125(g).

28.     Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a plan are valid if: (a) the plan was transmitted to substantially all the holders of claims or interests in each solicited class; and (b) the time for voting was not unreasonably short. FED. R. BANKR. P. 3018(b). As set forth herein, the Debtors commenced the solicitation of votes for approval of the Plan to all Voting Classes on March 11, 2014. As set forth in the Disclosure Statement and the Ballots, the Voting Deadline is 12:00 p.m. (prevailing Eastern Time) on March 14, 2014; *provided, however*, that the Debtors, in consultation with the Consenting Parties, may extend the period of time during which Ballots will be accepted for any reason, including for purposes of determining whether the requisite number of acceptances have been received, by giving notice of any such extension in a manner deemed reasonable to the Debtors in their discretion; *provided, further*, that Holders of Claims who cast a Ballot prior to the time of filing of any of the Debtors' chapter 11 petitions shall not be entitled to change their vote or cast new Ballots after the Chapter 11 Cases are commenced. This period of time is in accordance with applicable nonbankruptcy law as there is no provision in any applicable securities law, the First Lien Credit Agreement or the Marketing Fund Trusts Credit Agreement that requires a set period of time for voting on a the Plan. *See* 5 Collier Guide to Chapter 11 ¶ 5.07[c] (stating that whether a period is sufficient for a decision to vote on a prepackaged plan "was not a question addressed by the securities laws") (citing *In re Southland Corp.*, No. 390-37119-HCA-11 (Bankr. N.D. Tex. Oct.

14

24, 1990) (Response of the Securities and Exchange Commission to the Court's Request for a Statement of Position Regarding Compliance of Debtors' Prepetition Solicitation with Federal Securities Laws, dated December 26, 1990, at 18)). Thus, the Debtors submit that Holders of Claims entitled to vote on the Plan had adequate time to consider the Plan and the Disclosure Statement and submit a ballot before the Voting Deadline. *See, e.g., In re Gatehouse Media, Inc.*, No. 13-12503 (MFW) (Bankr. D. Del. Sept. 30, 2013), Docket No. 39 (authorizing a six day solicitation period); *In re PTL Holdings LLC*, No. 11-12676 (BLS) (Bankr. D. Del. Aug. 25, 2011), Docket No. 35 (authorizing a one-day solicitation period and allowing voters to return ballots by email or facsimile); *In re Jackson Hewitt Tax Service, Inc.*, No. 11-11587 (Bankr. D. Del. May 5, 2011), Docket No. 47 (approving a one-day solicitation period and allowing voters to return ballots by email, hand delivery or overnight mail).

29.    As discussed above, the restructuring transactions proposed in the Plan are the product of months of negotiations among the Debtors and the Consenting Parties and, more recently, Vectra. Prior to the commencement of solicitation, the Plan and the related Disclosure Statement were subject to review and comment by counsel and other advisors for the Consenting First Lien Lenders, Avenue and Fortress during the course of arm's length negotiations with the Debtors. The Debtors, in turn, engaged in discussions with these parties regarding the terms of the restructuring transactions contemplated in the Plan prior to launching solicitation of the Plan. Additionally, as described above, the requested Voting Deadline is (a) consistent with the terms of the Restructuring Support Agreement, (b) ensures that the Debtors maintain the votes in favor of the Plan of the Consenting First Lien Lenders and (c) is in compliance with the Bankruptcy Rules. Moreover, the voting period is reasonable in light of the risks inherent to the Debtors in

announcing the prepetition solicitation of the Plan, including deterioration of trade terms, customers withholding payment, and other actions that would disrupt the Debtors' operations.

30.     For all these reasons, the Debtors believe that the solicitation period is sufficient and appropriate for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

      *(iii)*      *The Ballots*

31.     Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan." FED. R. BANKR. P. 3017(d)(4). Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity holder or an authorized agent and conform to the appropriate Official Form." FED. R. BANKR. P. 3018(c).

32.     As discussed above, only the Holders of First Lien Facility Claims and the Marketing Fund Trusts Facility Secured Claim were transmitted Ballots. Each form of Ballot used in solicitation is based on Official Form No. 14 and has been modified as applicable to address the particular circumstances of the Chapter 11 Cases to include certain information that the Debtors believe to be relevant and appropriate for Holders of Claims entitled to vote to accept or reject the Plan. The Ballots used in solicitation are annexed as **Exhibit 3** and **Exhibit 4** to **Exhibit A** attached hereto.

      *(iv)*      *Vote Tabulation*

33.     The Debtors respectfully request that the Court approve the voting and tabulation procedures described herein in accordance with Bankruptcy Code section 1126(c) and Bankruptcy Rule 3018(a). Bankruptcy Code section 1126(c) provides:

RLF1 10043507v.1

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." FED. R. BANKR. P. 3018(a).

34.     The Debtors request that the Court approve the vote tabulation methodology utilized by the Debtors.   As discussed above, the Ballots and Solicitation Packages were transmitted to Holders of Claims in the Voting Classes by electronic mail and, where unavailable, overnight mail.   Holders of Claims in the Voting Classes were required to return their Ballots to the Balloting Agent by electronic mail.   The Debtors will not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots, as applicable:   (i) are received after the Voting Deadline unless the Debtors (in consultation with the Consenting Parties) have granted an extension of the Voting Deadline with respect to such Ballot; (ii) are (in whole or in material part) illegible or unidentifiable; (iii) lack signatures; (iv) lack necessary information; (v) are damaged; (vi) are cast by a person or entity that does not hold a Claim in a Voting Class as of the Voting Record Date; (vii) does not indicate an acceptance or a rejection or that indicates both an acceptance and a rejection; (viii) are sent to the Bankruptcy Court, the Debtors, the Debtors' agents, advisors or representatives (other than the Balloting Agent); or (ix) partially accept and partially reject the Plan (each, a "*Defective Ballot*").   Additionally, if multiple Ballots are received from an individual Holder with respect to the same Claim prior to the Holder's Voting Deadline, the last Ballot timely received will supersede and revoke any previously received Ballot.

17

35.     The Balloting Agent will attempt to reconcile the amount of any Claim reported on a Ballot with the Debtors' records, but in the event such amount cannot be timely reconciled without undue effort on the part of the Balloting Agent, the amount shown in the Debtors' records shall govern.  To the extent a Holder holds multiple Claims within a particular Class, the Balloting Agent may, in its discretion, and to the extent possible, aggregate the Claims of any particular Holder within such Class for the purpose of counting votes.  The Debtors will file with the Bankruptcy Court, as soon as practicable after the Voting Deadline, the Voting Report prepared by the Balloting Agent, which shall, among other things, delineate every Defective Ballot.  In the event a designation of lack of good faith is requested by a party in interest under Bankruptcy Code section 1126(e), the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

36.     The foregoing Solicitation Procedures or those substantially similar have been approved in other prepackaged chapter 11 cases.  *See, e.g.*, *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013), Docket No. 49 (approving prepackaged vote tabulation procedures substantially similar to those utilized here); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. Jul. 25, 2013), Docket No. 44 (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013), Docket No. 64 (same); *In re Peak Broad., LLC*, No. 12-10183 (PJW) (Bankr. D. Del. Jan. 12, 2012), Docket No. 45 (same); *In re TMP Directional Mktg., LLC*, No. 11-13835 (MFW) (Bankr. D. Del. Dec. 7, 2011), Docket No. 52 (same); *In re Jackson Hewitt Tax Service, Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. Aug. 9, 2011), Docket No. 388 (same); *In re Source Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. Apr. 29, 2009), Docket No. 59 (same).

     *(v)*     *Non-Transmission of Disclosure Statement to Certain Holders of Claims and Interests*

37.     In addition, for the reasons set forth herein, the Debtors request a waiver of the Bankruptcy Rule 3017 requirement that the Debtors mail a copy of the Disclosure Statement and Plan to Holders of Claims or Interests deemed to have accepted or rejected the Plan. *See* FED. R. BANKR. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders). *See also* 11 U.S.C. § 1126(f)-(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary). Because the Debtors solicited acceptances and rejections of the Plan on a prepetition basis, no disclosure statement was "approved" under Bankruptcy Rule 3017(d), and therefore Bankruptcy Rule 3017 is not applicable here. However, the Debtors have made the Plan and Disclosure Statement available at no cost on their restructuring website maintained at: http://cases.primeclerk.com/quiznos.     Additionally, parties may contact the Debtors' restructuring hotline at: (855) 388-4579.

38.     Moreover, it would be a significant and unnecessary administrative burden on the Debtors to transmit the Disclosure Statement and Plan to Holders of Claims and Interests deemed to have accepted or rejected the Plan. Service upon such Holders will be extremely expensive for the Debtors to complete. The Debtors submit that it is not appropriate to require the Debtors to transmit a copy of the Solicitation Package to the Holders of Claims or Interests other than the those entitled to vote on the Plan.

39.     Courts in this circuit have not required debtors to send a copy of a plan and disclosure statement to holders of claims and interests presumed to accept or reject the plan. *See, e.g., In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) Bankr. D. Del. Nov. 14, 2013), Docket No. 49; *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr.

