# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QCE FINANCE LLC, *et al.*,[1] | ) | Case No. 14-10543 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | Re: Docket Nos. 11 and 39, *243* |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 507 (1) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING
USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING
SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING
ADEQUATE PROTECTION AND (V) MODIFYING AUTOMATIC STAY**

Upon the motion (the "***DIP Motion***")[2] of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***")[3] pursuant to Bankruptcy Code sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2, seeking entry of an order (this "***Order***") *inter alia*:

(i)      authorizing the Debtors to obtain secured postpetition financing on a super-priority basis (the "***DIP Facility***") pursuant to the terms and conditions of that certain Debtor In Possession Credit Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "***DIP Agreement***") by and among Borrower, Parent, and the lenders from time to time party thereto (collectively, the "***DIP Lenders***"), and Wilmington Trust, National

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  QCE Finance LLC (7897); American Food Distributors LLC (8099); Quiznos Global LLC (2772); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); QAFT, Inc. (6947); Restaurant Realty LLC (8293); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); National Marketing Fund Trust (4951); The Regional Advertising Program Trust (2035); and TQSC II LLC (8683).  The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

[2]   Capitalized terms used, but not defined herein, shall have the meaning ascribed to them in the DIP Motion or the DIP Agreement.

[3]   Two of the Guarantors, Quizmark LLC and QCE Gift Card LLC (each a "***Non-Debtor Subsidiary Loan Party***" and, collectively with the Debtors, the "***DIP Obligors***") are not Debtors.

Association, as administrative agent (in such capacity, the *"DIP Agent"*), substantially in the form of **Exhibit 1** annexed hereto;

(ii)    authorizing the Debtors to execute and deliver the DIP Agreement and the other related credit documents (the *"DIP Documents"*) by and among the Debtors, the Non-Debtor Subsidiary Loan Parties and the DIP Agent, and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    granting the DIP Facility and all obligations owing thereunder and under the DIP Documents to the DIP Agent and the DIP Lenders (collectively, and including all *"Obligations"* as described in the DIP Agreement, the *"DIP Obligations"*) allowed super-priority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein);

(iv)    granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens upon all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in Bankruptcy Code section 363(a), which security interests and liens shall be subject to the priorities set forth herein;

(v)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Documents and this Order as such become due, including, without limitation, closing fees and the reasonable fees and disbursements of the attorneys, advisers, accountants, and other consultants of the DIP Agent and the DIP Lenders, all to the extent provided in and in accordance with the terms of the DIP Documents;

(vi)    authorizing the use of Cash Collateral of (a) the Prepetition First Lien Agent and the Prepetition First Lien Lenders under the Prepetition First Lien Credit Documents (each as

defined herein) and (b) Vectra Bank Colorado, National Association ("*Vectra*") under that certain Credit Agreement, dated as of September 26, 2007 (as amended prior to the date hereof, the "*Vectra Credit Agreement*"), and providing adequate protection to (x) the Prepetition First Lien Agent and Prepetition First Lien Lenders and (y) Vectra for any Diminution in Value of their interests in the Prepetition First Lien Collateral and Vectra Collateral (defined below) securing the Vectra Liens (defined below), respectively, including the Cash Collateral (each as defined herein); and

(vii)    vacating and modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Order, as limited pursuant hereto,

The Court having considered the DIP Motion, First Day Declaration, the exhibits attached thereto, the DIP Documents, and the evidence submitted at the interim hearing held on March 17, 2014 (the "*Interim Hearing*") and the Bankruptcy Court having entered an interim order dated March 17, 2014 [Docket No. 39] (the "*Interim Order*") that, among other things, scheduled a final hearing (the "*Final Hearing*") to consider entry of this Order; and notice of the Interim Order and the Final Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d), and 9014; and the Final Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' business; and it further appearing that the Debtors are

unable to obtain either unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code section 503(b)(1) or secured credit secured by a lien on property of the estate that is not otherwise subject to a lien under Bankruptcy Code section 364(c)(2) or secured by a junior lien on property of the estate that is subject to a lien pursuant to Bankruptcy Code section 364(c)(3); and adequate protection being provided on account of the interests in and liens on the property of the estates on which liens are to be granted; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     *Petition Date.*  On March 14, 2014 (the "*Petition Date*"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "*Court*") commencing these Cases.

B.     *Debtors in Possession.*  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  No trustee or examiner has been appointed in these Cases.

C.     *Jurisdiction and Venue.*  This Court has jurisdiction over these proceedings and over the persons and property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirmed their consent pursuant to rule 9013-1(f) of the Local Bankruptcy Rules to the entry of a final order by the Court in connection with the DIP Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue for the Cases and proceedings on the DIP Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     *Committee Formation.*   On March 26, 2014, the United States Trustee (the "*U.S. Trustee*") appointed a statutory committee of unsecured creditors in these Cases pursuant to Bankruptcy Code section 1102 (the "*Creditors Committee*").

E.     *The Debtors' Stipulations.*   After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Creditors Committee as set forth in paragraph 32 hereof, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge, and agree that (collectively, paragraphs E(i) through E(vii) hereof shall be referred to herein as the "*Debtors' Stipulations*"):

(i)     *Prepetition Facilities and Vectra Facility.*

(1) Pursuant to that certain Amended and Restated Credit Agreement, dated as of January 24, 2012, among QCE LLC (the "*Borrower*"), as borrower, QCE Finance LLC ("*Parent*" or "*Holdco*"), as a guarantor, the lenders party thereto from time to time (the "*Prepetition First Lien Lenders*") and Wilmington Trust, National Association, as successor administrative agent to Goldman Sachs Credit Partners L.P. (the "*Prepetition First Lien Agent*") (as amended, supplemented or otherwise modified prior to the date hereof, and including all exhibits and other ancillary documentation in respect thereof, the "*Prepetition First Lien Credit Agreement*"), the  Prepetition First Lien Lenders provided term loans to or for the benefit of the Prepetition Obligors (the "*Prepetition First Lien Facility*"). The Prepetition First Lien Credit Agreement and all instruments and documents executed at any time in connection therewith, shall be referred to collectively as the "*Prepetition First Lien Credit Documents*".