D. Del. Jul. 25, 2013), Docket No. 44; *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013), Docket No. 192; *In re CHL, Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Oct. 4, 2012), Docket No. 152; *In re Peak Broad., LLC*, No. 12-10183 (PJW) (Bankr. D. Del. Feb. 23, 2012), Docket No. 185; *In re TMP Directional Mktg., LLC*, No. 11-13835 (MFW) (Bankr. D. Del. Jan. 23, 2012), Docket No. 180; *In re Jackson Hewitt Tax Servs. Inc.*, No. 11-11587 (MKW) (Bankr. D. Del. Aug. 9, 2011), Docket No. 388; *In re Source Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. Apr. 29, 2009), Docket No. 59; *In re Portola Packaging, Inc.*, No. 08-12001 (CSS) (Bankr. D. Del. Oct. 15, 2008), Docket No. 191; *In re ACG Holdings, Inc.*, No. 08-11467 (CSS) (Bankr. D. Del. Aug. 4, 2008), Docket No. 166.

*(vi)*     *The Debtors' Prepetition Solicitation was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Securities Law*

40.     Bankruptcy Code section 1126(b) provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if — (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).   Thus, prepetition solicitation must comply with generally applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under Bankruptcy Code section 1125.   *See* 7 COLLIER ON BANKRUPTCY ¶ 1126.03[2][d] (16th ed.).

41.     The Debtors respectfully submit that their prepetition solicitation is sheltered under one or more of the exceptions from registration provided by the Securities Act of 1933 (the

"*Securities Act*"), including section 4(a)(2) thereof, state "Blue Sky" laws or any similar rules, regulations or statutes.   Section 4(a)(2) of the Securities Act creates an exemption from nonbankruptcy securities laws for transactions not involving a "public offering."   15 U.S.C. § 77d(a)(2).   The Debtors took steps to ensure that the parties entitled to vote on the Plan were "Accredited Investors" (as that term is defined by Rule 501 of Regulation D, 17 C.F.R. § 230.501(a), promulgated under the Securities Act), and the Debtors' prepetition solicitation did not constitute a public offering because the number of non-Accredited Investors did not exceed the number of permitted under section 4(a)(2) to still be exempted from registration requirements.   Therefore, the requirements of Bankruptcy Code section 1126(b)(1) are inapplicable to the Debtors' prepetition solicitation. As discussed more fully below, the Debtors will seek a determination from the Court at the Combined Hearing that all solicited Holders received "adequate information" as defined by Bankruptcy Code section 1125(a) in accordance with Bankruptcy Code section 1126(b)(2).

42.   Other debtors in this and other circuits have utilized section (4)(2) of the Securities Act to exempt their prepetition solicitation from the registration and disclosure requirements otherwise applicable under nonbankruptcy law. *See, e.g., In re Revel AC, Inc.*, No. 13-16253(JHW) (Bankr. D.N.J. Mar. 28, 2013), Docket No. 69; *In re CHL Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Aug. 29, 2012), Docket No. 152; *In re Source Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. May 26, 2009), Docket No. 59; *In re Portola Packaging, Inc.*, No. 08-12001 (CSS) (Bankr. D. Del. Oct. 15, 2008), Docket No. 191; *see also In re Insight Health Servs. Holdings Corp.*, No. 10-16564 (AJG) (Bankr. S.D.N.Y. Dec. 10, 2010), Docket No. 59.

**D.   Approval of the Disclosure Statement at the Combined Hearing**

43.   The Debtors will request that, at the Combined Hearing, the Court find that the Disclosure Statement contains adequate information as defined in Bankruptcy Code section

21

1125. *See* 11 U.S.C. § 1126(b)(2) (because there is no nonbankruptcy law governing the solicitation of claim and interest holders prior the debtors commencing the Chapter 11 Cases, such solicitation must have been based on the debtors providing such holders "adequate information").

44.    The Debtors submit that the Disclosure Statement contains adequate information because it is extensive and comprehensive.  What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable the parties to vote in an informed way, and that standard is easily met here. *See* 11 U.S.C. § 1125(a)(1).  For example, the Disclosure Statement contains descriptions and summaries of, among other things: (a) both the Plan and the Debtors' related reorganization efforts; (b) certain events and relevant negotiations preceding the commencement of the Chapter 11 Cases; (c) the key terms of the restructuring transactions contained in the Plan; (d) the risk factors affecting consummation of the Plan; (e) a liquidation analysis setting forth the estimated return that Holders of Claims and Interests would receive in a hypothetical chapter 7 case; (f) financial information and valuations that would be relevant to creditors' determinations of whether to accept or reject the Plan; and (g) securities law and federal tax law consequences of the Plan.

45.    In addition, as noted above, the Disclosure Statement and the Plan were the subject of review and comment by, among others, the Consenting Parties, the key stakeholders in the Debtors' restructuring.  Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125(a) and should be approved.

### E.   Approval of Form and Manner of Notice of Combined Hearing

46.   Bankruptcy Rules 2002(b) and (d) require no less than 28-days' notice to all holders of claims of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan. FED. R. BANKR. P. 2002(b), 2002(d).[6] To that end, the Debtors request approval of the notice of the Combined Hearing substantially in the form of **Exhibit 1** annexed to **Exhibit A** attached hereto (the "***Combined Hearing Notice***"). In accordance with Bankruptcy Rules 2002 and 3017(d), the Notice will, among other things:   (a) provide notice of the commencement of the Chapter 11 Cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Combined Hearing; (d) disclose the date and time of the Objection Deadline and procedures for objecting to the Disclosure Statement and the Plan; and (e) provide the record date for receiving distributions under the Plan.

47.   The Combined Hearing Notice will be served by electronic mail and/or first-class mail upon all known Holders of Claims and Interests and all other parties entitled to notice in the Chapter 11 Cases (regardless of whether such parties are entitled to vote to accept or reject the Plan) by March 19, 2014.

48.   Bankruptcy Rule 2002(1) also permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice." FED. R. BANKR. P. 2002(1).   Prior to the Combined Hearing, the Debtors propose to publish the Combined Hearing Notice, substantially in the form of **Exhibit 2** annexed to **Exhibit A** attached hereto, in *The Wall Street Journal*, *USA Today* and *The Globe and Mail*, and any other

---

[6]   Bankruptcy Rule 3017(a) contains a similar requirement with respect to the hearing on approval of a disclosure statement. However, the Debtors do not seek separate approval of the Disclosure Statement under Bankruptcy Code section 1125(b). Such approval is not required at the present time because the Disclosure Statement was transmitted prepetition. Rather, the Debtors will seek approval of the Disclosure Statement, including a finding that the Disclosure Statement contained "adequate information" as that term is used by Bankruptcy Code section 1125, at the Combined Hearing pursuant to Bankruptcy Code section 1125(g).

publications the Debtors deem necessary in their sole discretion, as soon as is reasonably practicable after entry of the Order (the "**Publication Notice**"). In addition, the Combined Hearing Notice will be available on the Debtors' restructuring website at http://cases.primeclerk.com/quiznos.

49.     The Debtors believe that the Publication Notice will provide sufficient notice of the approval of the Disclosure Statement, the Combined Hearing and the Objection Deadline to persons and entities who will not otherwise receive notice by mail as provided herein and through the Solicitation Procedures. The Debtors submit that such notice is appropriate and sufficient under the circumstances, and that no further notice is required.

**F.     Cause Exists for the U.S. Trustee Not to Convene a Creditors' Meeting if the Plan is Confirmed within 80 Days of the Petition Date**

50.     Bankruptcy Code section 341(a) requires the United States trustee to convene and preside at a meeting of creditors. 11 U.S.C. § 341(a). Bankruptcy Code section 341(e), however, also provides the following exception to such requirement:

> [N]otwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e) (emphasis added).

51.     The Debtors filed the Plan contemporaneously with this motion on the Petition Date, and commenced solicitation of votes to accept or reject the Plan on March 11, 2014, prior to the Petition Date, thereby satisfying Bankruptcy Code section 341(e).

52.     The Debtors submit that cause exists to waive the section 341 meeting as set forth herein because the Disclosure Statement contains much of the type of information typically discussed during a meeting of creditors pursuant to Bankruptcy Code section 341, including

24

information on the corporate structure of the Debtors, an overview of the Debtors' business operations, the Debtors' capital structure, events leading up to the Chapter 11 Cases, and a summary of the Plan and treatment of classes of Claims and Interests thereunder. In addition, the Debtors intend to proceed expeditiously to confirm the Plan and emerge from chapter 11 as quickly as possible. A section 341 meeting may force the Debtors to delay the Combined Hearing, which would result in additional administrative expenses and professional fees to the detriment of the Debtors' estates. Accordingly, pursuant to Bankruptcy Code section 341(e), the Debtors request that the Court enter an order waiving the requirement that the U.S. Trustee convene the Creditors' Meeting if the Plan is confirmed within 80 days from the Petition Date.