(2) Pursuant to that certain Credit Agreement, dated as of January 24, 2012, among the Borrower, as borrower, Holdco, the lenders party thereto from time to time (the *"Prepetition Second Lien Lenders"* and, collectively with the Prepetition First Lien Lenders, the *"Prepetition Lenders"*) and U.S. Bank, National Association, as administrative agent (the *"Prepetition Second Lien Agent"* and, together with the Prepetition First Lien Agent, the *"Prepetition Agents"*) (as amended, supplemented or otherwise modified prior to the date hereof, and including all exhibits and other ancillary documentation in respect thereof, the *"Prepetition Second Lien Credit Agreement"*), the Prepetition Second Lien Lenders provided term loans to or for the benefit of the Borrower (the *"Prepetition Second Lien Facility"* and together with the Prepetition First Lien Loan Facility, the *"Prepetition Facilities"*).  The Prepetition Second Lien Credit Agreement and all instruments and documents executed at any time in connection therewith, shall be referred to collectively as the *"Prepetition Second Lien Credit Documents"* and together with the Prepetition First Lien Credit Documents, the *"Prepetition Credit Documents."*

(3) Pursuant to the Vectra Credit Agreement, Vectra provided a $10 million secured revolving loan facility (the *"Vectra Credit Facility"*) to the Marketing Fund Trusts.  The Vectra Credit Facility and all instruments and documents executed at any time in connection therewith, shall be referred to collectively as the *"Vectra Credit Documents."*

(ii)      *Prepetition Obligations and Vectra Obligations.*

(1) The Prepetition First Lien Facility provided the Borrower with, *inter alia*, term loans in the aggregate principal amount of $452,615,864.52.  As of the Petition Date, the outstanding principal amount owed by the Prepetition Obligors under the Prepetition First Lien Credit Agreement was no less than $444,695,086.92, plus amounts, if any, unpaid, incurred,

or accrued prior to the Petition Date in accordance with the Prepetition First Lien Credit Documents, unpaid principal, accrued and unpaid interest, any fees of the Prepetition First Lien Agent, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition First Lien Credit Documents, including all "Obligations" as described in the Prepetition First Lien Credit Agreement (collectively, the "*Prepetition First Lien Obligations*").

(2) The Prepetition Second Lien Facility provided the Borrower with, *inter alia*, term loans in the aggregate principal amount of $139,193,235.59. As of the Petition Date, the outstanding principal amount owed by the Prepetition Obligors under the Prepetition Second Lien Credit Agreement was no less than $173,828,686.23, plus amounts, if any, paid, incurred, or accrued prior to the Petition Date in accordance with the Prepetition Second Lien Credit Documents, unpaid principal, accrued and unpaid interest, any fees of the Prepetition Second Lien Agent, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition Second Lien Credit Documents, including all "Obligations" as described in the Prepetition Second Lien Credit Agreement (collectively, the "*Prepetition Second Lien Obligations*" and, together with the Prepetition First Lien Obligations, the "*Prepetition Obligations*").

(3) The Vectra Credit Agreement, as amended, provides the Marketing Fund Trusts with revolving loans in the aggregate principal amount of $10,000,000.  As of the Petition Date, the outstanding principal amount owed by the Marketing Fund Trusts under the Vectra Credit Agreement was no less than $7,351,872.27, plus amounts, if any, paid, incurred, or accrued prior to the Petition Date in accordance with the Vectra Credit Documents, unpaid principal, accrued and unpaid interest, any fees of Vectra, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Vectra Credit Documents (collectively, the "*Vectra Obligations*").

(iii)    *Prepetition Collateral and Vectra Collateral.*

(1) To secure the Prepetition First Lien Obligations, the Borrower, Parent and the subsidiaries of Borrower that were guarantors (collectively with Parent, the "*Prepetition Guarantors*" and, collectively with Borrower, the "*Prepetition Obligors*")[4] granted to the Prepetition First Lien Lenders first-priority security interests in and liens (the "*Prepetition First Liens*") on substantially all of the assets of the Prepetition Obligors (as described in the Prepetition First Lien Credit Documents, the "*Prepetition First Lien Collateral*").

(2) The Prepetition Second Lien Obligations are secured by second-priority security interests in and liens (the "*Prepetition Second Liens*" and, together with the Prepetition First Liens, the "*Prepetition Liens*") on the Prepetition First Lien Collateral (as

---

[4]    Each of the Debtors is a Prepetition Obligor except for Debtors National Marketing Fund Trust and Regional Advertising Trusts (collectively, the "*Marketing Fund Trusts*").  Quiz-DIA LLC is a non-Debtor affiliate of the Debtors and is a guarantor of the Prepetition First Lien Credit Documents.

described in the Prepetition Second Lien Credit Documents, the *"Prepetition Second Lien Collateral"* or, the *"Prepetition Collateral"*).

(3) The Vectra Obligations are secured by first-priority security interests in and liens (the *"Vectra Liens"*) on substantially all assets of the Marketing Fund Trusts (as described in the Vectra Credit Documents, the *"Vectra Collateral"*).

(iv)    *The Prepetition Liens and Vectra Liens.*  The (1) Prepetition Liens on the Prepetition Collateral and (2) Vectra Liens on the Vectra Collateral were perfected as of the Petition Date.

(v)    *Validity of the Prepetition and Vectra Liens, Claims, and Obligations.* After consultation with their attorneys and financial advisors, but subject to the provisions of paragraph 32 hereof, the Debtors, the Prepetition Agents and Vectra acknowledge and agree that: (a) (i) the Prepetition Liens and (ii) Vectra Liens are valid, binding, enforceable, non-avoidable, and perfected; (b) as of the Petition Date, (i) the Prepetition Liens had priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Liens as of the Petition Date, including any such lien that becomes validly perfected after the Petition Date pursuant to the applicable provisions of the Bankruptcy Code, the *"Permitted Liens"*)[5] and (ii) the Vectra Liens had priority over any and all other liens on the Vectra Collateral subject only to certain liens otherwise permitted by the Vectra Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Vectra Liens as of the

---

[5]    Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Liens are valid, senior, perfected, and non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the DIP Agent, the DIP Lender, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Vectra and the Creditors Committee to challenge the validity, priority, perfection or extent of any such Permitted Lien and/or security interest.

Petition Date), (c) (i) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Obligors, enforceable in accordance with the terms of the Prepetition Credit Documents and (ii) the Vectra Obligations constitute legal, valid, binding, and non-avoidable obligations of the Marketing Fund Trusts, enforceable in accordance with the terms of the Vectra Credit Documents, (as to (c)(i) and (ii), other than in respect of the stay of enforcement arising from Bankruptcy Code section 362); (f) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the (i) Prepetition Liens or the Prepetition Obligations or (ii) Vectra Liens or the Vectra Obligations exist, and no portion of the (x) Prepetition Liens or the Prepetition Obligations or (y) Vectra Liens or Vectra Obligations is subject to any challenge or defense, including, without limitation, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (g) the Debtors and their estates and Quiz-DIA have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against any of the Prepetition Agents, the Prepetition Lenders or Vectra, each in its capacity as such, arising out of, based upon, or related to the Prepetition Credit Documents or the Vectra Credit Documents, respectively; (h) the Debtors and Quiz-DIA each have waived, discharged, and released any right they may have to challenge any of the (i) Prepetition Obligations or (ii) Vectra Obligations and the security for these obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action against the Prepetition Agents, the Prepetition Lenders or Vectra, each in its capacity as such; and (i) any payments made on account of the (x) Prepetition Obligations to or for the benefit of the Prepetition Agents or the Prepetition Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition Agents and the Prepetition Lenders were

secured, were payments out of the Prepetition Agents' and the Prepetition Lenders' respective Prepetition First Lien Collateral and Second Lien Collateral and (y) Vectra Obligations to or for the benefit of Vectra prior to the Petition Date were on account of amounts in respect of which Vectra was secured, were payments out of the Vectra Collateral, and such payments described in (i)(x) and (y) did not diminish any property otherwise available for distribution to unsecured creditors.