53.     Courts in this and other districts have waived the requirement for a Creditors' Meeting for a period of time under similar circumstances and thus the relief requested herein is reasonable. *See, e.g., Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013) (waiving section 341 meeting provided that plan was confirmed within 64 days of petition date), Docket No. 49; *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. Jul. 25, 2013), Docket No. 44 (same, provided that plan was confirmed within 60 days of petition date); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013), Docket No. 64 (same, provided that plan was confirmed within 75 days of the petition date); *In re Homer City Funding, LLC*, No. 12-13024 (KG) (Bankr. D. Del. Nov. 7, 2012), Docket No. 27 (same, provided that plan was confirmed within 60 days of petition date); *In re CHL, Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Aug. 31, 2012), Docket No. 152 (same, provided that plan was confirmed within 64 days); *In re Jackson Hewitt Tax Service, Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. May 25, 2011), Docket No. 47 (same, provided that the plan was confirmed within 60 days).

RLF1 10043507v.1

## WAIVER OF BANKRUPTCY RULES
## REGARDING NOTICE AND STAY OF AN ORDER

54.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014, or otherwise.

## NOTICE

55.    Notice of this motion has been provided to the following parties, or, in lieu thereof, their counsel: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities on the Consolidated List of Creditors Holding the 35 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) Milbank Tweed Hadley & McCloy LLP, as counsel to the Consenting First Lien Lenders, Attn: Thomas R. Kreller and David B. Zolkin; (d) Morris Nichols Arsht & Tunnell LLP, as local counsel to the Consenting First Lien Lenders, Attn: Robert J. Dehney; (e) O'Melveny & Myers LLP, as counsel to Avenue Capital Management II, L.P. and its affiliates, Attn: John J. Rapisardi and Joseph Zujkowski; (f) Skadden Arps Slate Meagher & Flom LLP, as counsel to Fortress Investment Group and its affiliates, Attn: Van C. Durrer, II; (g) Kasowitz Benson Torres & Friedman LLP, as counsel to Vectra Bank Colorado, National Association, Attn: Adam L. Shiff and Matthew B. Stein; and (h) all parties entitled to notice pursuant to Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

RLF1 10043507v.1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just, proper and equitable.

Wilmington, Delaware
Date:  March 14, 2014

**RICHARDS LAYTON & FINGER P.A.**
Mark D. Collins (No. 2981)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 654-7700
Facsimile:  (302) 651-7701

– and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Ira S. Dizengoff (*pro hac vice* admission pending)
Philip C. Dublin (*pro hac vice* admission pending)
Jason P. Rubin (*pro hac vice* admission pending)
Kristine G. Manoukian (DE 5509)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

RLF1 10043507v.1

## EXHIBIT A

### Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 14-_____ ( ) |
| QCE FINANCE LLC, *et al.*,[1] | ) | |
| | ) | Joint Administration Requested |
| Debtors. | ) | |
| | ) | **Re: Docket No. _____** |

## ORDER (A) SCHEDULING A COMBINED HEARING ON DEBTORS' DISCLOSURE STATEMENT AND PLAN CONFIRMATION, (B) ESTABLISHING AN OBJECTION DEADLINE AND PROCEDURES FOR OBJECTING TO THE DISCLOSURE STATEMENT, PLAN AND ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING SOLICITATION PROCEDURES, (D) APPROVING THE FORM AND NOTICE OF THE COMBINED HEARING, (E) WAIVING THE REQUIREMENT FOR A MEETING OF CREDITORS AND (F) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for the entry of an order (this "***Order***"):

(a) scheduling the Combined Hearing on the (i) adequacy of the Disclosure Statement and (ii) confirmation of the Plan; (b) establishing the Objection Deadline for the Disclosure Statement and the Plan, including the proposed assumption of Executory Contracts and Unexpired Leases and the proposed Cure Amounts associated therewith, and approving related procedures; (c) approving the Solicitation Procedures; (d) approving the form of the Combined Hearing Notice; (e) waiving the requirement that the U.S. Trustee convene the Creditors' Meeting if the Plan is confirmed within 80 days of the Petition Date; and (f) granting related relief, all as more fully described in the Motion; and the Court having jurisdiction to consider the

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  QCE Finance LLC (7897); American Food Distributors LLC (8099); Quiznos Global LLC (2772); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); QAFT, Inc. (6947); Restaurant Realty LLC (8293); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); National Marketing Fund Trust (4951); The Regional Advertising Program Trust (2035); and TQSC II LLC (8683).  The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Plan, or the Disclosure Statement, as applicable.

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Motion (the "*Hearing*"); and upon consideration of the First Day Declaration, the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.     The Motion is granted to the extent set forth herein.

2.     The Combined Hearing, at which time the Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall commence at __:__.m., (prevailing Eastern Time) on April __, 2014, which date may be continued from time to time without further notice other than adjournments announced in open court.

3.     Any objections to the Disclosure Statement or confirmation of the Plan, including to the assumption of Executory Contracts and Unexpired Leases and the proposed Cure Amounts associated therewith, must be filed, together with proof of service, with the Court and served so as to be **actually received** by April __, 2014, at 4:00 p.m. (prevailing Eastern Time) (the "*Objection Deadline*").  The Reply Deadline is set for April __, 2014 at 4:00 p.m. (prevailing Eastern Time).

RLF1 10043507v.1

4.      Any objections to the Disclosure Statement or confirmation of the Plan, as well as any objections to the proposed assumption of Executory Contracts and Unexpired Leases and the associated proposed Cure Amounts, must:

    a.  be in writing;

    b.  comply with the Bankruptcy Rules and the Local Rules;

    c.  state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity;

    d.  state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or the Disclosure Statement, as applicable, and with respect to objections to the proposed Cure Amounts, the requested Cure Amount(s); and

    e.  be filed with the Court with proof of service thereof and served upon the Notice Parties so as to be _actually received_ by the Objection Deadline.

5.      Any objections that are not timely filed and served in the manner set forth in this Order may not be considered and may be overruled.

6.      The schedule of events set forth below relating to confirmation of the Plan is hereby approved in its entirety, and the Court hereby finds the following schedule of events is consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules:

| Proposed Schedule | |
|---|---|
| Voting Record Date | March 10, 2014 |
| Distribution of Solicitation Package | March 11, 2014 |
| Voting Deadline | March 14, 2014, at 12:00 p.m. (prevailing Eastern Time) |
| Petition Date | March 14, 2014 |
| Distribution of Combined Hearing Notice | March 19, 2014 |
| Objection Deadline | April __, 2014, at 4:00 p.m. (prevailing Eastern Time) |
| Reply Deadline | April __, 2014, at 4:00 p.m. (prevailing Eastern Time) |

3

| Proposed Schedule | |
|---|---|
| Combined Hearing | April __, 2014 |

7.    The Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**, and the Publication Notice, substantially in the form attached hereto as **Exhibit 2**, and comply with the requirements of the Bankruptcy Code and Bankruptcy Rules and are approved.

8.    The Debtors will serve the Combined Hearing Notice on all known Holders of Claims and Interests and all other parties entitled to notice in the Chapter 11 Cases (regardless of whether such parties are entitled to vote to accept or reject the Plan) by March 19, 2014.

9.    The Debtors are authorized to cause the Combined Hearing Notice to be published in *The Wall Street Journal*, *USA Today*, and *The Globe and Mail*, and any other publications the Debtors deem necessary in their sole discretion, as soon as is reasonably practicable after entry of the Order, and to make reasonable payments required for such publication. The Publication Notice, together with the Combined Hearing Notice, is deemed to be sufficient and appropriate under the circumstances.

10.    The Voting Record Date and the Voting Deadline are approved.

11.    The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth and described in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules, and are approved.

12.    The Ballots, substantially in the forms attached hereto as **Exhibit 3** and **Exhibit 4**, are hereby approved.

4

13.     The procedures used for collection, acceptance and tabulations of votes to accept or reject the Plan as set forth and described in the Motion and the Disclosure Statement, and as provided by the Ballots are approved.

14.     The Debtors are not required to mail a copy of the Plan or Disclosure Statement to Holders of Claims or Interests that are:  (a) unimpaired under, and conclusively presumed to accept, the Plan under Bankruptcy Code section 1126(f); (b) Holders of Unsecured Claims against the Debtors who are impaired, entitled to receive distribution on account of such Claims but are deemed to have rejected the Plan; or (c) impaired, entitled to receive no distribution on account of such Claims or Interests under the Plan, and therefore deemed to have rejected the Plan under Bankruptcy Code section 1126(g).

15.     The U.S. Trustee shall not be required to schedule a meeting of creditors pursuant to Bankruptcy Code section 341(a) unless a Plan is not confirmed in these cases within eighty (80) days of the Petition Date.

16.     Nothing contained in the Motion or this Order shall be deemed or construed as an admission as to the validity or priority of any Claim or lien against the Debtors or any other party or as a waiver of such parties' rights to dispute any such lien.

17.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

19.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, this Order shall be immediately effective and enforceable upon its entry.

20.     This Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Wilmington, Delaware

Date: _____, 2014

_____

United States Bankruptcy Judge

**EXHIBIT 1**

**Combined Hearing Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| QCE FINANCE LLC, *et al.*,[1] | Case No. 14-_____ (  ) |
| Debtors. | Joint Administration Requested |

## NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11 CASES, (II) COMBINED HEARING ON (A) DISCLOSURE STATEMENT AND (B) CONFIRMATION OF THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION AND RELATED MATTERS AND (III) OBJECTION DEADLINES AND SUMMARY OF THE PLAN

**NOTICE IS HEREBY GIVEN** as follows:

On March [__], 2014 (the "***Petition Date***"), the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "***Court***").