(vi)    *Cash Collateral.*

(1) All of the Debtors' cash (other than the cash of the Marketing Fund Trusts), including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition First Lien Collateral, constitutes the Cash Collateral of the Prepetition First Lien Agent and the Prepetition First Lien Lenders.

(2) All of the Marketing Fund Trusts' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Marketing Fund Trusts Collateral, constitutes the Cash Collateral of Vectra as lender under the Vectra Credit Agreement.

(vii)    *Default by the Debtors.*  The Debtors acknowledge and stipulate that the Prepetition Obligors are in default of their debts and obligations under the Prepetition Credit Documents and the Vectra Credit Agreement.

F.    *Findings Regarding Postpetition Financing.*

(i)    *Request for Postpetition Financing.*  The Debtors seek authority, on a final basis as set forth in this Order, to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.

11

(ii)     *Priming of Prepetition Liens.*  The priming of all prepetition liens against assets of the Debtors (except for those expressly excluded by this Order or the DIP Documents, including the Permitted Liens), including the Prepetition First Liens, under Bankruptcy Code section 364(d), as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of the estates and their creditors.  The Prepetition First Lien Agent and the Prepetition First Lien Lenders are entitled to receive adequate protection as set forth in this Order, pursuant to Bankruptcy Code sections 361, 363, and 364, for any diminution in the value of their interest in the Prepetition First Lien Collateral (including Cash Collateral) resulting from the DIP Obligors' use, sale, or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition First Liens on the Prepetition First Lien Collateral, and the subordination to the Carve Out (collectively, and solely to the extent of any such diminution in value, the "*Diminution in Value*").

(iii)     *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtors' need to use Cash Collateral on a final basis and to obtain credit on a final basis pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and their creditors, and the consensual, prepackaged plan of reorganization (the "*Prepackaged Plan*") that is now on file with the Bankruptcy Court.  The Debtors do not have sufficient available sources of working

12

capital and financing to operate their business or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*    Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in Bankruptcy Code sections 503(b), 507(a), and 507(b); (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 7 hereof except their Chapter 5 avoidance actions, (2) superiority claims and liens, and (3) the other protections set forth in this Order.

(v)    *Use of Proceeds of the DIP Facility.*  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Documents and in accordance with the Approved Budget (as defined in the DIP Agreement and as the same may be modified from time to time consistent with the terms of the DIP Documents, the "***Budget***"), including, without limitation: (i) to provide working capital for the Debtors, (ii) for other general corporate

purposes of the Debtors, and (iii) to pay (a) administration costs of the Cases and prepetition claims or amounts approved by the Bankruptcy Court and (b) all fees and expenses due to the DIP Agent and DIP Lenders and the Consenting First Lien Lenders as provided under the DIP Facility.

G.   *Adequate Protection.*

(i)   The Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, are entitled to receive adequate protection to the extent of any Diminution in Value of their interest in the Prepetition First Lien Collateral (including Cash Collateral). Pursuant to Bankruptcy Code sections 361, 363, and 507(b), as adequate protection: (i) the Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, will receive the Adequate Protection Liens and DIP Super-Priority Claims (as defined below), which Liens and Claims shall be junior and subordinate in all respects to the Vectra Liens (defined below). In addition to the foregoing adequate protection, the Prepetition First Lien Agents and those Prepetition First Lien Lenders that are also DIP Lenders will be reimbursed by the Debtors in the ordinary course of business for all outstanding prepetition and postpetition fees and expenses that they have incurred, including, without limitation, any reasonable legal, financial advisory and other professionals or consultancy fees and expenses incurred by them in connection with the Prepetition First Lien Facility as set forth in paragraph 15 of this Order. Such adequate protection payments are not to be made with Cash Collateral of the Marketing Fund Trusts unless and until the Vectra Claim is indefeasibly paid in full in cash.

(ii)   Vectra is entitled to receive adequate protection to the extent of any Diminution in Value of its interest in the collateral securing the obligations under the Vectra Credit Agreement (defined below) (including Cash Collateral). Pursuant to Bankruptcy Code

sections 361, 363, and 507(b), as adequate protection Vectra will receive: (i) weekly payments of $150,000, plus (ii) interest payments, at the existing rate under the Vectra Credit Agreement, on a monthly basis and (iii) payment of Vectra's reasonable fees and expenses in accordance with the Vectra Credit Agreement (including, without limitation, attorneys' fees, related expenses, and disbursements) as set forth in paragraph 15 of this Order, such adequate protection payments to be made exclusively with Cash Collateral of the Marketing Fund Trusts and not from proceeds of the DIP Facility or Cash Collateral of the other Debtors.

H.    *Sections 506(c) and 552(b)*.  In light of the subordination of (i) the DIP Agent's and the DIP Lenders' Liens and super-priority claims to the Carve Out, and (ii) the Prepetition First Liens and super-priority claims to the Carve Out and the DIP Liens (a) the Prepetition First Lien Agent and the Prepetition First Lien Lenders are entitled to, upon entry of this Order, a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b), and (b) upon entry of this Order, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders are each entitled to a waiver of the provisions of Bankruptcy Code section 506(c).

I.    *Good Faith of the DIP Agent and the DIP Lenders*.

(i)    *Willingness to Provide Financing*.  The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) the entry of this Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, super-priority claims, security interests and liens, and other protections granted pursuant to this Order and the

15

DIP Documents will have the protections provided in Bankruptcy Code section 364(e) and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).*    The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the DIP Obligors, the DIP Agent, the DIP Lenders, certain of the Prepetition First Lien Lenders and Vectra.  Use of Cash Collateral and credit to be extended under the DIP Facility and this Order shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Bankruptcy Code section 364(e), and the DIP Agent, the DIP Lenders and Vectra are therefore entitled to the protection and benefits of Bankruptcy Code section 364(e) and this Order.

J.    *Good Cause.*    The relief requested in the Motion is necessary, essential and appropriate, and is in the best interests of and will benefit the Debtors, their estates, and their creditors and equity holders, as its implementation will, *inter alia*, provide the Debtors with the necessary liquidity to (a) minimize the disruption to the Debtors' business and ongoing operations, including in connection with the Plan (as defined below), (b) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors and equity holders, and (c) avoid immediate and irreparable harm to the Debtors, their estates, their creditors and equity holders, their businesses, their employees, and their assets.

16

K.     _Notice_. Notice of the Final Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, or, in lieu thereof, to their counsel, if known, including:  (i) the U.S. Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) counsel to the Creditors Committee; (iv) counsel to the Prepetition First Lien Agent; (v) all persons or entities known to the Debtors that have asserted a lien or interest in any of the DIP Collateral; (vi) counsel to the DIP Agent; (vii) counsel to the DIP Lenders; (viii) counsel to Avenue Capital LLC and its affiliates; (ix) counsel to Fortress Investment Group and its affiliates; (x) counsel to Vectra; and (xi) all parties entitled to notice pursuant to Local Rule 9013-1(m).  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     _DIP Financing Approved_. On a final basis, the DIP Motion is granted as set forth in this Order, the DIP Financing (as defined herein) is authorized and approved, and the use of Cash Collateral is authorized, in each case subject to the terms and conditions set forth in this Order.