On the Petition Date, the Debtors filed with the Court the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* (as amended from time to time, the "***Plan***") and the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* (as amended from time to time, the "***Disclosure Statement***").[2] Copies of the Plan and the Disclosure Statement may be obtained upon request to the Debtors' counsel at the address specified below and are on file with the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington Delaware 19801, where they are available for review between the hours of 8:00 a.m. to 4:00 p.m. (prevailing Eastern Time). The Plan and Disclosure Statement also are available for inspection on the Court's Internet site at www.deb.uscourts.gov or free of charge on the Debtors' restructuring website at http://cases.primeclerk.com/quiznos. The Debtors' restructuring hotline is: (855) 388-4579.

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: QCE Finance LLC (7897); American Food Distributors LLC (8099); Quiznos Global LLC (2772); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quiznos Canada Holding LLC (3220); QAFT, Inc. (6947); Restaurant Realty LLC (8293); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); National Marketing Fund Trust (4951); The Regional Advertising Program Trust (2035); and TQSC II LLC (8683). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent there is a discrepancy between the terms herein and the Plan, the Plan shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

The Plan is a "prepackaged" plan or reorganization. The primary purpose of the Plan is to effectuate a balance-sheet restructuring of the Debtors' prepetition secured indebtedness (the "*Restructuring*"). *The Debtors' key stakeholders, including approximately 61% of the Holders of First Lien Facility Claims and approximately 99% of the Holders of Second Lien Facility Claims, have consented to the Plan and its terms, as reflected in the Restructuring Support Agreement executed on March 11, 2014.* The Debtors believe that any valid alternative to Confirmation of the Plan would result in significant delays, litigation and additional costs, and, ultimately, would jeopardize recoveries for Holders of Allowed Claims entitled to receive distributions under the Plan.

The following chart summarizes the treatment provided by the Plan to each class of Claims and Interests and indicates the acceptance or rejections of the Plan by each class entitled to vote.

| SUMMARY OF PLAN TREATMENT AND EXPECTED RECOVERIES | | | |
|---|---|---|---|
| **Class** | **Designation** | **Plan Treatment** | **Estimated Recovery Under the Plan** |
| Class A1 | First Lien Facility Claims | Holders of Class A1 Claims, in full and complete satisfaction, discharge and release of such Claims shall receive their Pro Rata share of the First Lien Distribution. All Holders of Class A1 Claims shall be deemed to have agreed to forgo any distribution in respect of their First Lien Facility Deficiency Claims if Class A1 votes to accept the Plan. | 43-53% |
| Class A2 | Priority Non-Tax Claims against the Term Loan Debtors | Except to the extent that a Holder of an Allowed Class A2 Claim agrees to less favorable treatment with the Debtors or Reorganized Debtors, each Holder of an Allowed Class A2 Claim, in full and complete satisfaction, discharge and release of such Claim, shall be paid in full in Cash on the later of the Distribution Date and that date that is as soon as practicable after the date upon which such Claim becomes an Allowed Class A2 Claim. | 100% |
| Class A3 | Other Secured Claims against the Term Loan Debtors | Except to the extent a Holder of an Allowed Class A3 Claim agrees to less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Class A3 Claim, in full and complete satisfaction, discharge and release of such Claim shall be (i) paid in full in Cash on the later of the Distribution Date and a date that is as soon as practicable after the date upon which such Claim becomes an Allowed Class A3 Claim or (ii) otherwise Unimpaired within the meaning of Bankruptcy Code section 1124. | 100% |

2

| SUMMARY OF PLAN TREATMENT AND EXPECTED RECOVERIES |

| Class | Designation | Plan Treatment | Estimated Recovery Under the Plan |
|-------|-------------|----------------|-----------------------------------|
| Class A4 | Unsecured Claims against the Term Loan Debtors | Except to the extent a Holder of an Allowed Class A4 Claim agrees to less favorable treatment with the Debtors or Reorganized Debtors, as applicable, in full and complete satisfaction, discharge and release of such Claims, Holders of Allowed Class A4 Claims shall receive their Pro Rata share of the Company Specified Litigation Proceeds, unless such Holder elects to make the Stock in Lieu Election following receipt of the Stock in Lieu Election Notice. The Second Lien Lenders shall be included in Class A4.    The Consenting Second Lien Lenders, with claims in the aggregate principal amount of $173,742,275.38, plus accrued and unpaid interest, as of the Petition Date, have committed to make the Stock in Lieu Election.  For the avoidance of doubt (i) the Pro Rata share due to a Holder of an Allowed Class A4 Claim that has not made the Stock in Lieu Election shall be determined by dividing the amount of such Holder's Allowed Class A4 Claim by the aggregate amount of Allowed Class A4 Claims and Allowed Class B4 Claims of all Holders that have not made the Stock in Lieu Election and (ii) the Pro Rata share due to a Holder of an Allowed Class A4 Claim that has made the Stock in Lieu Election shall be determined by dividing the amount of such Holder's Allowed Class A4 Claim by the aggregate amount of Allowed Class A4 Claims and Allowed Class B4 Claims of all Holders that have made the Stock in Lieu Election.  For the avoidance of doubt, pursuant to Article 2.7 of the Plan, because Holders of Allowed Class A1 Claims are deemed to forego distributions on account of the First Lien Facility Deficiency Claims, Holders of First Lien Facility Deficiency Claims will not participate in the treatment provided in Article 2.10(b) of the Plan. | 0-100%[3]<br><br>0-10%[4] |

---

[3]  Recoveries depend on, among other things, (a) the amount of the Company Specified Litigation Proceeds realized by the Reorganized Debtors pursuant to the Specified Litigation Waterfall and (b) the aggregate amount of Allowed Unsecured Claims of those Holders who do not make the Stock in Lieu Election.

[4]  Recoveries depend on the aggregate amount of Allowed Unsecured Claims of those Holders who make the Stock in Lieu Election.  Pursuant to the Plan, the Consenting Second Lien Lenders, with claims in the aggregate principal amount of approximately $174 million, plus accrued and unpaid interest as of the Petition Date, have already committed to make the Stock in Lieu Election.

| | SUMMARY OF PLAN TREATMENT AND EXPECTED RECOVERIES | | |
|---|---|---|---|
| **Class** | **Designation** | **Plan Treatment** | **Estimated Recovery Under the Plan** |
| Class A5 | Subordinated Claims against the Term Loan Debtors | Holders of Class A5 Claims shall not receive or retain any property on account of such Class A5 Claims and all such Claims shall be cancelled and discharged. | 0% |
| Class A6(a) | Holdco Interests against the Term Loan Debtors | Holders of Class A6(a) Claims and Interests shall not receive or retain any property on account of such Class A6(a) Claims and Interests and all such Claims and Interests shall be cancelled and discharged. | 0% |
| Class A6(b) | Intercompany Interests against the Term Loan Debtors | Class A6(b) Interests shall be Reinstated and the legal, equitable and contractual rights to which Holders of such Allowed Interests are entitled shall remain unaltered so as to maintain the organizational structure of the Debtors as such structure existed on the Petition Date. | 100% |
| Class B1 | Marketing Fund Trusts Facility Secured Claim | In full and complete satisfaction of the Class B1 Claim (i) Reorganized QAFT, solely as trustee for the Reorganized Marketing Fund Trusts, and Vectra shall enter into the Amended Marketing Fund Trusts Credit Agreement and (ii) Vectra shall forgo any distribution on account of its Marketing Fund Trust Facility Guaranty Claim. | 100% |
| Class B2 | Priority Non-Tax Claims against the Marketing Fund Trusts Debtors | Except to the extent that a Holder of an Allowed Class B2 Claim agrees to less favorable treatment with the Debtors or Reorganized Debtors, each Holder of an Allowed Class B2 Claim, in full and complete satisfaction, discharge and release of such Claim, shall be paid in full in Cash on the later of the Distribution Date and a date that is as soon as practicable after the date upon which such Claim becomes an Class B2 Claim. | 100% |
| Class B3 | Other Secured Claims against the Marketing Fund Trusts Debtors | Except to the extent that a Holder of an Allowed Class B3 Claim agrees to less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Class B3 Claim, in full and complete satisfaction, discharge and release of such Claim shall be (i) paid in full in Cash on the later of the Distribution Date and a date that is as soon as practicable after the date upon which such Claim becomes an Allowed Class B3 Claim or (ii) otherwise Unimpaired within the meaning of Bankruptcy Code section 1124. | 100% |

4

| | SUMMARY OF PLAN TREATMENT AND EXPECTED RECOVERIES | | |
|---|---|---|---|
| **Class** | **Designation** | **Plan Treatment** | **Estimated Recovery Under the Plan** |
| Class B4 | Unsecured Claims against the Marketing Fund Trusts Debtors | Except to the extent a Holder of an Allowed Class B4 Claim agrees to less favorable treatment with the Debtors or Reorganized Debtors, as applicable, in full and complete satisfaction, discharge and release of such Claims, Holders of Allowed Class B4 Claims shall receive their Pro Rata share of the Company Specified Litigation Proceeds, unless such Holder elects to make the Stock in Lieu Election following receipt of the Stock in Lieu Election Notice.  For the avoidance of doubt (i) the Pro Rata share due to a Holder of an Allowed Class B4 Claim that has not made the Stock in Lieu Election shall be determined by dividing the amount of such Holder's Allowed Class B4 Claim by the aggregate amount of Allowed Class A4 Claims and Allowed Class B4 Claims of all Holders that have not made the Stock in Lieu Election and (ii) the Pro Rata share due to a Holder of an Allowed Class B4 Claim that has made the Stock in Lieu Election shall be determined by dividing the amount of such Holder's Allowed Class B4 Claim by the aggregate amount of Allowed Class A4 Claims and Allowed Class B4 Claims of all Holders that have made the Stock in Lieu Election. | 0-100%[5] <br><br> 0-10%[6] |
| Class B5 | Interests in the Marketing Fund Trusts Debtors | Class B6 Interests shall be Reinstated and the legal, equitable and contractual rights to which Holders of such Allowed Interests are entitled shall remain unaltered so as to maintain the organizational structure of the Debtors as such structure existed on the Petition Date. | 100% |

## Discharge, Injunction, Releases and Exculpation

Article IX of the Plan contains, among other things, certain discharge, exculpation and release provisions.