2.     _Objections Overruled_.  All objections to the DIP Financing or entry of this Order, if any, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Facility Authorization**

3.      <u>Authorization of the DIP Financing</u>.  The DIP Financing is hereby approved.  The DIP Obligors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Order and the DIP Documents.  The Debtors are hereby authorized and directed to pay, in accordance with this Order, the principal, interest, fees, expenses, and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, and the reasonable fees and disbursements of the attorneys, advisors, accountants, and other consultants, and the reasonable legal fees and expenses of the DIP Agent and the DIP Lenders in accordance with paragraph 27 of this Order.  All collections and proceeds, whether ordinary course or otherwise, will be deposited and applied as required by this Order and the DIP Documents.  Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

4.      <u>Authorization to Borrow</u>.  Until the DIP Maturity Date (as defined herein), and subject to the terms and conditions set forth in the DIP Documents, DIP Facility, and this Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to draw from the DIP Facility up to $15,000,000 pursuant to this Order (the "***DIP Financing***").

5.      <u>DIP Obligations</u>.  The DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "***Successor Cases***"); *provided, however*, the DIP Obligations shall not be paid from the Marketing Fund Trusts until the Vectra Claim is indefeasibly paid in full in cash.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Maturity Date, except as provided in paragraph 11 herein.

6.      <u>Postpetition Liens</u>.  In order to secure the DIP Obligations, effective immediately upon entry of this Order, pursuant to Bankruptcy Code sections 361, 362, 364(c)(2), 364(c)(3), and 364(d), subject only to the Permitted Liens, including, for the avoidance of doubt the Vectra Liens, and the Carve Out, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "***DIP Liens***") upon all personal property, real property, assets, and rights of the DIP Obligors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof, whether tangible or intangible (collectively, the "***DIP Collateral***"), including, without limitation, (a) all personal and fixture property of every kind and nature, including all goods (including inventory, equipment, and any accessions thereto); (b) all instruments, including promissory notes; (c) all documents, including, if applicable, electronic documents; (d) all accounts, receivables and receivables records; (e) all books and records; (f) all chattel paper, whether tangible or electronic; (g) all deposit accounts; (h) all letters of credit and letter of credit rights, whether or not the letter of credit is evidenced by a writing; (i) all commercial tort claims; (j) all

securities and all other investment property; (k) all intellectual property; (l) all supporting obligations; (m) all money and any other contract rights or rights to the payment of money; (n) all insurance claims and proceeds; (o) all extracted collateral; (p) all equipment; (q) all inventory; (r) all general intangibles, including all payment intangibles; (s) the proceeds of any avoidance actions brought pursuant to Bankruptcy Code section 549 to recover any postpetition transfer of collateral; (t) the proceeds of any other claims or actions under chapter 5 of the Bankruptcy Code (subparagraphs (s) -(t), collectively, the *"Avoidance Actions"*); (u) the Borrower's rights under Bankruptcy Code section 506(c), other than against the DIP Lenders, and the proceeds thereof; and (v) the Prepetition First Lien Collateral, *provided however*, the DIP Liens shall not attach to the Avoidance Actions, but only to the proceeds thereof.

7.      DIP Lien Priority.  The DIP Liens securing the DIP Obligations are valid, binding, continuing, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to (i) Permitted Liens, (ii) the Carve Out and (iii) with respect to the DIP Collateral owned by the Marketing Fund Trusts, the Vectra Liens.  Pursuant to Bankruptcy Code section 364(d), the DIP Liens shall be senior to the Prepetition Liens and the Adequate Protection Liens (as defined herein) with respect to all DIP Collateral.  For purposes of this Order, it shall be an Event of Default if, other than as set forth herein, the DIP Liens shall be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  No lien or interest avoided and preserved for the benefit of

the estate pursuant to Bankruptcy Code section 551 shall be *pari passu* with or senior to the DIP Liens.

8.    <u>DIP Super-Priority Claims</u>.[6]  Upon entry of this Order, the DIP Agent and the DIP Lenders are hereby granted, pursuant to Bankruptcy Code section 364(c)(1), an allowed super-priority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "***DIP Super-Priority Claim***") for all DIP Obligations: (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under Bankruptcy Code section 364(c)(1); and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.  Notwithstanding the foregoing, the DIP Super-Priority Claim shall be subject to the Carve Out and with respect to the Estates of the Marketing Fund Trusts, the Vectra Claim.  The allowed DIP Super-Priority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, including, upon entry of this Order, any proceeds or property recovered in connection with the pursuit of Avoidance Actions; *provided, however*, that the DIP Agent and the DIP Lenders agree that the DIP Super-Priority Claim shall not be paid from the Marketing Fund Trusts until the Vectra Claim is indefeasibly paid in full in cash unless Vectra consents to such treatment as part of any plan.

---

[6]    The claim arising as a result of the Marketing Fund Trusts' obligations to Vectra, as agent under the Vectra Credit Agreement, that are secured by the Vectra Liens shall hereafter be referred to as the "***Vectra Claim***."

9.      <u>No Obligations to Extend Credit</u>.  The DIP Agent and the DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Order have been satisfied in full or waived by the DIP Agent in its sole discretion.

10.     <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Order, the DIP Documents, and in compliance with the Budget, subject to the permitted variances set forth in the DIP Documents.  Immediately upon entry of this Order, the Debtors are authorized to draw upon the DIP Facility subject to the terms and conditions of this Order and the DIP Documents.

**<u>Authorization to Use Cash Collateral</u>**

11.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Order, the DIP Facility, and the DIP Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the DIP Maturity Date.  Nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates or by a Non-Debtor Subsidiary Loan Party, outside the ordinary course of business, or any Debtor's or a Non-Debtor Subsidiary Loan Party's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Order, the DIP Facility, the DIP Documents, and in accordance with the Budget, subject to the permitted variances set forth in the DIP Documents.  Notwithstanding the foregoing or anything to the contrary herein, the Cash Collateral of the Marketing Fund Trusts shall not be used for any purpose other than to make required payments under the Vectra Credit Agreement, to make adequate protection payments set forth in this Order or to make payments to the Marketing Fund Trusts ordinary course trade vendors and creditors in accordance with past practices until the Vectra Claim has been indefeasibly paid in full in cash.

12.     Adequate Protection Liens.

(a)     Adequate Protection Liens.  Pursuant to Bankruptcy Code sections 361, 363(e), and 364(d), as adequate protection of the interests of the Prepetition First Lien Agent and the Prepetition First Lien Lenders in the Prepetition First Lien Collateral to the extent of any Diminution in Value of such interests in the Prepetition First Lien Collateral on account of the granting of the DIP Liens, the Debtors' use of Cash Collateral and sale, lease or use of other Prepetition First Lien Collateral, and the imposition of the automatic stay, the Debtors hereby grant to the Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, continuing valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "*Adequate Protection Liens*") to the extent of any Diminution in Value.