---

[5]    Recoveries depend on, among other things, (a) the amount of the Company Specified Litigation Proceeds realized by the Reorganized Debtors pursuant to the Specified Litigation Waterfall and (b) the aggregate amount of Allowed Unsecured Claims of those Holders who do not make the Stock in Lieu Election.

[6]    Recoveries depend on the aggregate amount of Allowed Unsecured Claims of those Holders who make the Stock in Lieu Election.  Pursuant to the Plan, the Consenting Second Lien Lenders, with claims in the aggregate principal amount of approximately $174 million, plus accrued and unpaid interest as of the Petition Date, have already committed to make the Stock in Lieu Election.

RLF1 10043507v.1

**Relevant Definitions**

"*Exculpated Parties*" means, collectively: (a) the Consenting First Lien Lenders; (b) the First Lien Agent; (c) the Consenting Second Lien Lenders; (d) the Second Lien Agent; (e) the Consenting Existing Equity Holders; (f) Vectra; (g) the DIP Agent; (h) the DIP Lenders; and (i) with respect to the foregoing entities in clauses (a) through (h), their respective current and former equityholders, affiliates, subsidiaries, officers, directors, principals, members, managers, employees, funds, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (j) the Debtors' and Non-Debtor Affiliates' respective current officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals of the Debtors that served in such capacities during the Chapter 11 Cases.

"*Released Party*" means, each of: (a) the Consenting First Lien Lenders; (b) the First Lien Agent; (c) the Consenting Second Lien Lenders; (d) the Second Lien Agent; (e) the Consenting Existing Equity Holders; (f) Vectra; (g) the DIP Agent; (h) the DIP Lenders; (i) with respect to the foregoing entities in clauses (a) through (h), their respective current and former equityholders, affiliates, subsidiaries, officers, directors, principals, members, managers, employees, funds, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (j) the Non-Debtors Affiliates and (k) the Debtors' and the Non-Debtor Affiliates' respective current and former officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals that served in such capacities during the Chapter 11 Cases; *provided, however*, that no Specified Litigation Party shall constitute a Released Party, nor shall any Holder of a Former D&O Indemnification Claim constitute a Released Party.

A.    **Discharge of Claims and Termination of Interests**

     **As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and satisfaction or termination of all Interests, including any Claims arising under the First Lien Credit Agreement to the extent not reduced and modified by the Amended First Lien Credit Agreement, the Second Lien Credit Agreement, the Marketing Fund Trusts Credit Agreement to the extent not reduced and modified by the Amended Marketing Fund Trusts Credit Agreement, the DIP Facility and the DIP Facility Order. Except as otherwise provided in the Plan or the Confirmation Order, Confirmation shall, as of the Effective Date: (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, including SARs Claims and Former D&O Indemnification Claims, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i), in each case whether or not (w) a Proof of Claim is filed or deemed filed pursuant to Bankruptcy Code section 501, (x) a Claim based on such debt is Allowed pursuant to Bankruptcy Code section 502, (y) the Holder of a Claim based on such debt has accepted the Plan or (z) such Claim is listed in the Schedules; and (ii) satisfy, terminate or**

cancel all Interests and other rights of equity security holders in the Debtors other than the Intercompany Interests.

As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, or their respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims and other debts and liabilities against the Debtors and satisfaction, termination or cancellation of all Interests and other rights of equity security holders in the Debtors, pursuant to Bankruptcy Code sections 524 and 1141, and such discharge will void any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

## B.    Debtor Releases

Notwithstanding anything contained to the contrary in the Plan, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is confirmed in the Plan, the Released Parties are deemed released and discharged by the Debtors and their Estates from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Support Agreement, or any related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. For the avoidance of doubt, the Specified Litigation Claims shall not be released pursuant to the Plan, and the Specified Litigation Parties are not Released Parties.

7

C.    Releases by Plan Support Releasing Parties

Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, the Plan Support Releasing Parties are deemed to have released and discharged the Debtors and their Estates and the Released Parties from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Support Agreement, or any related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. For the avoidance of doubt, the Specified Litigation Claims shall not be released pursuant to the Plan, and the Specified Litigation Parties are not Released Parties.

D.    Exculpation

Notwithstanding anything to the contrary in the Plan, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, none of the Exculpated Parties, shall have or incur any liability for any claim, cause of action, or other assertion of liability for any act taken or omitted in connection with, or arising out of, the Chapter 11 Cases or the negotiation, formulation, preparation, administration, consummation and/or implementation of the Plan, or any contract, instrument, document, or other agreement entered into pursuant thereto including, without limitation, the Restructuring Support Agreement, through the Effective Date; provided that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan and administration thereof. For the avoidance of doubt, the Specified Litigation Parties are not Exculpated Parties.

E.    **Injunction**

**Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against the Debtors or the Reorganized Debtors or their respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or the Reorganized Debtors or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors or the Reorganized Debtors or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors or their respective property; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.**

**Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim, demand, debt, right, cause of action or liability that is released pursuant to the Plan are permanently enjoined from taking any of the following actions on account of such released Claims, demands, debts, rights, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Person; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.**

Parties in interest should carefully review, among other things, the discharge, exculpation, injunction and release provisions set forth in Article IX of the Plan, to determine how such provisions may affect them and their rights.

## Assumption of Executory Contracts and Unexpired Leases and Payment of Cure Amounts

Except as otherwise provided in the Plan, unless the executory contract or unexpired lease to which you are a party with one or more of the Debtors (a) was previously assumed or rejected by the Debtors, (b) previously expired or terminated pursuant to its terms, (c) is the subject of a motion to assume or reject filed by the Debtors prior to the Effective Date, or (d) is specifically designated on the Schedule of Rejected Executory Contracts and Unexpired Leases, the Debtors propose to assume your Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365 on the Effective Date.  The proposed Cure Amount for an Executory Contract or Unexpired Lease that is assumed pursuant to the Plan shall be zero dollars unless otherwise indicated in a Schedule of Cure Amounts.  The Schedule of Cure Amounts will be filed and served on the non-Debtors contract counterparties as part of the Plan Supplement at least seven (7) days before the Objection Deadline (as defined herein).

9

**If you wish to object to the proposed assumption of your Executory Contract or Unexpired Lease or the proposed Cure Amount associated therewith, you must file an objection before the Objection Deadline in accordance with the objection procedures set forth below.**

### Hearing on Confirmation of the Plan, the Adequacy of the Disclosure Statement and Objections to the Assumption of Executory Contracts and Unexpired Leases

The hearing to consider the adequacy of the Disclosure Statement (and any objections thereto), confirmation of the Plan (and any objections thereto), objections to the proposed assumption of executory contracts or unexpired leases (respectively, the "*Executory Contracts*" and "*Unexpired Leases*"), if any, and the proposed Cure Amounts associated therewith, and any other matter that may properly come before the Court shall be held before the Honorable [_____], United States Bankruptcy Judge, at the United States Bankruptcy Court, 824 North Market Street, Wilmington, Delaware, 19801, on April [__], 2014 at ____:_.m. (prevailing Eastern Time) (the "*Combined Hearing*"). The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and which notice will be available on the electronic case filing docket.

Any objections (each, an "*Objection*") to the Disclosure Statement and the Plan, as well as objections to the proposed assumption of Executory Contracts and Unexpired Leases and the associated proposed Cure Amounts, must:  (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; and (iv) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or the Disclosure Statement, as applicable, and with respect to objections to the proposed Cure Amounts, the requested Cure Amount(s).