(b)     Priority of Adequate Protection Liens.

(i)     The Adequate Protection Liens shall be junior only to: (A) Permitted Prior Liens (B) the Carve Out, (C) the DIP Liens and (D) the Vectra Liens.  The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(ii)     For purposes of this Order, it shall be an Event of Default if, except as provided herein, the Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  No lien or interest avoided and preserved for the benefit of the estate pursuant to Bankruptcy Code section 551 shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

(iii)    The Adequate Protection Liens shall be subject to the reservation of rights set forth in paragraphs 14, 15 and 32 of this Order.

13.    <u>Adequate Protection Super-Priority Claims</u>.

(a)    <u>Adequate Protection Super-Priority Claim</u>.    As further adequate protection of the interests of the Prepetition First Lien Agent and the Prepetition First Lien Lenders in the Prepetition First Lien Collateral to the extent of any Diminution in Value of such interests in the Prepetition First Lien Collateral on account of the granting of the DIP Liens, the DIP Obligors' use of Cash Collateral, the use, sale, or lease of any other Prepetition First Lien Collateral, and the imposition of the automatic stay, the Prepetition First Lien Agent and the Prepetition First Lien Lenders are each hereby granted as and to the extent provided by Bankruptcy Code section 507(b) an allowed super-priority administrative expense claim in each of the Cases and any Successor Cases (the "***Adequate Protection Super-Priority Claim***").

(b)    <u>Priority of the Adequate Protection Super-Priority Claims</u>. Except as set forth herein, the Adequate Protection Super-Priority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114; *provided*, *however*, that: the Adequate Protection Super-Priority Claim shall be (A) subject to the reservation of rights set forth in paragraphs 14, 15, and 32 of this Order and (B) junior to (i) the DIP Super-Priority Claim; (ii) the Carve Out; and (iii) the Vectra Claim and shall not be paid from the Marketing Fund Trusts until the Vectra Claim is indefeasibly paid in full in cash.

24

14.    <u>Vectra Adequate Protection</u>.  As adequate protection for any Diminution in Value of the collateral securing the Vectra Claim, Vectra, in its capacity as administrative agent under the Vectra Credit Agreement, shall be entitled to payments from the Marketing Fund Trusts as follows: (a) weekly payments of $150,000 (which shall reduce outstanding amount of the Vectra Claim), plus (b) interest payments, at the existing rate under the Vectra Credit Agreement, on a monthly basis and (c) payment of Vectra's reasonable fees and expenses in accordance with the Vectra Credit Agreement, such adequate protection payments to be made exclusively with Cash Collateral of the Marketing Fund Trusts, and not from proceeds of the DIP Facility or Cash Collateral of the other Debtors.  The Creditors Committee shall have the right to seek to recharacterize any adequate protection payments as part of a Challenge.

15.    <u>Reimbursement of Fees and Expenses of Prepetition First Lien Agent and Prepetition Lenders and Vectra</u>.  The Debtors are hereby authorized and directed to pay, in accordance with this Order, the reasonable unpaid prepetition and postpetition fees and disbursements of the Prepetition First Lien Agent, including any fees of the attorneys, advisors, accountants, and other consultants of the Prepetition First Lien Agent, those Prepetition First Lien Lenders that are also DIP Lenders and, subject to the restrictions set forth in paragraph G.(ii) above, Vectra, including any fees of its attorneys.  Any payment to any such party shall be made within ten (10) business days following such party's delivery of an invoice to the Debtors or their bankruptcy counsel, the counsel for the Creditors Committee and the U.S. Trustee, *provided* that, upon any objection to the reasonableness of such fees, the Debtors shall pay all amounts that are not the subject of such objection within the ten (10) day period and shall pay the balance following the resolution of such objection or upon an order of the Court.  Failure to make such payments shall be an Event of Default (or a Vectra Event of Default, as the case may

be) under this Order.  The Creditors Committee shall have the right to seek to recharacterize the amount of any adequate protection payments as part of a Challenge, and the Creditors Committee's right to object to any credit bid is preserved.

16.    Credit Bidding.  Effective upon entry of this Order, (a) the right of the DIP Agent (on behalf of the DIP Lenders), acting at the direction of the DIP Lenders to the extent provided for under the DIP Documents, to "credit bid" the amount of the DIP Facility in connection with any sale of the DIP Collateral (pursuant to section 363(k) of the Bankruptcy Code), including, without limitation, any sale pursuant to Bankruptcy Code section 363, or included as part of any plan of reorganization subject to confirmation under Bankruptcy Code section 1129(b) is hereby reserved, *provided, however*, that with respect to the Marketing Fund Trusts, any such rights shall be subject to and subordinate to the Vectra Claim; and (b) (i) the right of the Prepetition First Lien Agent (on behalf of the First Lien Lenders), acting at the direction of the Prepetition First Lien Lenders to the extent provided for under the Prepetition First Lien Credit Documents, and subject to the rights of the DIP Agent, to "credit bid" the amount of the Prepetition First Lien Obligations in connection with any sale of the Prepetition First Lien Collateral (pursuant to section 363(k) of the Bankruptcy Code), including without limitation, any sale pursuant to Bankruptcy Code section 363 or included as part of any plan of reorganization subject to confirmation under Bankruptcy Code section 1129(b) is hereby reserved and (ii) the right of Vectra, to the extent provided for under the Vectra Credit Agreement, to "credit bid" the amount of the Vectra Claim in connection with any sale of the Vectra Collateral owned by the Marketing Fund Trusts, including without limitation, any sale pursuant to Bankruptcy Code section 363 or included as part of any plan of reorganization subject to confirmation under Bankruptcy Code section 1129(b) is reserved.  The Creditors Committee shall have the right to consult with the

Debtors with regard to any credit bidding.  The Creditors Committee's right to object to any credit bid is preserved.

**Provisions Common to DIP Financing**
**and Use of Cash Collateral Authorizations**

17.    <u>Amendments of the DIP Documents</u>.  The Debtors, the DIP Agent, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Documents, any nonmaterial modifications (including, without limitation, any change to the number or composition of the DIP Lenders) of the DIP Documents without further order of this Court, or any other modifications to the DIP Documents; *provided, however*, that notice of any material modification or amendment to the DIP Documents shall be provided to counsel for the Creditors Committee, the Prepetition First Lien Agent, Vectra, Avenue, Fortress and the U.S. Trustee, each of whom shall have five (5) business days from the date of such notice within which to object, in writing, to such modification or amendment.  If any party timely objects to any material modification or amendment to the DIP Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.  The foregoing shall be without prejudice to the Debtors' right to seek approval from the Court of a material modification on an expedited basis.