Objections must be filed with the Court and served so as to be <u>actually received</u> no later than April [__], 2014 at 4:00 p.m. (prevailing Eastern Time) (the "*Objection Deadline*") by: (i) the Debtors, QCE Finance LLC, 1001 17th Street, Suite 200, Denver, Colorado 80202, Attn: Kenneth Cutshaw; (ii) co-counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn:  Philip C. Dublin and Jason P. Rubin, and Richards Layton & Finger P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn:  Mark D. Collins and Amanda R. Steele, (iii) counsel to Avenue, O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036, Attn: John J. Rapisardi and Joseph Zujkowski; (iv) counsel to Fortress, Skadden Arps Slate Meagher & Flom, 30 South Grand Avenue, Los Angeles, California 90071, Attn:  Van C. Durrer, II; (v) co-counsel to the Consenting First Lien Lenders, Milbank Tweed Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017, Attn: Thomas R. Kreller and David B. Zolkin, and Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Robert J. Dehney; (vi) counsel to the First Lien Agent, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Mark R. Somerstein; (vii) counsel to the Second Lien Agent, Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036, Attn: Bart Pisella and Timothy P. Kober; (viii) counsel to Vectra, Kasowitz Benson Torres & Friedman LLP, 1633 Broadway, New York, New York 10019,

10

Attn: Adam L. Shiff; (ix) counsel to any statutory committee appointed in these chapter 11 cases; and (x) the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, Suite 2207, Lockbox 35, 844 N. King Street, Wilmington, DE 19801, by email at tiiara.patton@usdoj.gov or by fax at (302) 573-6497, Attn: Tiiara Patton

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE INFORMATION CONTAINED HEREIN, PLEASE CONTACT THE BALLOTING AGENT AT (855) 388-4579 OR QUIZNOSINFO@PRIMECLERK.COM.**

Wilmington, Delaware
Date: _____, 2014

**RICHARDS LAYTON & FINGER P.A.**
Mark D. Collins (No. 2981)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 654-7700
Facsimile: (302) 651-7701

– and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (*pro hac vice* admission pending)
Philip C. Dublin (*pro hac vice* admission pending)
Jason P. Rubin (*pro hac vice* admission pending)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

11

## EXHIBIT 2

**Combined Hearing Notice for Publication**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| QCE FINANCE LLC, *et al.*,[1] | Case No. 14-_____ (  ) |
| Debtors. | Joint Administration Requested |

### NOTICE OF (I) COMMENCEMENT
### OF PREPACKAGED CHAPTER 11 CASES, (II) COMBINED HEARING ON (A)
### DISCLOSURE STATEMENT AND (B) CONFIRMATION OF THE DEBTORS' JOINT
### PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION AND RELATED
### MATTERS AND (III) OBJECTION DEADLINES AND SUMMARY OF THE PLAN

**PLEASE TAKE NOTICE THAT** on March [__], 2014 (the "***Petition Date***"), the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed for voluntary relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "***Court***"). Also on the Petition Date, the Debtors filed with the Court the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* (as amended from time to time, the "***Plan***") and the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* (as amended from time to time, the "***Disclosure Statement***"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' counsel at the address specified below and are on file with the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington Delaware 19801, where they are available for review between the hours of 8:00 a.m. to 4:00 p.m. (prevailing Eastern Time). The Plan and Disclosure Statement also are available for inspection on the Court's Internet site at www.deb.uscourts.gov or free of charge on the Debtors' restructuring website at http://cases.primeclerk.com/quiznos. The Debtors' restructuring hotline is: (855) 388-4579.[2]

**PLEASE TAKE FURTHER NOTICE THAT** a hearing to consider the adequacy of the Disclosure Statement (and any objections thereto), confirmation of the Plan (and any objections thereto), objections to the assumption of executory contracts or unexpired leases (respectively,

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  QCE Finance LLC (7897); American Food Distributors LLC (8099); Quiznos Global LLC (2772); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); QAFT, Inc. (6947); Restaurant Realty LLC (8293); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); National Marketing Fund Trust (4951); The Regional Advertising Program Trust (2035); and TQSC II LLC (8683).  The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. The statements contained herein are summaries of the provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  To the extent there is a discrepancy between the terms herein and the Plan, the Plan shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

the "*Executory Contracts*" and "*Unexpired Leases*"), if any, and the proposed Cure Amounts associated therewith, and any other matter that may properly come before the Court shall be held before the Honorable [_____], United States Bankruptcy Judge, at the United States Bankruptcy Court, 824 North Market Street, Wilmington, Delaware, 19801, on April [__], 2014 at ____:__.m. (prevailing Eastern Time) (the "*Combined Hearing*"). The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and which notice will be available on the electronic case filing docket.

**PLEASE TAKE FURTHER NOTICE THAT** any objections (each, an "*Objection*") to the Disclosure Statement and the Plan, as well as objections to the proposed assumption of Executory Contracts and Unexpired Leases and the associated proposed Cure Amounts, must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; and (iv) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or the Disclosure Statement, as applicable, and with respect to objections to the proposed Cure Amounts, the requested Cure Amount(s).

Objections must be filed with the Court and served so as to be <u>actually received</u> no later than April [__], 2014 at 4:00 p.m. (prevailing Eastern Time) (the "*Objection Deadline*") by: (i) the Debtors, QCE Finance LLC, 1001 17th Street, Suite 200, Denver, Colorado 80202, Attn: Kenneth Cutshaw; (ii) co-counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Philip C. Dublin and Jason P. Rubin, and Richards Layton & Finger P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins and Amanda R. Steele, (iii) counsel to Avenue, O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036, Attn: John J. Rapisardi and Joseph Zujkowski; (iv) counsel to Fortress, Skadden Arps Slate Meagher & Flom, 30 South Grand Avenue, Los Angeles, California 90071, Attn: Van C. Durrer, II; (v) co-counsel to the Consenting First Lien Lenders, Milbank Tweed Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017, Attn: Thomas R. Kreller and David B. Zolkin, and Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Robert J. Dehney; (vi) counsel to the First Lien Agent, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Mark R. Somerstein; (vii) counsel to the Second Lien Agent, Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036, Attn: Bart Pisella and Timothy P. Kober; (viii) counsel to Vectra, Kasowitz Benson Torres & Friedman LLP, 1633 Broadway, New York, New York 10019, Attn: Adam L. Shiff; (ix) counsel to any statutory committee appointed in these chapter 11 cases; and (x) the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, Suite 2207, Lockbox 35, 844 N. King Street, Wilmington, DE 19801, by email at tiiara.patton@usdoj.gov or by fax at (302) 573-6497, Attn: Tiiara Patton.

UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.

YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

IF YOU HAVE ANY QUESTIONS REGARDING THE INFORMATION CONTAINED HEREIN, PLEASE CONTACT THE BALLOTING AGENT AT (855) 388-4579 OR QUIZNOSINFO@PRIMECLERK.COM.

Wilmington, Delaware
Date: [_____], 2014

**RICHARDS LAYTON & FINGER P.A.**
Mark D. Collins (No. 2981)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 654-7700
Facsimile: (302) 651-7701

– and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (*pro hac vice* admission pending)
Philip C. Dublin (*pro hac vice* admission pending)
Jason P. Rubin (*pro hac vice* admission pending)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**EXHIBIT 3**

**Form of First Lien Facility Claims Ballot**

**IMPORTANT: CHAPTER 11 CASES HAVE NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THIS BALLOT IS A PREPETITION SOLICITATION OF YOUR VOTE ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE VOTING DEADLINE IS MARCH 14, 2014, AT 12:00 P.M. (PREVAILING EASTERN TIME).**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QCE FINANCE LLC, *et al.*,[1] | ) | Case No. 14-_____ ( ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

## BALLOT FOR ACCEPTING OR REJECTING
## THE DEBTORS' JOINT PREPACKAGED PLAN OF REORGANIZATION

## CLASS A1—FIRST LIEN FACILITY CLAIMS

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE DEBTORS' BALLOTING AGENT, PRIME CLERK LLC (THE *"BALLOTING AGENT"*).

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT. THIS BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE ON THE DEBTORS' PLAN.

- THIS BALLOT MUST BE RETURNED BY ELECTRONIC MAIL TO QUIZNOSBALLOTS@PRIMECLERK.COM, SO THAT IT IS **ACTUALLY RECEIVED** BY THE BALLOTING AGENT BEFORE **12:00 P.M. (PREVAILING EASTERN TIME) ON MARCH 14, 2014** (THE *"VOTING DEADLINE"*).

- **ANY HOLDERS CASTING BALLOTS PRIOR TO THE TIME OF FILING OF ANY OF THE DEBTORS' CHAPTER 11 PETITIONS SHALL NOT BE ENTITLED TO CHANGE THEIR VOTE OR CAST NEW BALLOTS AFTER**

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  QCE Finance LLC (7897); American Food Distributors LLC (8099); National Marketing Fund Trust (4951); QAFT, Inc. (6947); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); Quiznos Global LLC (2772); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); Regional Advertising Program Trust (2035); Restaurant Realty LLC (8293); and TQSC II LLC (8683).  The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

> **THE DEBTORS COMMENCE THE CHAPTER 11 CASES UNLESS OTHERWISE PERMITTED BY THE DEBTORS IN CONSULTATION WITH THE CONSENTING PARTIES.**
>
> - IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.
>
> - NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

This ballot (the "***Ballot***") is being sent to you because records indicate that you are the Holder of a Class A1 First Lien Facility Claim as of March 10, 2014 (the "***Voting Record Date***"), and, accordingly, you may have a right to vote to accept or reject the Plan. This Ballot may not be used for any purpose other than for submitting votes with respect to the *Debtors' Joint Prepackaged Plan of Reorganization* (as amended from time to time, the "***Plan***").[2]

**Ballots are only being solicited from Holders as of the Voting Record Date that are "Accredited Investors" as that term is defined by Rule 501 of Regulation D, 17 C.F.R. § 230.501(a), promulgated under the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as amended (the "*Securities Act*").[3] If you are not an "Accredited Investor," please do not return this Ballot.**

---

[2]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[3]   (1) Any bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(a)(13) of the Securities Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director or executive officer of the Debtors;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000 (for purposes of calculating net worth, (i) a person's primary residence shall not be included as an asset, (ii) indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the

2

Your rights are described in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization* (as amended from time to time, the "***Disclosure Statement***"). The Plan and Disclosure Statement are included in the packet you are receiving with this Ballot (collectively, the "***Solicitation Package***").