18.    <u>Budget Maintenance</u>.  The Budget and any modification or amendment thereof shall be in form and substance reasonably acceptable to the Required Lenders (as defined in the DIP Agreement) and approved by the Required Lenders in their reasonable discretion.  The Budget may be amended or modified in writing from time to time only with the written consent of the Required Lenders in their reasonable discretion.  A copy of the Budget shall also be provided to Vectra.

19.    <u>Modification of the Automatic Stay</u>.    The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Super-Priority Claim, and the Adequate Protection Super-Priority Claim; (b) permit the Debtors to perform such acts as the DIP Agent, the DIP Lenders, or the Prepetition First Lien Agent may request in their sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, the DIP Lenders and the Prepetition First Lien Agent and the Prepetition First Lien Lenders under the DIP Documents, the DIP Facility, and this Order, and Vectra under this Order; and (d) authorize the Debtors to pay and the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, those Prepetition First Lien Lenders that are DIP Lenders, and Vectra to retain and apply payments made in accordance with the terms of this Order.

20.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.    This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document, which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and each of the Prepetition First Lien

Agent are authorized to file, as each, in its sole discretion deems necessary, such financing statements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent and the Prepetition First Lien Agent all such financing statements, mortgages, notices, and other documents as the DIP Agent or the Prepetition First Lien Agent may request.  The DIP Agent and the Prepetition First Lien Agent, each in its discretion, may file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.

21.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt in violation of the DIP Documents at any time prior to the indefeasible repayment in full of the DIP Facility and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors, the Debtors' estates and the Non-Debtor Subsidiary Loan Parties, and such facilities are secured by any DIP Collateral, then cash proceeds derived from such credit or debt shall be used to the extent necessary to indefeasibly repay in full the DIP Obligations.

22.     Maintenance of DIP Collateral.  Until the indefeasible payment in full of all DIP Obligations and all Prepetition First Lien Obligations and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Facilities, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court, to which each of the DIP Agent and Vectra (to the extent Vectra's rights are adversely affected) has first agreed, or as otherwise required by the DIP Documents.

23.     DIP Maturity Date.  Subject to the DIP Agreement and this Order, borrowings under the DIP Facility shall be repaid in full, and the commitment to fund the DIP Facility shall terminate, on the earliest to occur (the *"DIP Maturity Date"*) of: (i) 120 days from the Closing Date, (ii) the earlier of the effective date and the date of the substantial consummation of a plan of reorganization (*"Plan"*) in the Cases that has been confirmed by an order of the Bankruptcy Court and to which the First Lien Prepetition Lenders that are DIP Lenders have consented, (iii) the date the Bankruptcy Court orders the conversion of any of the Cases to a chapter 7 case, and (iv) the acceleration of the loans or termination of the commitments under the DIP Facility, including, without limitation, as a result of the occurrence of an Event of Default.

24.     Events of Default.  The occurrence of an "Event of Default" under the DIP Documents shall constitute an Event of Default under this Order, unless waived in writing by the Required Lenders.  Failure of the Debtors to comply with obligations to Vectra under the terms of this Order, which failure remains uncured for a period of five (5) business days after receipt of written notice by Vectra to the Debtors and counsel to the Creditors Committee of such failure, shall constitute a *"Vectra Event of Default"*, unless waived in writing by Vectra.

25.    <u>Rights and Remedies upon Event of Default</u>.  Immediately upon the occurrence of an Event of Default, (i) the DIP Agent may declare (1) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (2) the termination, reduction, or restriction of any further commitment to extend credit to the DIP Obligors to the extent any such commitment remains, and (3) the termination of the DIP Agreement and any other DIP Document as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations; and (ii) the DIP Agent and the Prepetition First Lien Agent may declare a termination, reduction, or restriction on the ability of the DIP Obligors' ability to use any Cash Collateral derived solely from the proceeds of the DIP Collateral (any such declaration, shall be referred to herein as "*Termination Declaration*").  The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to Avenue, counsel to Fortress, counsel to Vectra, respective counsel to the Creditors Committee and the U.S. Trustee (and the earliest date any such Termination Declaration is made shall be referred to herein as the "*Termination Declaration Date*").  Absent an order of the Court providing otherwise that was obtained after a hearing on a motion that was made within the Remedies Notice Period after notice to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders, any automatic stay otherwise applicable to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders is hereby modified so that five (5) business days after the Termination Declaration Date (the "*Remedies Notice Period*"), (A) the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Order and shall be permitted to satisfy the DIP Super-Priority Claim and the DIP Liens, subject to the Carve Out and, with respect to the Marketing Fund Trusts, the Vectra Liens and the Vectra

31

Claim, and (B) to the extent any Prepetition First Lien Obligations remain outstanding, the Prepetition First Lien Agent and Prepetition First Lien Lenders shall be entitled to exercise their rights and remedies to satisfy the Prepetition First Lien Obligations, the DIP Super-Priority Claim, and the Adequate Protection Liens, subject to the Carve Out and, with respect to the Marketing Fund Trusts, the Vectra Liens and the Vectra Claim. During the Remedies Notice Period, the Debtors and/or the Creditors Committee shall be entitled to seek an emergency hearing with the Court requesting the use of Cash Collateral on a nonconsensual basis. Absent an order of the Court providing otherwise that was obtained after a hearing on a motion that was made within the Remedies Notice Period after notice to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders, the automatic stay, as to all of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, absent an order of the Court providing otherwise that was obtained after a hearing on a motion that was made within the Remedies Notice Period after notice to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders, the DIP Agent and the Prepetition First Lien Agent shall be permitted to exercise all remedies set forth herein, in the DIP Agreement, the DIP Documents, the Prepetition First Lien Credit Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under Bankruptcy Code sections 362 or 105, or otherwise, against the enforcement of the liens and security interest or any other rights and remedies granted to any of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders pursuant to the DIP Agreement, the DIP Documents, the

Prepetition First Lien Credit Documents, or this Order.  Upon the occurrence of a Vectra Event of Default, Vectra may declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral derived solely from the Vectra Collateral ("*Vectra Termination Declaration*").  The Vectra Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to the DIP Agent, counsel to the Prepetition First Lien Agent counsel to Avenue, counsel to Fortress, respective counsel to the Creditors Committee and the U.S. Trustee (and the earliest date any such Termination Declaration is made shall be referred to herein as the "*Vectra Termination Declaration Date*").  Any automatic stay otherwise applicable to Vectra is hereby modified so that five (5) business days after the Vectra Termination Declaration Date, absent an order of the Court otherwise, Vectra may terminate, reduce, or restrict the ability of the Debtors to use any Cash Collateral derived solely from the Vectra Collateral.  Notwithstanding anything else in this Order, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders may not recover from the Cash Collateral of the Marketing Fund Trusts on account of any Event of Default, under this Order, the DIP Documents, or the Prepetition First Lien Credit Documents, until the Vectra Claim has been paid indefeasibly in full in cash.