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Claim thereunder. Your Claim has been placed in Class A1 under the Plan.*

**THE VOTING DEADLINE IS 12:00 P.M. (PREVAILING EASTERN TIME) ON MARCH 14, 2014.**

**Item 1. Amount of Class A1 First Lien Facility Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Class A1 First Lien Facility Claim (or the authorized signatory of such Holder) in the following aggregate amount.

$ _____

**Item 2. Vote of Class A1 First Lien Facility Claim.**

The Holder of Class A1 First Lien Facility Claim set forth in Item 1 votes to *(please check one)*:

| **Accept the Plan** ☐ | **Reject the Plan** ☐ |
|---|---|

---

amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability), and (iii) indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability);

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in §230.506(b)(2)(ii); and

(8) Any entity in which all of the equity owners are accredited investors.

3

**Item 3. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1.      as of the Voting Record Date, the undersigned was (a) the Holder of the Claims being voted or (b) the authorized signatory for a Holder of the Claims being voted in the amount set forth in Item 1;

2.      the undersigned is (a) an "Accredited Investor" as that term is defined by Rule 501 of Regulation D, 17 C.F.R. § 230.501(a), or (b) the authorized signatory for a Holder of a Class A1 First Lien Facility Claim that is an Accredited Investor;

3.      the Holder has received a copy of the Disclosure Statement, the Plan and the remainder of the Solicitation Package and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

4.      the Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Disclosure Statement, Solicitation Package or other publicly available materials;

5.      the Holder has cast the same vote with respect to all of the Holder's Class A1 First Lien Facility Claims, and no other Ballots with respect to the same Class A1 First Lien Facility Claim have been cast, or, if any other Ballots have been cast with respect to such Class A1 First Lien Facility Claim, then any such Ballots are revoked;

6.      the Holder understands and acknowledges that only the latest-received properly completed Ballot cast and actually received by the Balloting Agent prior to the Voting Deadline with respect to the Class A1 First Lien Facility Claim set forth in Item 1 will be counted, and, if any other Ballot has been previously cast with respect to the Class A1 First Lien Facility Claim set forth in Item 1, such other Ballot shall be deemed revoked; *provided, however,* that the Debtors, in consultation with the Consenting Parties, may extend the period of time (on a daily basis, if necessary) during which Ballots will be accepted for any reason, including determining whether or not the requisite number of acceptances have been received, and the Debtors will give notice of any extension in a manner deemed reasonable to the Debtors in their discretion; *provided, further,* that Holders of Claims who cast a Ballot prior to the time of filing of any of the Debtors' chapter 11 petitions shall not be entitled to change their vote or cast new Ballots after the Chapter 11 Cases are commenced; and

7.      the Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

4

**Item 4. Holder Information and Signature.**

Name of Holder: _____

*(print or type)*

Social Security or Federal Tax I.D. No.:_____

*(optional)*

Signature: _____

Name of Signatory:_____

*(if other than Holder)*

Title:_____

Address:_____

_____

_____

Phone:_____

Email Address:_____

Date Completed:_____

**PLEASE COMPLETE, SIGN AND DATE THE BALLOT AND PROMPTLY RETURN THE BALLOT BY ELECTRONIC MAIL AS DIRECTED BELOW:**

| **Email for Returning Ballots:** quiznosballots@primeclerk.com |
| --- |

**THE DEBTORS ENCOURAGE YOU TO RETURN YOUR BALLOT BY ELECTRONIC MAIL TO QUIZNOSBALLOTS@PRIMECLERK.COM.  PLEASE <u>DO</u> <u>NOT</u> RETURN A COPY OF YOUR BALLOT BY OVERNIGHT MAIL OR HAND DELIVERY.**

**YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 12:00 P.M. (PREVAILING EASTERN TIME) ON MARCH 14, 2014.**

RLF1 10043507v.1

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING
INSTRUCTIONS, PLEASE CALL THE BALLOTING AGENT AT (855) 388-4579.

## VOTING INSTRUCTIONS

1.    As described in the Disclosure Statement, the Debtors are soliciting the votes of Holders
of Class A1 First Lien Facility Claims with respect to the Plan. The Plan and Disclosure
Statement are included in the Solicitation Package you are receiving with the Ballot.
Capitalized terms used but not defined herein shall have the meanings assigned to them in
the Plan.

2.    The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you
if it is accepted by the Holders of at least two-thirds in amount and more than one-half in
number of Claims in at least one class that votes on the Plan and if the Plan otherwise
satisfies the requirements for confirmation provided by Bankruptcy Code section 1129.

3.    To ensure that your vote is counted, you must:  (a) complete the Ballot; (b) indicate your
decision either to accept or reject the Plan in Item 2 of the Ballot; and (c) **sign and
return the Ballot** in accordance with the instructions on the Ballot to the Balloting Agent
**via electronic mail to quiznosballots@primeclerk.com, so that it is actually received
by the Voting Deadline**.

4.    The Ballot must be **actually received** by the Balloting Agent by the Voting Deadline.
**The Voting Deadline is MARCH 14, 2014 at 12:00 p.m. (Prevailing Eastern Time)**.

5.    If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors,
in consultation with the Consenting Parties, determine otherwise or as permitted by the
Bankruptcy Court. In all cases, Holders should allow sufficient time to assure timely
delivery. No Ballot should be sent to the Debtors or the Debtors' financial or legal
advisors.

6.    If multiple Ballots are received from an individual Holder with respect to the same Claim
prior to the Voting Deadline, the last Ballot timely received will supersede and revoke
any previously received Ballot; *provided, however,* that Holders of Claims who cast a
Ballot prior to the time of filing of any of the Debtors' chapter 11 petitions shall not be
entitled to change their vote or cast new Ballots after the Chapter 11 Cases are
commenced.

7.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to
vote to accept or reject the Plan and to make certain certifications with respect thereto.
Accordingly, at this time, creditors should not surrender certificates or instruments
representing or evidencing their Claims, and the Debtors will not accept delivery of any
such certificates or instruments surrendered together with a Ballot.

8.    The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim or
Interest; or (b) an assertion or admission with respect to any Claim or Interest.

RLF1 10043507v.1

9.     Please be sure to sign and date your Ballot. If you are completing the Ballot on behalf of an entity, indicate your relationship with that entity and the capacity in which you are signing.

10.    You must vote your entire Class A1 First Lien Facility Claim either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

11.    Any Ballot that is properly completed, executed and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

12.    The following Ballots will not be counted in determining the acceptance or rejection of the Plan, including, but not limited to, those Ballots that: (i) are received after the Voting Deadline unless the Debtors (in consultation with the Consenting Parties) have granted an extension of the Voting Deadline with respect to such Ballot; (ii) are (in whole or in material part) illegible or unidentifiable; (iii) lack signatures; (iv) lack necessary information; (v) are damaged; (vi) are cast by a person or entity that does not hold a Claim in a Class entitled to vote on the Plan as of the Voting Record Date; (vii) does not indicate an acceptance or a rejection or that indicates both an acceptance and a rejection; (viii) are sent to the Bankruptcy Court, the Debtors, the Debtors' agents, advisors or representatives (other than the Balloting Agent); or (ix) partially accept and partially reject the Plan.

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT AT (855) 388-4579.**

RLF1 10043507v.1

# EXHIBIT 4

**Form of Marketing Fund Trusts Facility Secured Claim Ballot**

**IMPORTANT: CHAPTER 11 CASES HAVE NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THIS BALLOT IS A PREPETITION SOLICITATION OF YOUR VOTE ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE VOTING DEADLINE IS MARCH 14, 2014, AT 12:00 P.M. (PREVAILING EASTERN TIME).**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QCE FINANCE LLC, *et al.*,[1] | ) | Case No. 14-_____ ( ) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |

**BALLOT FOR ACCEPTING OR REJECTING**
**THE DEBTORS' JOINT PREPACKAGED PLAN OF REORGANIZATION**

**CLASS B1—MARKETING FUND TRUSTS FACILITY SECURED CLAIMS**

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE DEBTORS' BALLOTING AGENT, PRIME CLERK LLC (THE "***BALLOTING AGENT***").

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT. THIS BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE ON THE DEBTORS' PLAN.