26.    Good Faith Under Bankruptcy Code Section 364(e); No Modification or Stay of This Order.  Based on the findings set forth in this Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with Bankruptcy Code section 364(e), in the event any or all of the provisions of this Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, each of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders are entitled to the protections provided in Bankruptcy Code section 364(e).  Any liens or claims granted to the DIP Agent and

the DIP Lenders hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

27.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay all reasonable out-of-pocket expenses of the DIP Agent and the DIP Lenders in connection with the DIP Facility, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses.  Payment of all such fees and expenses shall not be subject to allowance by the Court, *provided, however*, that such payments shall be subject to the restrictions on the use of Cash Collateral set forth in this Order, including, but not limited to, paragraph 11 and that the Court shall have jurisdiction to determine any dispute concerning such fees and expenses subject to the terms of this Order.  The Debtors shall pay the reasonable and documented fees and expenses provided for in this paragraph 27 within ten (10) days following receipt of invoices therefor by the Debtors, the counsel for the Creditors Committee and the U.S. Trustee, *provided* that, upon any objection to the reasonableness of such fees, the Debtors shall pay all amounts that are not the subject of such objection within the ten (10) day period and shall pay the balance following the resolution of such objection or upon an order of the Court.

28.    <u>Proofs of Claim</u>.  The DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders and Vectra will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim addressed herein.  Notwithstanding any

order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition First Lien Agent, on behalf of itself and the Prepetition First Lien Lenders, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim addressed herein. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders or Vectra.

29.     Rights of Access and Information.  Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Documents, the DIP Obligors shall be, and hereby are, required to afford representatives, agents, and/or employees of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and Vectra, reasonable access to the DIP Obligors' premises and their books and records in accordance with the DIP Documents, the Prepetition First Lien Credit Documents and the Vectra Credit Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Agent all such information as may be reasonably requested with respect to the business, results of operations, and financial condition of any DIP Obligor.

30.     Carve Out.

(a)     Carve Out.  The Debtors' obligations to the DIP Lenders and the liens and Super-Priority Claims granted as provided herein shall be subject in each case only to a carve out

(the "*Carve Out*") which shall equal the sum total of (i) all statutory fees payable to the clerk of the Bankruptcy Court or the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) allowed professionals fees, expenses and disbursements incurred prior to the Termination Declaration Date, regardless of when allowed, by (x) professionals of the estates retained by final order of the Court (which order has not been vacated or stayed, unless the stay has been vacated), including professionals of the Debtors employed under Bankruptcy Code sections 327, 328 or 363 ("*Estate Professionals*") and (y) professionals of the Creditors Committee, (including the reimbursement of expenses allowed by the Bankruptcy Court incurred by a Creditors Committee member in the performance of its duties, but excluding fees and expenses of third party professionals employed by such members and, together with the Estate Professionals, the "*Case Professionals*"); and (iii) the allowed and unpaid professional fees, expenses and disbursements incurred on or after the date the Termination Declaration Date under Bankruptcy Code section 327 or 1103(a), in the aggregate not to exceed $500,000 for Case Professionals.

(b)    Payment of Professional Fees.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent,  the Prepetition First Lien Lenders and/or Vectra to object to the allowance and payment of such fees and expenses.  The DIP Agent and the DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Order or otherwise shall be construed to obligate in any way the DIP Agent or the DIP Lenders to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)     Payment of Carve Out After Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any allowed fees of Case Professionals (exclusive of the application of any retainers by any of the Case Professionals) incurred on or after the occurrence of the Termination Declaration Date shall permanently reduce the applicable Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Order, the DIP Documents, the Bankruptcy Code, and applicable law.

31.     Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral, and the Carve Out.  The DIP Facility, the DIP Collateral, the Cash Collateral, and the Carve Out may not be used in connection with: (a) subject to the Debtors' right to seek an emergency hearing pursuant to paragraph 25 above, preventing, hindering, or delaying any of the DIP Agent's, the DIP Lenders', the Prepetition First Lien Agent's, or the Prepetition First Lien Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the Required Lenders; (c) for any purpose that is prohibited under the Bankruptcy Code, this Order or the DIP Documents; (d) the funding or payment in any way of any adversary action, suit, arbitration, proceeding, application, motion or other litigation or challenge against any or all of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Second Lien Agent, the Second Lien Lenders or Vectra or their respective rights and remedies under the DIP Documents, the Interim Order, this Order, the Prepetition First Lien Credit Documents, the Prepetition Second Lien Credit Documents or Vectra Credit Agreement, as applicable; (e) except as expressly required by the DIP Documents,

the Interim Order or this Order, for the payment of fees, expenses, interest or principal under the Prepetition First Lien Credit Documents; and (f) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Agent acting at the direction of the Required Lenders; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $75,000 in the aggregate, incurred solely by the Creditors Committee in investigating the validity, enforceability, perfection, priority, or extent of the Prepetition Obligations and Prepetition Liens and Vectra Obligations and Vectra Liens and any Challenge during the Challenge Period (as defined herein).

32.    Reservation of Certain Third Party Rights and Bar of Challenges and Claims. Nothing in this Order or the DIP Documents shall prejudice the rights of any parties in interest, including the Creditors Committee to seek to object to or to challenge the findings, the Debtors' Stipulations, or any other stipulations herein, including, but not limited to, those in relation to: (a) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of (i) the Prepetition First Lien Agent with respect to the Prepetition First Lien Collateral, (ii) the Prepetition Second Lien Agent with respect to the Prepetition Second Lien Collateral or (iii) Vectra with respect to the Vectra Collateral; or (b) the validity, allowability, priority, fully-secured status, or amount of (i) the Prepetition First Lien Obligations, (ii) the Prepetition Second Lien Obligations or (iii) the Vectra Obligations (any of the foregoing, a "*Challenge*").  Any party in interest (including the Creditors Committee), must commence, as appropriate, without limitation, any Challenge or any claim against the Prepetition Agents, a Prepetition Lender or Vectra in the nature of a setoff, counterclaim, or defense to the Prepetition Obligations or Vectra Obligations (any of the foregoing, a "*Counterclaim/Defense*"), through counsel to such party in

interest or Creditors Committee, as applicable, by seventy-five (75) days following the formation

of the Creditors Committee, (the "***Challenge Period***"); *provided, however,* that the Challenge

Period shall terminate on the date of commencement of a hearing on confirmation of any plan of

reorganization, notwithstanding that the Challenge Period has not yet otherwise expired.  The

Challenge Period may be extended by consent of the DIP Agent, the Debtors, the Creditors

Committee, and, solely with respect to an extension of the Challenge Period relating to the

Vectra Obligations, Vectra Collateral or the Vectra Liens, Vectra, in writing, or by order of the

Court after notice and a hearing.  Upon the expiration of such Challenge Period, to the extent not

otherwise waived or barred:  (A) any and all such Challenges and any Counterclaim/Defense

shall be deemed to be forever waived (including, without limitation, the Creditors Committee, by

any chapter 11 trustee, and/or any examiner appointed in these Cases, and any chapter 7 trustee

and/or examiner appointed in any Successor Case) and barred;  (B) all of the Debtors'

Stipulations and validity of the Prepetition Agents, the Prepetition Lenders' or Vectra's claims,

liens, and interests of any nature, under the Prepetition Credit Documents or Vectra Credit

Documents, as applicable or otherwise incorporated or set forth in this Order, shall be of full

force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates, and all

creditors, interest holders, and other parties in interest in these Cases and any Successor Cases;

and (C) without further order of the Court, the Prepetition Obligations and Vectra Obligations

shall be allowed in full for all purposes in connection with these Cases and any Successor Cases.