- THIS BALLOT MUST BE RETURNED BY ELECTRONIC MAIL TO QUIZNOSBALLOTS@PRIMECLERK.COM, SO THAT IT IS **ACTUALLY RECEIVED** BY THE BALLOTING AGENT BEFORE **12:00 P.M. (PREVAILING EASTERN TIME) ON MARCH 14, 2014** (THE "***VOTING DEADLINE***").

- **ANY HOLDERS CASTING BALLOTS PRIOR TO THE TIME OF FILING OF ANY OF THE DEBTORS' CHAPTER 11 PETITIONS SHALL NOT BE ENTITLED TO CHANGE THEIR VOTE OR CAST NEW BALLOTS AFTER**

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: QCE Finance LLC (7897); American Food Distributors LLC (8099); National Marketing Fund Trust (4951); QAFT, Inc. (6947); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); Quiznos Global LLC (2772); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); Regional Advertising Program Trust (2035); Restaurant Realty LLC (8293); and TQSC II LLC (8683). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

THE DEBTORS COMMENCE THE CHAPTER 11 CASES UNLESS OTHERWISE PERMITTED BY THE DEBTORS IN CONSULTATION WITH THE CONSENTING PARTIES.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

This ballot (the "*Ballot*") is being sent to you because records indicate that you are the Holder of a Class B1 Marketing Fund Trusts Facility Secured Claim as of March 10, 2014 (the "*Voting Record Date*"), and, accordingly, you may have a right to vote to accept or reject the Plan. This Ballot may not be used for any purpose other than for submitting votes with respect to the *Debtors' Joint Prepackaged Plan of Reorganization* (as amended from time to time, the "*Plan*").[2]

**Ballots are only being solicited from Holders as of the Voting Record Date that are "Accredited Investors" as that term is defined by Rule 501 of Regulation D, 17 C.F.R. § 230.501(a), promulgated under the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as amended (the "*Securities Act*").[3] If you are not an "Accredited Investor," please do not return this Ballot.**

---

[2]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[3]   (1) Any bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(a)(13) of the Securities Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director or executive officer of the Debtors;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000 (for purposes of calculating net worth, (i) a person's primary residence shall not be included as an asset, (ii) indebtedness that is secured by the person's primary residence, up to the estimated fair market value of

2

Your rights are described in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization* (as amended from time to time, the "***Disclosure Statement***"). The Plan and Disclosure Statement are included in the packet you are receiving with this Ballot (collectively, the "***Solicitation Package***").

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Claim thereunder. Your Claim has been placed in Class B1 under the Plan.*

**THE VOTING DEADLINE IS 12:00 P.M. (PREVAILING EASTERN TIME) ON MARCH 14, 2014.**

**Item 1. Amount of Class B1 Marketing Fund Trusts Facility Secured Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Class B1 Marketing Fund Trusts Facility Secured Claim (or the authorized signatory of such Holder) in the following aggregate amount.

$ _____

**Item 2. Vote of Class B1 Marketing Fund Trusts Facility Secured Claim.**

The Holder of Class B1 Marketing Fund Trusts Facility Secured Claim set forth in Item 1 votes to *(please check one)*:

| <u>Accept</u> the Plan | <u>Reject</u> the Plan |
|:---:|:---:|
| ☐ | ☐ |

the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability), and (iii) indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability);

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in §230.506(b)(2)(ii); and

(8) Any entity in which all of the equity owners are accredited investors.

3

**Item 3. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1.   as of the Voting Record Date, the undersigned was (a) the Holder of the Claims being voted or (b) the authorized signatory for a Holder of the Claims being voted in the amount set forth in Item 1;

2.   the undersigned is (a) an "Accredited Investor" as that term is defined by Rule 501 of Regulation D, 17 C.F.R. § 230.501(a), or (b) the authorized signatory for a Holder of a Class B1 Marketing Fund Trusts Facility Secured Claim that is an Accredited Investor;

3.   the Holder has received a copy of the Disclosure Statement, the Plan and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4.   the Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Disclosure Statement, Solicitation Package or other publicly available materials;

5.   the Holder has cast the same vote with respect to all of the Holder's Class B1 Marketing Fund Trusts Facility Secured Claims, and no other Ballots with respect to the same Class B1 Marketing Fund Trusts Facility Secured Claim have been cast, or, if any other Ballots have been cast with respect to such Class B1 Marketing Fund Trusts Facility Secured Claim, then any such Ballots are revoked;

6.   the Holder understands and acknowledges that only the latest-received properly completed Ballot cast and actually received by the Balloting Agent prior to the Voting Deadline with respect to the Class B1 Marketing Fund Trusts Facility Secured Claim set forth in Item 1 will be counted, and, if any other Ballot has been previously cast with respect to the Class B1 Marketing Fund Trusts Facility Secured Claim set forth in Item 1, such other Ballot shall be deemed revoked; *provided, however*, that the Debtors, in consultation with the Consenting Parties, may extend the period of time (on a daily basis, if necessary) during which Ballots will be accepted for any reason, including determining whether or not the requisite number of acceptances have been received, and the Debtors will give notice of any extension in a manner deemed reasonable to the Debtors in their discretion; *provided, further*, that Holders of Claims who cast a Ballot prior to the time of filing of any of the Debtors' chapter 11 petitions shall not be entitled to change their vote or cast new Ballots after the Chapter 11 Cases are commenced; and

7.   the Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

4

**Item 4. Holder Information and Signature.**

Name of Holder: _____
_____(print or type)

Social Security or Federal Tax I.D. No.:_____
_____(optional)
Signature: _____

Name of Signatory:_____
_____(if other than Holder)
Title:_____

Address:_____

_____

_____

Phone:_____

Email Address:_____

Date Completed:_____

**PLEASE COMPLETE, SIGN AND DATE THE BALLOT AND PROMPTLY RETURN
THE BALLOT BY ELECTRONIC MAIL AS DIRECTED BELOW:**

| **Email for Returning Ballots:** quiznosballots@primeclerk.com |
| --- |

**THE DEBTORS ENCOURAGE YOU TO RETURN YOUR BALLOT BY ELECTRONIC
MAIL TO QUIZNOSBALLOTS@PRIMECLERK.COM.  PLEASE <u>DO</u> <u>NOT</u> RETURN A
COPY OF YOUR BALLOT BY OVERNIGHT MAIL OR HAND DELIVERY.**

**YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE,
WHICH IS 12:00 P.M. (PREVAILING EASTERN TIME) ON MARCH 14, 2014.**

RLF1 10043507v.1

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING INSTRUCTIONS, PLEASE CALL THE BALLOTING AGENT AT (855) 388-4579.

## **VOTING INSTRUCTIONS**

1. As described in the Disclosure Statement, the Debtors are soliciting the votes of Holders of Class B1 Marketing Fund Trusts Facility Secured Claims with respect to the Plan. The Plan and Disclosure Statement are included in the Solicitation Package you are receiving with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by Bankruptcy Code section 1129.

3. To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 2 of the Ballot; and (c) **sign and return the Ballot** in accordance with the instructions on the Ballot to the Balloting Agent **via electronic mail to quiznosballots@primeclerk.com, so that it is actually received by the Voting Deadline**.

4. The Ballot must be **actually received** by the Balloting Agent by the Voting Deadline. **The Voting Deadline is MARCH 14, 2014 at 12:00 p.m. (Prevailing Eastern Time)**.

5. If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors, in consultation with the Consenting Parties, determine otherwise or as permitted by the Bankruptcy Court. In all cases, Holders should allow sufficient time to assure timely delivery. No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.

6. If multiple Ballots are received from an individual Holder with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will supersede and revoke any previously received Ballot; *provided, however,* that Holders of Claims who cast a Ballot prior to the time of filing of any of the Debtors' chapter 11 petitions shall not be entitled to change their vote or cast new Ballots after the Chapter 11 Cases are commenced.

7. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

8. The Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or Interest; or (b) an assertion or admission with respect to any Claim or Interest.

RLF1 10043507v.1

9.      Please be sure to sign and date your Ballot. If you are completing the Ballot on behalf of an entity, indicate your relationship with that entity and the capacity in which you are signing.

10.     You must vote your entire Class B1 Marketing Fund Trusts Facility Secured Claim either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

11.     Any Ballot that is properly completed, executed and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

12.     The following Ballots will not be counted in determining the acceptance or rejection of the Plan, including, but not limited to, those Ballots that: (i) are received after the Voting Deadline unless the Debtors (in consultation with the Consenting Parties) have granted an extension of the Voting Deadline with respect to such Ballot; (ii) are (in whole or in material part) illegible or unidentifiable; (iii) lack signatures; (iv) lack necessary information; (v) are damaged; (vi) are cast by a person or entity that does not hold a Claim in a Class entitled to vote on the Plan as of the Voting Record Date; (vii) does not indicate an acceptance or a rejection or that indicates both an acceptance and a rejection; (viii) are sent to the Bankruptcy Court, the Debtors, the Debtors' agents, advisors or representatives (other than the Balloting Agent); or (ix) partially accept and partially reject the Plan.

## PLEASE SUBMIT YOUR BALLOT PROMPTLY!

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT AT (855) 388-4579.**

RLF1 10043507v.1