Upon a successful Challenge or Counterclaim/Defense brought pursuant to this paragraph, the

Court may fashion any appropriate remedy.  For the avoidance of doubt, if any party in interest,

including the Creditors Committee, determines that there exists a Challenge or

Counterclaim/Defense with respect to the Prepetition Lenders or Vectra, such party in interest or

the Creditors Committee, as applicable, must file a motion or other action seeking standing to pursue such Challenge or Counterclaim/Defense, and shall have only until the expiration of the Challenge Period to file an objection or otherwise initiate an appropriate action setting forth the basis of the Challenge or Counterclaim/Defense after successfully seeking standing to pursue such Challenge or Counterclaim/Defense. Nothing herein shall or shall be deemed to confer standing on the Creditors Committee or any other party to initiate any action with respect to a Challenge or Counterclaim/Defense.

33.    <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

34.    <u>Section 506(c) Claims</u>. No costs or expenses of administration, which have been or may be incurred in the Cases at any time, shall be charged against the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders or Vectra, or any of their respective claims, the DIP Collateral, or the Prepetition First Lien Collateral pursuant to Bankruptcy Code sections 105 or 506(c), or otherwise, without the prior written consent, as applicable, of the Required Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

35.    <u>No Marshaling/Application of Proceeds</u>. The DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition First Lien Collateral, as the case may be, and proceeds shall be received and applied pursuant to the terms of the DIP Credit Documents notwithstanding any

other agreement or provision to the contrary, *provided, however*, that nothing herein shall impair the rights of the DIP Agent or DIP Lenders with respect to the DIP Collateral; *provided, further, however*, that with respect to the assets of the Marketing Fund Trusts, any proceeds of the Vectra Collateral shall only be applied to the Vectra Obligations pursuant to the terms of the Vectra Credit Documents unless and until the Vectra Obligations have been indefeasibly paid in full in cash.

36.    <u>Section 552(b)</u>.   The Prepetition First Lien Agent, the Prepetition First Lien Lenders and Vectra shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition First Lien Agent, any Prepetition First Lien Lender or Vectra, with respect to the proceeds, product, offspring, or profits of any of the Prepetition First Lien Collateral or the Vectra Collateral, as applicable.

37.    <u>Joint and Several Liability</u>.   Nothing in this Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the DIP Obligors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents; *provided, however*, that only the Marketing Fund Trusts shall be liable for payments to be made to Vectra pursuant to this Order.

38.    <u>Discharge Waiver</u>.   The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Bankruptcy Code section 1141(d), unless the DIP Obligations have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.   None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the

indefeasible payment in full in cash, on or prior to the earliest to occur of the effective date of such plan and the DIP Maturity Date, of all DIP Obligations.

39.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not impair or constitute a waiver, expressly or implicitly, of:  (a) the DIP Agent's, the DIP Lenders', the Prepetition First Lien Agent's, and the Prepetition First Lien Lenders' and Vectra's rights to seek any other or supplemental relief, including additional adequate protection, in respect of the Debtors and their assets; (b) any of the rights of any of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders and/or Vectra under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders and Vectra.  The consent of the Prepetition First Lien Agent and Prepetition First Lien Lenders to the priming of the Prepetition First Lien Agent's liens on the Prepetition First Lien Collateral by the DIP Liens and the Carve Out (a) is limited to the DIP Loans and the Carve Out and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition First Lien Agent or the Prepetition First Lien Lenders that, absent such consent, their interests in the Prepetition First Lien Collateral would be adequately protected pursuant to this Order.  Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not

constitute a waiver of, expressly or implicitly, the Debtors', the Creditors Committee or any other party in interest's right to oppose any of the relief requested in accordance with the first sentence of this paragraph except as expressly set forth in this Order.

40.     No Waiver by Failure to Seek Relief.  The delay by or failure of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, any Prepetition First Lien Lender or Vectra to seek relief or otherwise exercise their respective rights and remedies, as applicable, under this Order, the DIP Documents, the Prepetition First Lien Credit Documents, the Vectra Credit Agreement or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Vectra, the Creditors Committee or any party in interest.

41.     Binding Effect of Order.  Immediately upon execution by this Court, the terms and provision of this Order shall be become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Vectra, all other creditors of any of the Debtors, the Creditors Committee or any other court-appointed committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

42.     No Modification of Order.  Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, but subject to the

express protections afforded Vectra, the Vectra Liens and the Vectra Claim by this Order, an Event of Default shall occur if the Debtors seek or consent to, directly or indirectly: (a) without the prior written consent of the Required Lenders, (i) any modification, stay, vacatur, or amendment to this Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in Bankruptcy Code sections 503(b), 506(c), 507(a) or 507(b)) in any of the Cases or Successor Cases, equal or superior to the DIP Super-Priority Claim, or Adequate Protection Super-Priority Claim, other than the Carve Out (or, with respect to the Marketing Fund Trusts, the Vectra Claim); (b) without the prior written consent of the Required Lenders and the Prepetition First Lien Agent, for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition First Lien Collateral; (c) without the prior written consent of the Required Lenders, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; (d) without the prior written consent of the Prepetition First Lien Agent, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition First Liens, or the Adequate Protection Liens; or (e) without the prior written consent of Vectra, (i) any modification, stay, vacatur, or amendment to this Order to the extent that the foregoing adversely affects Vectra's rights hereunder; (ii) any lien on any of the Vectra Collateral with priority equal or superior to the Vectra Liens, (iii) any order allowing use of Cash Collateral resulting from Vectra Collateral (other than as expressly permitted in this Order) or (iv) a priority claim for any administrative expense or unsecured claim against the Marketing Fund Trusts (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of

the kind specified in Bankruptcy Code sections 503(b), 506(c), 507(a) or 507(b)) in any of the Marketing Fund Trusts Cases or Marketing Fund Trusts Successor Cases, equal or superior to the Vectra Claim.  No such consent shall be implied by any other action, inaction, or acquiescence, as applicable, of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders or Vectra.

43.    Survival.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Order, including the claims, liens, security interests, and other protections granted to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Second Lien Agent, the Second Lien Lenders and Vectra pursuant to this Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Order until, in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated.  In addition, the terms and provisions of this Order shall continue in full force and effect for the benefit of the Prepetition First Lien Agent, the Prepetition First Lien Lenders and Vectra notwithstanding the repayment in full of or termination of the DIP Obligations.

44.    <u>Order Governs</u>.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

45.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

Wilmington, Delaware
Date: April 25, 2014

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

46