# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | )   Chapter 11 |
| | ) |
| QCE FINANCE LLC, *et al.*,[1] | )   Case No. 14-10543 (PJW) |
| | ) |
| Debtors. | )   Jointly Administered |
| | ) |
| | )   **Re: Docket Nos. 14, 15, 295, 296, 297, 298, 300** |

## ORDER APPROVING THE
## DEBTORS' DISCLOSURE STATEMENT FOR,
## AND CONFIRMING, THE DEBTORS' AMENDED JOINT
## PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION

The above-captioned debtors and debtors in possession (collectively, the *"Debtors"*) having:[2]

a.    distributed, on or about March 11, 2014, (i) the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 14] (the *"Original Plan"*), (ii) the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 15] (the *"Disclosure Statement"*) and (iii) appropriate ballots (collectively, the *"Ballots"*) for voting on the Plan, to Holders of Claims in Class A1 (First Lien Facility Claims against the Term Loan Debtors) and Holders of Claims in Class B1 (Marketing Fund Trusts Facility Secured Claim against the Marketing Fund Trusts Debtors), in accordance with the terms of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the *"Local Rules"*);

b.    commenced, on March 14, 2014 (the *"Petition Date"*), the Chapter 11 Cases by

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: QCE Finance LLC (7897); American Food Distributors LLC (8099); National Marketing Fund Trust (4951); QAFT, Inc. (6947); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); Quiznos Global LLC (2772); Restaurant Realty LLC (8293); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); The Regional Advertising Program Trust (2035); and TQSC II LLC (8683). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Amended Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 295] (as may be amended, supplemented or modified from time to time, the *"Plan"*) or the Disclosure Statement, as applicable. The rules of interpretation set forth in Article I.A of the Plan shall apply. Any term used in the Plan, the Disclosure Statement, or this Confirmation Order that is not defined in the Plan, the Disclosure Statement, or this Confirmation Order, but that is defined in the title 11 of the United States Code (the *"Bankruptcy Code"*) or the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable.

filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

c.      filed,[3] on the Petition Date, the Original Plan and the Disclosure Statement;

d.      filed, on the Petition Date, the *Debtors' Motion for Entry of an Order (A) Scheduling a Combined Hearing on Debtors' Disclosure Statement and Plan Confirmation, (B) Establishing an Objection Deadline and Procedures for Objecting to the Disclosure Statement, Plan and Assumption of Executory Contracts and Unexpired Leases, (C) Approving Solicitation Procedures, (D) Approving the Form and Notice of the Combined Hearing, (E) Waiving the Requirement for a Meeting of Creditors and (F) Granting Related Relief* [Docket No. 13] (the "**Combined Hearing Motion**");

e.      filed, on the Petition Date, the *Affidavit of Service of Solicitation Materials* [Docket No. 16] (the "**Solicitation Affidavit**");

f.      filed, on the Petition Date, the *Declaration of Benjamin J. Steele, Esq. of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 23] (the "**Voting Certification**"), which details the results of the Plan voting process;

g.      filed, on March 18, 2014, the *Notice of (I) Commencement of Prepackaged Chapter 11 Cases, (II) Combined Hearing on (A) Disclosure Statement and (B) Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization and Related Matters and (III) Objection Deadlines and Summary of the Plan* [Docket No. 64] (the "**Confirmation Hearing Notice**"), which contained notice of the commencement of the Chapter 11 Cases, the date and time set for the joint hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "**Confirmation Hearing**") and the deadline for filing objections to the Plan and the Disclosure Statement, as well as objections to the proposed assumption of executory contracts or unexpired leases and the associated proposed cure amounts (the "**Objection Deadline**");

h.      filed, on March 21, 2014, the *Affidavit of Service* regarding, among other things, the Confirmation Hearing Notice [Docket No. 80] (the "**Confirmation Hearing Notice Affidavit**");

i.      published, on March 24, 2014 in *The Wall Street Journal* (national edition), *USA Today* (national edition) and *The Globe and Mail*, as evidenced by the *Affidavit of Publication Regarding Notice of (I) Commencement of Prepackaged Chapter 11 Cases, (II) Combined Hearing on (A) Disclosure Statement and (B) Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization and Related Matters and (III) Objection Deadlines and Summary of the Plan* [Docket No. 94] (the "**Publication Affidavit**"), the Confirmation Hearing Notice, consistent with

---

[3]     Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in the Chapter 11 Cases, as applicable.

the order granting the Combined Hearing Motion in part [Docket No. 47] (the "***Scheduling Order***");

j.  filed, on April 8, 2014, the *Notice of Adjournment of Combined Hearing on Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization and Confirmation of Debtors' Joint Prepackaged Plan of Reorganization,* [Docket No. 158] (the "***Notice of Adjournment***");

k.  filed, on April 25, 2014, the *Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 255] (as may be amended, supplemented or modified from time to time, the "***Plan Supplement***");

l.  filed, on April 30, 2014, the *Affidavit of Service* regarding the Plan Supplement [Docket No. 268] (together with the Solicitation Affidavit, the Confirmation Hearing Notice Affidavit and the Publication Affidavit, the "***Affidavits***");

m.  filed, on May 8, 2014, the Plan, attached hereto as **Exhibit A**;

n.  filed, on May 8, 2014, the *Debtors' Memorandum of Law In Support of Entry of an Order (I) Approving the (A) Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization and (B) Solicitation and Vote Tabulation Procedures and (II) Confirming the Debtors' Amended Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 297] (the "***Confirmation Brief***"), which includes the *Declaration of Stuart K. Mathis in Support of Confirmation of the Debtors' Amended Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 298] (the "***Mathis Declaration***") and the *Declaration of Jonathan M. Tibus in Support of Confirmation of the Debtors' Amended Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 300] (the "***Tibus Declaration***" and, together with the Mathis Declaration, the "***Declarations***"); and

o.  operated their business and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

This Court having:

a.  entered, on March 17, 2014, the Scheduling Order [Docket No. 47];[4]

b.  scheduled, pursuant to Bankruptcy Rules 3017 and 3018 and Bankruptcy Code sections 1126, 1128 and 1129, May 12, 2014 at 11:00 a.m. (prevailing Eastern

---

[4]  The Scheduling Order granted the Combined Hearing Motion, in part, and scheduled the Confirmation Hearing. Pursuant to the Scheduling Order, the Court also approved, among other things, the schedule of events relating to confirmation of the Plan, as well as the forms of the Ballots, the Solicitation Affidavit, and the form and manner of the Confirmation Hearing Notice and the Confirmation Hearing Notice Affidavit.

Time) as the date and time for the Confirmation Hearing, as set forth in the Notice of Adjournment, which modified the Scheduling Order;[5]

c.   reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Certification, the Confirmation Hearing Notice, the Affidavits, the Ballots, and all filed pleadings, exhibits, statements and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases (collectively, the *"Plan Objections"*);

d.   held the Confirmation Hearing;

e.   heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation;

f.   considered all oral representations, testimony, documents, filings and other evidence regarding approval of the Disclosure Statement, including associated solicitation procedures, and Confirmation of the Plan; and

g.   taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing, the Plan and all modifications thereto, and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby and that any party in interest so affected has had the opportunity to object to Confirmation; and after due deliberation thereon and based upon the record described above, it appearing to the Court that the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement, including associated solicitation procedures, and Confirmation of the Plan and other evidence presented at the Confirmation Hearing establish just

---

[5]   As described above, on March 17, 2014, prior to the Debtors' filing of the Notice of Adjournment, the Court entered the Scheduling Order, which scheduled April 25, 2014, at 9:30 a.m. (prevailing Eastern Time) as the date of the Confirmation Hearing and April 16, 2014 at 4:00 p.m. (prevailing Eastern Time) as the Objection Deadline. On April 8, 2014, the Debtors filed the Notice of Adjournment, which modified the Scheduling Order by (a) adjourning the Confirmation Hearing to May 12, 2014 at 11:00 a.m. (prevailing Eastern Time), (b) establishing May 2, 2014 at 4:00 p.m. (prevailing Eastern Time) as the Objection Deadline and (c) requesting to establish May 8, 2014 at 11:30 a.m. (prevailing Eastern Time) as the deadline for the Debtors and other parties in interest to reply to any objections.

cause for the relief granted herein; the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

### A.    Findings and Conclusions

1.        The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent that any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

### B.    Jurisdiction, Venue and Core Proceeding

2.        The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code. Approval of the Disclosure Statement, including associated solicitation procedures, and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States Code.

### C.    Eligibility for Relief

3.        The Debtors were and are entities eligible for relief under Bankruptcy Code section 109.

**D.      Commencement and Joint Administration of the Chapter 11 Cases**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 40], the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  Since the Petition Date, the Debtors have continued operating their business and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On March 26, 2014, the United States Trustee for the District of Delaware (the "*U.S. Trustee*") appointed an official committee of unsecured creditors (the "*Committee*") pursuant to Bankruptcy Code section 1102 [Docket No. 86].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

**E.      Judicial Notice, Objections**

5.      The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including, without limitation, all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.  Any resolutions of objections explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All unresolved objections, statements, and reservations of rights, if any, related to the Plan, the Disclosure Statement or Confirmation are overruled on the merits and with prejudice.

**F.      Burden of Proof—Confirmation of the Plan**

6.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of Bankruptcy Code sections 1129(a) and 1129(b) by a preponderance of

the evidence, which is the applicable evidentiary standard for Confirmation.

      **G.**    **Notice**

      7.    As evidenced by the Affidavits, due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement, the Plan, the proposed rejection of executory contracts or unexpired leases, and the proposed assumption of executory contracts or unexpired leases and the associated proposed cure amounts, has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities on the Consolidated List of Creditors Holding the 35 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Consenting First Lien Lenders; (d) counsel to Avenue Capital Management II, L.P. and its affiliates; (e) counsel to Fortress Investment Group and its affiliates; (f) counsel to Vectra Bank Colorado, National Association; (g) counsel to the Creditors Committee; (h) all counterparties to executory contracts and unexpired leases to be rejected or assumed by the Debtors pursuant to the Plan; and (i) those persons who have formally appeared or requested notice in these cases pursuant to Bankruptcy Rule 2002 (the parties identified in clauses (a) through (i), collectively, the *"Core Notice Parties"*); and (j) all known Holders of Claims and Interests. Also, the Confirmation Hearing Notice was published in *The Wall Street Journal* (national edition), *USA Today* (national edition) and *The Globe and Mail* in compliance with the Scheduling Order and Bankruptcy Rule 2002(l). Such notice was adequate and sufficient pursuant to Bankruptcy Code section 1128, Bankruptcy Rules 2002 and 3020 and other applicable law and rules, and no other or further notice is or shall be required.

**H.    Disclosure Statement**

8.    The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules and regulations, including the Securities Act of 1933, as amended (the "*Securities Act*"), (b) contains "adequate information" (as such term is defined in Bankruptcy Code section 1125(a)(l) and used in Bankruptcy Code section 1126(b)(2)) with respect to the Debtors, the Plan and the transactions contemplated therein and (c) is approved in all respects.

**I.    Ballots**

9.    The Classes of Claims and Interests entitled under the Plan to vote to accept or reject the Plan (the "*Voting Classes*") are set forth below:

| Class | Designation |
|-------|-------------|
| Class A1 | First Lien Facility Claims (against the Term Loan Debtors) |
| Class B1 | Marketing Fund Trusts Facility Secured Claim (against the Marketing Fund Trusts Debtors) |

10.    The forms of the Ballots the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Classes were approved in all respects pursuant to the Scheduling Order [Docket No. 47], as Ballots that adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.

**J.    Solicitation**

11.    The solicitation of votes on the Plan, which complied with the solicitation procedures set forth in the Combined Hearing Motion (the "*Solicitation Procedures*"), was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable rules, laws and regulations, including the Securities Act.

12.   Prior to the Petition Date, the Plan, the Disclosure Statement, the applicable Ballot and directions for voting on the Plan electronically (collectively, the *"Solicitation Packages"*), and following the Petition Date, the Confirmation Hearing Notice, were transmitted and served to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice and publication of the Confirmation Hearing Notice (all of the foregoing, *"Solicitation"*) were timely, adequate and sufficient. No further notice is required.

13.   The Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim as of March 10, 2014 (the date specified in such documents for the purpose of the solicitation, the *"Record Date"*). The establishment and notice of the Record Date were reasonable and sufficient.

14.   The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders in the Voting Classes to make an informed decision to vote to accept or reject the Plan.

15.   Under section Bankruptcy Code 1126(f), the Debtors were not required to solicit votes from the Holders of Claims or Interests, as applicable, in the following Classes (the *"Unimpaired Classes"*), each of which is conclusively presumed to have accepted the Plan:

| Class | Designation |
| --- | --- |
| Class A2 | Priority Non-Tax Claims (against the Term Loan Debtors) |
| Class A3 | Other Secured Claims (against the Term Loan Debtors) |
| Class A6(b) | Intercompany Interests (in the Term Loan Debtors) |
| Class B2 | Priority Non-Tax Claims (against the Marketing Fund Trusts Debtors) |
| Class B3 | Other Secured Claims (against the Marketing Fund Trusts Debtors) |
| Class B5 | Interests in the Marketing Fund Trusts Debtors |

16.     Also, the Debtors were not required to solicit votes from the Holders of Claims or Interests, as applicable, in the following Classes, each of which was deemed to reject the Plan:

| Class | Designation |
|---|---|
| Class A4(a) | General Unsecured Claims (against the Term Loan Debtors) |
| Class A4(b) | Second Lien Facility Claims (against the Term Loan Debtors) |
| Class A5 | Subordinated Claims (against the Term Loan Debtors) |
| Class A6(a) | Holdco Interests (in the Term Loan Debtors) |
| Class B4 | General Unsecured Claims (against the Marketing Fund Trusts Debtors) |

**K.     Voting**

17.     Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, and regulation.

**L.     Plan Supplement**

18.     The Plan Supplement includes the following documents:  (a) to the extent known, the identity of the members of the New Board of Managers and the nature and compensation for any New Board Member who is an "insider" under Bankruptcy Code section 101(31); (b) the Schedule of Rejected Executory Contracts and Unexpired Leases; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) a schedule of the Retained Causes of Action; (e) the applicable Amended Corporate Governance Documents; (f) the Amended First Lien Credit Agreement; (g) the Amended Marketing Fund Trusts Credit Agreement; and (h) the Specified Litigation Agreement.

19.     The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing, service and notice of the Plan Supplement in the manner as described herein is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required.  Service of the Plan Supplement

included service of the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases to the applicable contract counterparties. All documents included in the Plan Supplement are integral to, part of and incorporated by reference into the Plan. Subject to the terms of the Plan (including Article 10.7 of the Plan) and this Confirmation Order, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date and any such alterations, amendments, updates or modifications shall be deemed incorporated into the Plan. The Debtors timely filed and served the Plan Supplement on the Core Notice Parties and the relevant contract counterparties, providing them with due, adequate and sufficient notice of—and ample time to review—the Plan Supplement prior to the Confirmation Hearing.

### M.    Approval of Modifications of the Plan

20.    The Debtors made certain modifications to the Plan, including modifications contained in this Confirmation Order, all of which have been presented to the Court ("*Modifications*"). The Modifications do not materially and adversely affect or change the treatment of any Claims or Interests. The Modifications comply with Bankruptcy Code section 1127, Bankruptcy Rule 3019 and all other provisions of the Bankruptcy Code, including Bankruptcy Code sections 1122 and 1123, and do not require additional disclosure under Bankruptcy Code section 1125 or the resolicitation of ballots under Bankruptcy Code section 1126, nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously cast votes as filed with the Bankruptcy Court. Disclosure of the Modifications constitutes due and sufficient notice thereof under the circumstances of these Chapter 11 Cases. Accordingly, the Plan, as modified, is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to the Modifications shall he binding and shall be deemed to be cast with respect to the Plan, as modified on the date of this Confirmation Order,

11

pursuant to Bankruptcy Code section 1127(d) and Bankruptcy Rule 3019.

### N.    Compliance with Bankruptcy Code Requirements—Section 1129(a)(1)

21.    The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying Bankruptcy Code section 1129(a)(I).

#### (i)    Proper Classification—Sections 1122 and 1123(a)(1)

22.    The Plan satisfies the requirements of Bankruptcy Code sections 1122(a) and 1123(a)(1). Article II of the Plan provides for the separate classification of Claims against and Interests in each of the Debtors based on differences in the legal nature or priority of such Claims and Interests (other than the Claims that are not required to be designated as separate Classes pursuant to Bankruptcy Code section 1123(a)(1), including the Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims and DIP Facility Claims, which are addressed in Article II.A of the Plan, as well as the statutory fees and obligations due and payable to the U.S. Trustee (the "*U.S. Trustee Quarterly Fees*"), which are addressed in Article 10.13 of the Plan). The Plan designates seven (8) Classes of Claims against and Interests in each of the Term Loan Debtors and five (5) Classes of Claims against and Interests in each of the Marketing Fund Trusts Debtors. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

#### (ii)    Specification of Unimpaired Classes—Section 1123(a)(2)

23.    The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(2). Article II of the Plan specifies that Claims and Interests, as applicable, in the

Unimpaired Classes (as defined above) are Unimpaired under the Plan within the meaning of Bankruptcy Code section 1124.

### (iii)    Specified Treatment of Impaired Classes—Section 1123(a)(3)

24.    The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(3). Article II of the Plan specifies that Claims against and Interests in, as applicable, the following Classes (the "*Impaired Classes*") are Impaired under the Plan within the meaning of Bankruptcy Code section 1124, and describes the treatment of such Classes:

| Class | Designation |
|---|---|
| Class A1 | First Lien Facility Claims (against the Term Loan Debtors) |
| Class A4(a) | General Unsecured Claims (against the Term Loan Debtors) |
| Class A4(b) | Second Lien Facility Claims (against the Term Loan Debtors) |
| Class A5 | Subordinated Claims (against the Term Loan Debtors) |
| Class A6(a) | Holdco Interests (in the Term Loan Debtors) |
| Class B1 | Marketing Fund Trusts Facility Secured Claim (against the Marketing Fund Trusts Debtors) |
| Class B4 | General Unsecured Claims (against the Marketing Fund Trusts Debtors) |

### (iv)    No Discrimination—Section 1123(a)(4)

25.    The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(4). Article II of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (v)    Adequate Means for Plan Implementation—Section 1123(a)(5)

26.    The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(5). Article IV of the Plan, along with certain other provisions of the Plan, specifically provide in detail adequate and proper means for the Plan's implementation, including, but not limited to:    (a) the amendment and restatement of the First Lien Credit Agreement and the Marketing Fund Trusts Credit Agreement by the Amended First Lien Credit Agreement and the

Amended Marketing Fund Trusts Credit Agreement, respectively; (b) the substantive consolidation of the Term Loan Debtors' Estates, for Plan purposes only; (c) the issuance of New Common Interests; (d) the establishment and funding of the General Unsecured Claims Cash Distribution Escrow; (e) the execution of the Specified Litigation Agreement; (f) the adoption of the Amended Corporate Governance Documents and (where required by applicable law) the filing of the Amended Corporate Governance Documents with the applicable authorities of the relevant jurisdictions of organization; (g) means for the designation of the members of the New Board of Managers; (h) the continuation of the officers, directors and managers of the Reorganized Debtors and the trustee for the Reorganized Marketing Fund Trusts; and (i) the exemption from registration requirements with respect to the New Common Interests pursuant to Bankruptcy Code section 1145. The Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on or around the Effective Date pursuant to the terms of the Plan.

### (vi)    Voting Power of Equity Securities—Section 1123(a)(6)

27.    The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(6). Pursuant to the Plan, only the New Common Interests are being issued or reserved for issuance. The Certificate of Amendment to the Amended and Restated Certificate of Incorporation of QAFT, Inc., the only Debtor that is a corporation, prohibits the issuance of non-voting equity securities. The New Common Interests may be subject to certain transfer and other restrictions pursuant to, among other things, the Amended Corporate Governance Documents.

### (vii)    Selection of Directors, Officers, Managers, or Trustees—Section 1123(a)(7)

28.    The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(7). Articles 4.6 and 4.7 of the Plan contain provisions regarding the manner of selection

14

or continuation of the members of the New Board of Managers, and the directors, officers and managers of the Reorganized Debtors, and the trustee of the Reorganized Marketing Fund Trusts, that are consistent with the interests of all Holders of Claims and Interests, and public policy.

### (viii)    Impairment / Unimpairment of Classes—Section 1123(b)(1)

29.    The Plan is consistent with Bankruptcy Code section 1123(b)(1). Article II of the Plan impairs or leaves unimpaired each Class of Claims and Interests.

### (ix)    Assumption and Rejection—Section 1123(b)(2)

30.    The Plan is consistent with Bankruptcy Code section 1123(b)(2). Article V of the Plan provides for the assumption or rejection (or repudiation) of the Debtors' executory contracts and unexpired leases not previously assumed or rejected (or repudiated) during the Chapter 11 Cases, pursuant to Bankruptcy Code section 365, other applicable law and/or appropriate authorizing orders of this Court.

### (x)    Settlement, Releases, Exculpation, Injunction and Retention and Enforcement of Claims and Causes of Action—Section 1123(b)(3)

31.    The Plan is consistent with Bankruptcy Code section 1123(b)(3). In accordance with Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise and settlement between and among the Debtors, the Consenting Parties and the Creditors' Committee with respect to the treatment of all Allowed Claims and Interests and any distribution to be made on account of such Allowed Claim or Interest. This compromise and settlement is in the best interests of the Debtors, the Estates and all Holders of Claims and Interests, and are fair, equitable and reasonable.

32.    The injunction provision set forth in Article 9.2 of the Plan is essential to

the Plan and is necessary to implement, preserve and enforce the Debtors' discharge, releases and exculpation, and is narrowly tailored to achieve this purpose.

33.     Article 9.3 of the Plan describes certain releases granted to the Released Parties by the Debtors (the "*Debtor Releases*").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases.  Such releases constitute a necessary and integral element of the Plan, and are fair, reasonable and in the best interests of the Debtors, the Estates and creditors.  Also, the Debtor Releases are:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by Article 9.3 of the Plan; (c) given, and made, after due notice and opportunity for hearing; and (d) a bar to any of the Debtors asserting any Claim or Cause of Action released by Article 9.3 of the Plan.  For the avoidance of doubt, none of the Specified Litigation Parties or the Holders of Former D&O Indemnification Claims shall be deemed a Released Party, under the Plan or this Confirmation Order.

34.     Article 9.3 of the Plan also describes certain releases granted by the Plan Support Releasing Parties.  Notwithstanding anything contained in the Plan or this Confirmation Order, the Plan Support Releasing Parties are deemed to have released and discharged the Debtors and their Estates and the Released Parties from any and all Claims or Causes of Action; *provided, however,* that the releases by the Plan Support Releasing Parties do not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

35.     Article 9.4 of the Plan describes the exculpation (the "*Exculpation*"), which is appropriate under applicable law because it was proposed in good faith, was formulated

following extensive good-faith, arm's-length negotiations with key constituents and is appropriately limited in scope.

36.    Bankruptcy Code section 105(a) permits issuance of the injunction and approval of the exculpation and releases set forth in Article IX of the Plan, respectively, because, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (a) were integral to the agreement among various parties in interest, as reflected in the Restructuring Support Agreement, and are essential to the formulation and implementation of the Plan, as provided in Bankruptcy Code section 1123, (b) confer substantial benefits on the Debtors' Estates, (c) are fair and reasonable and (d) are in the best interests of the Debtors, their Estates and other parties in interest.

37.    Article 9.5 of the Plan appropriately provides that the Reorganized Debtors, as the successors in interest to the Debtors and their Estates, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any and all of the Causes of Action including, without limitation, the Causes of Action identified in the Plan Supplement (the "***Retained Causes of Action***"), whether arising before or after the Petition Date, and the Reorganized Debtors' rights to prosecute any and all Retained Causes of Action will be preserved, except as otherwise expressly provided in the Plan, notwithstanding the occurrence of the Effective Date, all in accordance with Bankruptcy Code section 1123(b)(3)(B). Article 4.5 of the Plan appropriately provides for the Reorganized Debtors, Avenue and Fortress to pursue the Specified Litigation Claims against the Specified Litigation Parties, pursuant to the Specified Litigation Agreement. The provisions regarding the preservation of the Retained Causes of Action in the Plan, including the Plan Supplement, and the Specified Litigation Agreement, are appropriate, fair, equitable and reasonable, and are in the best interests of the Debtors, the Estates

and Holders of Claims and Interests.

### (xi)    The Specified Litigation Agreement

38.    Entry into the Specified Litigation Agreement on the Effective Date is appropriate because it will enable the Reorganized Debtors, Avenue and Fortress to pursue the Specified Litigation Claims jointly and efficiently, and provides for the distribution of the Specified Litigation Proceeds, if any, pursuant to the Specified Litigation Waterfall.

39.    The terms and conditions of the Specified Litigation Agreement:  (a) have been negotiated in good faith and at arm's length by the independent members of the Holdco board of managers, Avenue and Fortress; (b) are fair and reasonable; and (c) are approved.  The Specified Litigation Agreement is an essential element of the Plan and entry into the Specified Litigation Agreement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and are approved in all respects.  The Debtors have exercised reasonable business judgment in determining to enter into the Specified Litigation Agreement, and the Debtors have provided sufficient and adequate notice of the Specified Litigation Agreement.

### (xii)    Modification of the Rights of Holders of Claims—Section 1123(b)(5)

40.    The Plan satisfies the requirements of Bankruptcy Code section 1123(b)(5).  Article II of the Plan modifies the rights of Holders of Claims in Class A1 (First Lien Facility Claims against the Term Loan Debtors), Class A4(a) (General Unsecured Claims against the Term Loan Debtors), Class A4(b) (Second Lien Facility Claims), Class A5 (Subordinated Claims against the Term Loan Debtors), Class B1 (Marketing Fund Trusts Facility Secured Claim against the Marketing Fund Trusts Debtors) and Class B4 (General Unsecured Claims against the Marketing Fund Trusts Debtors).  The Plan also leaves unaffected the rights of Holders of Claims in Class A2 (Priority Non-Tax Claims against the Term Loan Debtors),

Class A3 (Other Secured Claims against the Term Loan Debtors), Class B2 (Priority Non-Tax Claims against the Marketing Fund Trusts Debtors) and Class B3 (Other Secured Claims against the Marketing Fund Trusts Debtors).

(xiii)    <strong>Additional Plan Provisions—Section 1123(b)(6)</strong>

41.    The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Code section 1123(b)(6).

**O.    Cure of Defaults—Section 1123(d)**

42.    The Plan satisfies the requirements of Bankruptcy Code section 1123(d). Article 5.2 of the Plan provides that the proposed "cure amount" for an executory contract or unexpired lease that is assumed pursuant to the Plan shall be zero dollars unless otherwise indicated in the Schedule of Assumed Executory Contracts and Unexpired Leases. The Plan also provides for the satisfaction of any cure obligations under each such executory contract and unexpired lease, and the adequate assurance that upon determination such cure amounts shall be promptly paid, pursuant to Bankruptcy Code section 365(b)(1), by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such executory contract or unexpired lease may otherwise agree.

**P.    Compliance of the Plan with the Applicable Provisions of the Bankruptcy Code—Section 1129(a)(2)**

43.    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of Bankruptcy Code section 1129(a)(2). Specifically, each Debtor:

> a.    is an eligible debtor under Bankruptcy Code section 109, and a proper proponent of the Plan under Bankruptcy Code section 1121(a);
>
> b.    has complied with applicable provisions of the Bankruptcy Code; and

19

c.  complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**Q.    Proposal of the Plan in Good Faith—Section 1129(a)(3)**

44.    The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(3). The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, the Disclosure Statement and the hearing thereon and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases, the process leading to Confirmation, and the Restructuring Transactions (as defined below) to be implemented pursuant thereto. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital and organizational structure that will allow them to conduct their business and satisfy their obligations with sufficient liquidity and capital resources. The Plan (including all documents necessary to effectuate the Plan), and the classification, release, exculpation, injunction, discharge and indemnification provisions therein, were negotiated at arms' length, without collusion and in good faith, among representatives of the Debtors, the Consenting First Lien Lenders, the Consenting Second Lien Lenders, the Consenting Existing Equity Holders, Vectra, the Creditors Committee, other parties in interest and their respective professionals, and reflects the best interests of the Debtors' Estates and Holders of Claims and Interests.

**R.    Payment for Services or Costs and Expenses—Section 1129(a)(4)**

45.    The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter

11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, Bankruptcy Code section 1129(a)(4).

**S.    Disclosure of Identities of Directors, Officers, Managers and Insiders— Section 1129(a)(5)**

46.    The Debtors have satisfied the requirements of Bankruptcy Code section 1129(a)(5).    Articles 4.6 and 4.7 of the Plan, in conjunction with Exhibit B of the Plan Supplement, disclose (a) the identity and affiliations of the individuals proposed to serve as the initial members of the New Board of Managers of Reorganized Holdco, as well as any Person proposed to serve, or continue to serve as, an officer of any of the Reorganized Debtors, and (b) the continuation of Reorganized QAFT as trustee for the Reorganized Marketing Fund Trusts.

47.    The Plan and the Plan Supplement also disclose, to the extent necessary, the identity and nature of any compensation for any insider who will be employed or retained by the New Board of Managers of Reorganized Holdco or the Reorganized Debtors.  The proposed directors, officers and managers for Reorganized Holdco or the Reorganized Debtors are qualified, and the appointments to, or continuance in, such offices by the proposed directors, officers and managers are consistent with the interests of the Holders of Claims and Interests and with public policy.

**T.    Approval of Rate Changes—Section 1129(a)(6)**

48.    The requirements of Bankruptcy Code section 1129(a)(6) are inapplicable to the Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission and requires no governmental regulatory approval.

**U.    Best Interest of Holders of Claims and Interests—Section 1129(a)(7)**

49.    The Plan satisfies the requirements of Bankruptcy Code section

21

1129(a)(7).  The Liquidation Analysis attached as Exhibit D to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered, or adduced, at, or prior to, or in the Declarations, in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in every Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**V.    Acceptance of the Plan by Certain Classes—Section 1129(a)(8)**

50.    Classes A2, A3, A6(b), B2, B3 and B5 constitute Unimpaired Classes— each of which is conclusively presumed to have accepted the Plan in accordance with Bankruptcy Code section 1126(f)—and the Voting Classes, Classes A1 and B1, have voted to accept the Plan.  However, Classes A4(a) (General Unsecured Claims against the Term Loan Debtors), A4(b) (Second Lien Facility Claims), A5 (Subordinated Claims against the Term Loan Debtors), A6(a) (Holdco Interests in the Term Loan Debtors) and B4 (General Unsecured Claims against the Marketing Fund Trusts Debtors) are Impaired under the Plan and are deemed to have rejected the Plan.  Accordingly, although the Plan does not satisfy Bankruptcy Code section 1129(a)(8), based upon the record before this Court, the Plan is confirmable because it satisfies Bankruptcy Code sections 1129(a)(10) and 1129(b).

**W.    Treatment of Claims Entitled to Priority Under Bankruptcy Code Section 507(a)—Section 1129(a)(9)**

51.    The treatment of Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, DIP Facility Claims and Priority Non-Tax Claims under Article II of the

Plan satisfies the requirements of, and complies in all respects with, Bankruptcy Code section 1129(a)(9).

X.    **Acceptance By At Least One Impaired Class—Section 1129(a)(10)**

52.    The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(10). As set forth in the Voting Certification, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims determined without including any acceptance of the Plan by any insider (as that term is defined in Bankruptcy Code section 101(31)), specified under the Bankruptcy Code.

Y.    **Feasibility of the Plan—Section 1129(a)(11)**

53.    The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(11). The financial projections attached to the Disclosure Statement and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Declarations filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

Z.    **Payment of Bankruptcy Fees—Section 1129(a)(12)**

54.    The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(12). Article 10.13 of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**AA.    Continuation of Employee and Retiree Benefits—Section 1129(a)(13)**

55.    The Debtors do not incur liability for retiree benefits or the payment of retiree benefits subject to Bankruptcy Code sections 1114 and 1129(a)(13).    Accordingly, Bankruptcy Code section 1129(a)(13) is inapplicable to the Chapter 11 Cases.

**BB.    Inapplicability of Domestic Support Obligations, Unsecured Claims Against Individual Debtors and Transfers by Nonprofit Organizations—Sections 1129(a)(14), (15) and (16)**

56.    The requirements of Bankruptcy Code sections 1129(a)(14), (15) and (16) are inapplicable to the Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals and are not nonprofit corporations.

**CC.    "Cram Down" Requirements—Section 1129(b)**

57.    The Plan satisfies the requirements of Bankruptcy Code section 1129(b). First, all of the requirements of Bankruptcy Code section 1129(a) other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to Classes A4(a), A4(b), A5, A6(a) and B4, the only Impaired Classes that have not accepted the Plan. Holders of Claims in Classes A4(a), A4(b), A5, A6(a) and B4 are deemed to have rejected the Plan. Nonetheless, no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim or Interest. Third, the Plan does not discriminate unfairly with respect to Classes A4(a), A4(b), A5, A6(a), or B4 because similarly situated Holders of Claims and Interests will not receive different treatment under the Plan. Accordingly, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**DD.    Only One Plan—Section 1129(c)**

58.    The Plan satisfies the requirements of Bankruptcy Code section 1129(c). The Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

**EE.    Principal Purpose of the Plan Is Not Avoidance of Taxes—Section 1129(d)**

59.    The Plan satisfies the requirements of Bankruptcy Code section 1129(d). As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**FF.    Good Faith Solicitation—Section 1125(e)**

60.    Based on the record before the Court in the Chapter 11 Cases, the Debtors, the Consenting First Lien Lenders, the Consenting Second Lien Lenders, the Consenting Existing Equity Holders, Vectra, the DIP Lenders, the DIP Agent, the First Lien Agent, the Second Lien Agent, and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys and advisors of each of the foregoing, as applicable, and each solely in their capacities as such, (1) have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e) and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and (2) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and are entitled to the protections afforded by Bankruptcy Code section 1125(e).

**GG.    Satisfaction of Confirmation Requirements**

61.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in Bankruptcy Code section 1129.

**HH.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

62.     Each of the conditions precedent to the Effective Date, as set forth in Article 8.1 of the Plan, has been or is reasonably likely to be satisfied or, as set forth in and subject to the terms of the Plan, may be waived in whole or in part by the Debtors, subject to the consent of the Requisite Consenting Parties, which shall not be unreasonably withheld, in accordance with Article 8.2 of the Plan.

**II.     Implementation**

63.     All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution (including the documentation of the Amended First Lien Credit Agreement, the Amended Marketing Fund Trusts Credit Agreement and the Specified Litigation Agreement), be valid, binding and enforceable agreements and not be in conflict with any federal or state law.

**JJ.     Disclosure of Facts**

64.     The Debtors have disclosed all material facts regarding the Plan and the Disclosure Statement, including, but not limited to:  (a) the fact that each of the Reorganized Debtors will emerge from its Chapter 11 Case as a validly existing corporation, limited liability company, partnership or other form, as applicable, with separate assets, liabilities and obligations; (b) the fact that the Consenting Second Lien Lenders have reserved their rights and expressed their intention to transfer up to 20% of the Remaining Equity to the Consenting Existing Equity Holders, in exchange for the cooperation of the Consenting Existing Equity Holders in the pursuit of the Specified Litigation Claims; (c) the funding of the Specified Litigation and execution and potential targets of the Specified Litigation Agreement; (d) the establishment and funding of the General Unsecured Claims Cash Distribution Escrow; (e) the

Valuation Analysis, which sets forth the estimated value available for distribution to Holders of Allowed Claims entitled to receive a distribution under the Plan; (f) the Financial Projections, which set forth the Debtors' financial ability to meet their respective obligations under the Plan; (g) the Liquidation Analysis; (h) a schedule of the Retained Causes of Action; and (h) the Amended Corporate Governance Documents.

### KK.  Exit Financing

65.     Upon diligent inquiry, the Debtors have determined that the Amended First Lien Credit Facility, the New Delayed-Draw Term Facility and the Amended Marketing Fund Trusts Credit Facility (collectively, the "*Exit Financing*") to be provided by the First Lien Lenders and Vectra subject to and in accordance with the Amended First Lien Credit Agreement and the Amended Marketing Fund Trusts Credit Agreement (collectively, the "*Exit Financing Agreements*") are the best financing alternatives available to the Reorganized Debtors.  The terms of the Exit Financing have been negotiated in good faith and on an arm's-length basis, and each party thereto may rely upon the provisions of this Confirmation Order in closing the Exit Financing.  The availability of borrowings under the Exit Financing is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  The terms and conditions of the Exit Financing Agreements are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the Debtors' Estates and their creditors.  The execution, delivery or performance by the Debtors or Reorganized Debtors, as the case may be, of or in accordance with any documents in connection with the Exit Financing, and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order.  The financial accommodations to be extended pursuant to the Exit

Financing Agreements are being extended in good faith and for legitimate business purposes.

66.     The Debtors have provided sufficient and adequate notice of the terms of the Exit Financing Agreements to all parties in interest, including, without limitation, the Core Notice Parties.

67.     On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Financing Agreements shall be deemed approved and shall be legal, valid, binding, enforceable and perfected liens on and security interests in the collateral for the Exit Financing and having the priorities set forth therein.

68.     The security interests and Liens to be granted by the Debtors or Reorganized Debtors in accordance with the Exit Financing Agreements (the "*Exit Financing Liens*") are not subject to recharacterization or equitable subordination for any purposes whatsoever and are not preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law. The Reorganized Debtors and the persons granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order. All fees, costs and expenses paid or to be paid by the Debtors and Reorganized Debtors in connection with the Exit Financing are hereby ratified and approved.

**LL.     Valuation**

69.     The Valuation Analysis set forth as Exhibit E to the Disclosure Statement was prepared by the Debtors' investment banker, Lazard Frères & Co., in accordance with standard and customary valuation principles and practices, and is a fair and reasonable estimate of the value of the Debtors' business as a going concern.

**MM.  Retention of Jurisdiction**

70.    The Court may properly retain competent jurisdiction over the matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article 10.1 of the Plan and Bankruptcy Code section 1142.

### *ORDER*

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

1.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

2.    **Notice of the Confirmation Hearing.**  Notice of the Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

3.    **Solicitation.**  The solicitation of votes on the Plan complied with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws and regulations, and was appropriate and satisfactory and is approved in all respects.

4.    **Ballots.**  The Ballots, which were approved in all respects pursuant to the Scheduling Order [Docket No. 47], are in compliance with Bankruptcy Rule 3018(c) and conform to Official Form B14.

5.    **Modifications to the Plan.**  Modifications made to the Original Plan following the solicitation of votes thereon satisfied the requirements of Bankruptcy Code section 1127 and Bankruptcy Rule 3019, and no further solicitation is required.

6. **The Disclosure Statement**. The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of applicable nonbankruptcy law; (b) contains "adequate information" (as such term is defined in Bankruptcy Code section 1125(a)(l) and used in Bankruptcy Code section 1126(b)(2)) with respect to the Debtors, the Plan and the transactions contemplated therein; and (c) is approved in all respects.

7. **Confirmation of the Plan**. The Plan is approved in its entirety and CONFIRMED under Bankruptcy Code section 1129. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

8. **Objections**. All parties have had a full and fair opportunity to raise objections to the Plan and to litigate all issues raised by the objections to the Plan, and the objections to the Plan have been fully and fairly litigated. Except as provided in paragraph 78 of this Confirmation Order, all objections, responses to, and statements and comments, if any, in opposition to, the Plan, the Disclosure Statement and/or the proposed rejection or assumption of executory contracts or unexpired leases, and the associated proposed cure amounts, respectively, other than those withdrawn with prejudice in their entirety on the merits prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety or are otherwise resolved as incorporated herein.

9. **No Action Required**. Pursuant to the appropriate provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act and other state laws, and Bankruptcy Code section 1142(b), and otherwise, no action of the respective security holders, directors,

managers, authorized persons or officers of the Debtors or Reorganized Debtors, as applicable, shall be required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including but not limited to any documentation executed in connection with the Exit Financing Agreements, the New Management Equity Incentive Plan, the Amended Corporate Governance Documents, and the Specified Litigation Agreement.

       10.     **Binding Effect.** Upon the occurrence of the Effective Date, the terms of the Plan (including the exhibits and schedules thereto and all documents and agreements executed pursuant thereto or in connection therewith, including those contained in the Plan Supplement) and this Confirmation Order are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors and any and all Holders of Claims or Interests (regardless of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), all entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each entity acquiring property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, any Person making an appearance in the Chapter 11 Cases, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

       11.     **Substantive Consolidation for Plan Purposes Only.** Entry of this Confirmation Order constitutes the approval of the deemed substantive consolidation of the Chapter 11 Cases of the Term Loan Debtors for purposes of voting on, confirmation of, and

distributions under the Plan, effective as of the Effective Date, pursuant to Bankruptcy Code section 105(a). For Plan purposes only, the Term Loan Debtors shall be deemed merged into Holdco, and (a) all assets and liabilities of the Term Loan Debtors shall be deemed merged into Holdco, (b) all guaranties of any Term Loan Debtor of the payment, performance, or collection of the obligations of another Term Loan Debtor shall be eliminated and cancelled, (c) any obligation of any Term Loan Debtor and all guaranties thereof executed by one or more of the other Term Loan Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Term Loan Debtors, (d) all joint obligations of two or more Term Loan Debtors, and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the consolidated Term Loan Debtors, and (e) each Claim filed in the Chapter 11 Cases of any Term Loan Debtor shall be deemed filed against the consolidated Term Loan Debtors and a single obligation of the Term Loan Debtors on and after the Effective Date.

12.    **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in the Plan, the Specified Litigation Agreement, or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action and any property acquired by any of the Debtors pursuant to the Plan, including the Retained Causes of Action of the Debtors and their Estates, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, other encumbrances, or Interests, except for Liens securing the Exit Financing, and will be transferred to and vest in the Reorganized Debtors, free and clear of all Liens, claims, charges, other encumbrances and Interests.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and

32

compromise or settle any Claims, Interests, or Causes of Action, without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan or this Confirmation Order.

13.    Notwithstanding the foregoing, the deemed consolidation and substantive consolidation of the Term Loan Debtors' Estates (each for Plan purposes only) shall not (other than for purposes related to funding distributions under the Plan) affect (a) the legal and organizational structure of the Debtors or the Reorganized Debtors, (b) pre- and post-Petition Date guaranties, Liens and security interests that were required to be maintained (i) in connection with any executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed by the Term Loan Debtors or (ii) pursuant to the Plan, (c) distributions out of any insurance policies or proceeds of such policies, and (d) the tax treatment of the Term Loan Debtors.  Furthermore, notwithstanding the foregoing, the deemed consolidation and substantive consolidation (each for Plan purposes only), shall not affect the statutory obligation of each and every Term Loan Debtor to pay quarterly fees to the U.S. Trustee pursuant to 28 U.S.C. §1903(a)(6) and Article 10.13 of the Plan.

14.    **Authorizations to Take Acts Necessary to Implement Plan.**  The Debtors or the Reorganized Debtors, as applicable, may take all actions to execute, deliver, file, or record such contracts, instruments, releases, leases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan without the need for any further notice to or action, order or approval of the Court, or other act or action under applicable law, regulation, order or rule except for those expressly required pursuant to the Plan, the Amended Corporate Governance Documents, the Exit Financing Agreements, the Specified Litigation Agreement, or any document included in the

Plan Supplement. All matters provided for pursuant to the Plan that would otherwise require approval of the security holders, directors, managers or members of the Debtors or the Reorganized Debtors, as applicable, shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the security holders, directors, managers, authorized persons or officers of the Debtors, or the need for any approvals, authorizations, actions or consents except as otherwise expressly required pursuant to the Plan, the Amended Corporate Governance Documents, the Exit Financing Agreements, the Specified Litigation Agreement, or any document included in the Plan Supplement. Except as otherwise stated in the Plan, this Confirmation Order shall constitute all approvals and consents required (including consents to assume or assign executory contracts), if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement and any documents, instruments or agreements and any amendments or modifications thereto. On the Effective Date, or as soon as thereafter as is practicable, the Reorganized Debtors shall file their amended certificates of incorporation or other constituent documents with the Secretary of State of Delaware, as may be necessary, in accordance with the Delaware General Corporation Law or the Delaware Limited Liability Company Act.

15.    **Effectiveness of All Actions**. Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Confirmation Order, without the need for any further notice to or action,

order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule except those expressly required pursuant to the Plan.

16.    **Restructuring Transactions.**  The Debtors or Reorganized Debtors, as applicable, are authorized to enter into and effectuate the following transactions contemplated under the Plan (the "*Restructuring Transactions*"), which include, among other things:  (a) the amendment and restatement of the First Lien Credit Agreement by the Amended First Lien Credit Agreement; (b) the amendment and restatement of the Marketing Fund Trusts Credit Agreement by the Amended Marketing Fund Trusts Credit Agreement; (c) the execution of the Exit Financing Agreements; (d) the issuance of New Common Interests; (e) the establishment and funding of the General Unsecured Claims Cash Distribution Escrow; (f) the procurement of the Insurance Coverage; (g) the adoption of the Amended Corporate Governance Documents and, where required by applicable law, the filing of the Amended Corporate Governance Documents with the applicable authorities of the relevant jurisdictions of organization; and (h) the execution of the Specified Litigation Agreement.

17.    **Corporate Action.**  On and after the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors are authorized to take all actions as may be necessary or appropriate to effect any transactions described in, approved by, contemplated by, or necessary to effectuate the Plan, including, but not limited to:  (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any

35

asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution and the Amended Corporate Governance Documents pursuant to applicable state law; and (d) all other actions that the applicable entities that may be required by applicable law, subject, in each case, to the Amended Corporate Governance Documents. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons or officers of the Debtors.

18.    Any transfers of the Debtors' or Reorganized Debtors' assets effected through the Restructuring Transactions or the corporate actions described above are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance. Each of the Reorganized Debtors shall continue to exist as a separate entity in accordance with applicable law in the respective jurisdiction in which it is organized and pursuant to its constituent documents in effect prior to the Effective Date; *provided, however,* that notwithstanding anything to the contrary in the Plan, the Unimpaired Claims against a Debtor shall remain the obligations solely of such Debtor or such Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of the Plan, the Chapter 11 Cases, or otherwise.

19.    Pursuant to Bankruptcy Code sections 1123 and 1142, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other state, without further action by the Bankruptcy Court or the security holders,

directors, managers, authorized persons or officers of any Debtor or Reorganized Debtor, the Debtors and the Reorganized Debtors, as well as the officers and members of the boards of managers or directors thereof, are hereby authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, the Plan Documents, this Confirmation Order, and the Restructuring Transactions contemplated thereby or hereby.

20.     **Issuance and Distribution of New Common Interests.** Reorganized Holdco is authorized to issue the New Common Interests pursuant to the terms and conditions of the Plan. All of the shares of New Common Interests issued pursuant to the Plan, including the New Common Interests that are reserved by the Reorganized Debtors for distribution to Holders of First Lien Facility Claims and Holders of Second Lien Facility Claims, are hereby deemed duly authorized, validly issued, fully paid and non-assessable. Each distribution and issuance of the New Common Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each entity receiving such distribution or issuance.

21.     **Amended First Lien Credit Agreement and the Amended Marketing Fund Trusts Credit Agreement; Continuation of Certain Liens.** The terms of the Amended First Lien Credit Agreement and the Amended Marketing Fund Trusts Credit Agreement are approved in all respects. On the Effective Date, (a) the First Lien Credit Agreement shall be deemed amended and restated in its entirety by the Amended First Lien Credit Agreement, and all Liens securing First Lien Facility Claims including, for the avoidance of doubt, any Liens

against the assets of the Non-Debtor Guarantor, shall continue uninterrupted in existence to secure the obligations under the Amended First Lien Credit Agreement in the amount and according to the terms of the Amended First Lien Credit Agreement and (b) the Marketing Fund Trusts Credit Agreement shall be deemed amended and restated in its entirety by the Amended Marketing Fund Trusts Credit Agreement, and all Liens securing the Marketing Fund Trusts Facility Claims shall continue uninterrupted in existence to secure the Amended Marketing Fund Trusts Credit Agreement in the amount and according to the terms of the Amended Marketing Fund Trusts Credit Agreement.

22.     **Termination of DIP Credit Agreement.** On the Effective Date, without any further action by the Court, (a) the Reorganized Debtors are authorized, to pay, in full, in Cash by wire transfer or immediately available funds, all DIP Facility Claims, unless otherwise agreed to by the Debtors or Reorganized Debtors, as applicable, and the Holder of a DIP Facility Claim, and (b) the commitments under the DIP Credit Agreement shall be terminated. Upon payment or satisfaction of all DIP Facility Claims in accordance with the terms thereof, all Liens and security interests granted to secure such obligations shall be deemed terminated and shall be of no further force and effect. Notwithstanding the foregoing, all obligations of the Debtors (if any) to the DIP Agent and the DIP Lenders under the DIP Credit Agreement which are expressly stated in the DIP Credit Agreement as surviving such agreement's termination (including, without limitation, indemnification and expense reimbursement obligations) shall, as so specified, survive without prejudice and remain in full force and effect.

23.     **Exemption from Securities Law.** The offering, issuance and distribution of any New Common Interests to the Holders of First Lien Facility Claims and Holders of Second Lien Facility Claims shall be exempt from, among other things, the registration

requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities, pursuant to Bankruptcy Code section 1145. In addition, except as otherwise provided in the Plan, to the maximum extent provided under Bankruptcy Code section 1145, any and all New Common Interests issued to the Holders of First Lien Facility Claims and Holders of Second Lien Facility Claims as contemplated by the Plan will be freely tradable by the recipients thereof, subject to: (a) the provisions of Bankruptcy Code section 1145(b)(1) relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such Securities and instruments; and (c) applicable regulatory approval.

24. **Cancellation of Notes, Instruments and Outstanding Equity Interests.** On the Effective Date, except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, all agreements, stock, instruments, certificates and other documents in respect of the Second Lien Facility Claims, the DIP Facility Claims and the Holdco Interests shall be cancelled, and the obligations of the Debtors or Reorganized Debtors thereunder or in any way related thereto shall be fully released and discharged; *provided, however,* that the First Lien Credit Agreement, Second Lien Credit Agreement and the DIP Facility Agreement shall continue in effect solely for the purposes of allowing Holders of Claims arising therefrom to receive distributions under the Plan.

25. **Subordination.** Except as otherwise expressly provided in the Plan, this Confirmation Order and any other order of the Court, the allowance, classification and treatment

39

of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code section 510(b), or otherwise.  Pursuant to Bankruptcy Code section 510, the Debtors reserve the right to seek to re-classify any Allowed Claim (or portion thereof) as a Subordinated Claim upon entry of a Final Order ruling that such Allowed Claim (or portion thereof) is a Subordinated Claim.  The Confirmation Order does not subordinate any Claim.

26.    **Cancellation of Liens.**  Except as expressly provided in Article 4.9 of the Plan, or with respect to the Other Secured Claims (depending on the treatment of such Claims), on the Effective Date, any Lien securing any Claim shall be deemed released, and the Holder of such Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).

27.    **Entry into the Exit Financing Agreements.**  The terms of the Exit Financing Agreements are approved in all respects.  The obligations of the Reorganized Debtors under the Exit Financing Agreements, including all related security agreements, will, upon execution, constitute legal, valid, binding and authorized obligations of each of the Debtors or Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state or federal law.

28.     On the Effective Date, without any further action by the Court or the security holders, directors, managers, authorized persons or officers of the Reorganized Debtors, each Reorganized Debtor, as applicable, will be and is authorized to enter into the Exit Financing Agreements.

29.     As of the Effective Date, without any further action by the Court or the security holders, directors, managers, authorized persons or officers of any of the Reorganized Debtors, the Liens and security interests granted or continued pursuant to the Exit Financing Agreements will constitute legal, valid and enforceable Liens and security interests in the collateral (as defined in the Exit Financing Agreements and any other documents to be executed and delivered pursuant thereto) and such Liens and security interests will constitute legal, valid and binding obligations of the Reorganized Debtors.

30.     The Holders of Liens under the Exit Financing Agreements are authorized to file, with the appropriate authorities, financing statements and other documents (the "*Perfection Documents*") in order to evidence such Liens.  Whether the Perfection Documents are filed prior to, on or after the Effective Date (a) such Perfection Documents will be valid, binding, and in full force and effect as of the Effective Date, and (b) the Liens granted under or in connection with the Exit Financing Agreements will become obligations of the Reorganized Debtors.

31.     In addition, on the Effective Date, without any further action by the Court or security holders, directors, managers, authorized persons or officers of any of the Reorganized Debtors, each applicable Reorganized Debtor will be, and is, authorized to: (a) execute, deliver, file and record any other contracts, instruments, agreements, guaranties or other documents executed or delivered in connection with the Exit Financing Agreements; (b) perform all of its

obligations under the Exit Financing Agreements; and (c) take all such other actions as any of the responsible officers of such Reorganized Debtor may determine are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the Exit Financing Agreements.

32.     The guarantees, mortgages, pledges, Liens and other security interests granted and continued by the Debtors or the Reorganized Debtors, pursuant to the Exit Financing Agreements, have been and are granted in good faith and will be deemed not to constitute a fraudulent conveyance or fraudulent transfer by the Debtors or the Reorganized Debtors, will not otherwise be subject to avoidance, and the priorities of such Liens and security interests will be as set forth in the Exit Financing Agreements.

33.     Notwithstanding anything to the contrary in this Confirmation Order or Article 10.1 of the Plan, after the Effective Date, any disputes arising under the Exit Financing Agreements will be governed by the jurisdictional provisions therein.

34.     **New Management Equity Incentive Plan.**  On or as soon as practicable after the Effective Date, Reorganized Holdco shall adopt and implement (as applicable) the New Management Equity Incentive Plan.  For the avoidance of doubt, Confirmation of the Plan shall not be construed as the approval of the Bankruptcy Court of the terms of any such New Management Equity Incentive Plan, which shall be adopted and implemented in the sole discretion of the New Board of Managers without the need for an order of the Bankruptcy Court.

35.     **Assumption or Rejection of Contracts and Leases.**  Pursuant to Article 5.1 of the Plan, except as otherwise set forth in the Plan, all executory contracts or unexpired leases of the Debtors, including all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contracts or unexpired leases, and all

42

executory contracts and unexpired leases related thereto, if any, shall be deemed assumed in accordance with the provisions and requirements of Bankruptcy Code sections 365 and 1123 as of the Effective Date, unless such executory contract or unexpired lease:  (a) was previously assumed or rejected by the Debtors; (b) previously expired or terminated pursuant to its terms; (c) is the subject of a motion to assume or reject filed by the Debtors under Bankruptcy Code section 365 pending as of the Effective Date; or (d) is specifically designated on the Schedule of Rejected Executory Contracts and Unexpired Leases.

36.     On the Effective Date, each executory contract, unexpired lease or other contract that is listed on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be deemed rejected or repudiated pursuant to Bankruptcy Code section 365 or other applicable law.  On the Effective Date the Debtors shall vacate the premises subject to any rejected unexpired lease, absent further order of the Court or consent of the non-Debtor counterparty to such rejected unexpired lease.  Each contract or lease listed on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be rejected only to the extent that such contract or lease constitutes an executory contract or unexpired lease; *provided, however,* that listing a contract or lease on the Schedule of Rejected Executory Contracts and Unexpired Leases shall not constitute an admission by the Debtors or Reorganized Debtors that such contract or lease is an executory contract or unexpired lease or that such Debtor or Reorganized Debtor has any liability thereunder.  Until the Effective Date, the Debtors expressly reserve their right to amend the Schedule of Rejected Executory Contracts and Unexpired Leases to (a) delete any executory contract, unexpired lease or other contract therefrom and add such executory contract, unexpired lease or other contract to the Schedule of Assumed Executory Contracts and Unexpired Leases or (b) add any executory contract, unexpired lease or other contract thereto.

The Debtors or Reorganized Debtors, as applicable, are authorized, but not directed, to abandon any personal property that may be located at any premises that are subject to any rejected unexpired lease.

37.    Except as otherwise provided herein, entry of this Confirmation Order shall constitute approval by the Court of such assumptions, rejections or repudiations pursuant to Bankruptcy Code sections 365(a) and 1123 and/or other applicable law, and all objections, if any, are overruled.

38.    **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**. The proposed cure amount for an executory contract or unexpired lease that is assumed pursuant to the Plan shall be zero dollars unless otherwise indicated in the Schedule of Assumed Executory Contracts and Unexpired Leases. Except as otherwise provided by paragraph 78 of this Confirmation Order, the Debtors shall satisfy cure obligations, if any, pursuant to Bankruptcy Code section 356(b)(1), by payment of the cure amount listed on the Schedule of Assumed Executory Contracts and Unexpired Leases in Cash on the Effective Date or on such other terms as the parties to such executory contract or unexpired lease may otherwise agree. In the event the Debtors remove an executory contract or unexpired lease from the Schedule of Rejected Executory Contracts and Unexpired Leases and add such executory contract or unexpired lease to the Schedule of Assumed Executory Contracts and Unexpired Leases, the non-Debtor contract counterparty shall have ten (10) days from the filing and service of notice of such action by the Debtors to object to the assumption of such executory contract or unexpired lease and/or the proposed cure amount with respect thereto. In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365

under the executory contract or unexpired lease to be assumed, or (c) any other matter pertaining to assumption, any cure payments required by Bankruptcy Code section 365(b)(1) shall be made following entry of a Final Order resolving the dispute and approving the assumption; *provided, however,* that following the resolution of any such dispute, the Debtors or Reorganized Debtors reserve the right to reject such executory contract or unexpired lease. Any counterparty that does not dispute the cure amount proposed by the Debtors as provided above shall be forever barred from disputing or otherwise asserting any cure amount other than the cure amount paid by the Debtors and the payment of such cure amount is hereby deemed to satisfy fully and completely the cure requirements to the Debtors' assumption of each of the executory contracts and unexpired leases assumed under the Plan.

39.   **Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired Leases**. If the rejection of an executory contract or unexpired lease or the repudiation of a contract pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors or Reorganized Debtors or their properties, or any of their interests in properties as agent, successor or assign, unless a Proof of Claim is filed with the Claims and Noticing Agent and served upon counsel to the Reorganized Debtors within thirty (30) days after the later of (a) service of this Confirmation Order and (b) service of notice of the effective date of rejection or repudiation of the executory contract or unexpired lease. The Debtors shall give notice of the bar date established by Article 5.6 of the Plan to the non-Debtor counterparties to the executory contracts, unexpired leases or other contracts identified in the Schedule of Rejected Executory Contracts and Unexpired Leases by service of the Plan, this Confirmation Order, or otherwise. Article 5.6 of the Plan is hereby modified to provide that the Reorganized Debtors shall object to such Claims by the Claims

Objection Deadline. For the avoidance of doubt, absent further order of the Bankruptcy Court, the Debtors' lease with FSP 1001 17th Street, LLC shall be rejected and not repudiated pursuant to the Plan and Confirmation Order.

40. In the event of a dispute as to whether a contract or lease is executory or unexpired, (a) the right of the Debtors or Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Bankruptcy Court determining that the contract or lease is executory or unexpired and (b) the deemed assumptions and rejections provided for in Article V of the Plan shall not apply to such contract or lease.

41. The Debtors shall be deemed to have assumed all insurance policies pursuant to which the Debtors have any obligations in effect as of the date of this Confirmation Order, and such insurance policies shall continue in full force and effect as executory contracts assumed pursuant to the Plan. All other insurance policies shall revest in the Reorganized Debtors.

42. **Employee Compensation and Benefit Programs; Deferred Compensation Plans; and Rejection of Any Deferred Compensation Plans Deemed Executory Contracts.** The Debtors are authorized to fulfill, in the ordinary course of business, the Employee Benefits Programs, which were entered into before the Petition Date and not since terminated, and which shall survive Confirmation of the Plan. For the avoidance of doubt, the Deferred Compensation Plans are not Employee Benefit Programs. Further, to the extent that the Deferred Compensation Plans are executory contracts, the Deferred Compensation Plans shall be deemed rejected, effective as of the Petition Date. To the extent the Deferred Compensation

Plans are not executory contracts, the Deferred Compensation Plans shall be deemed repudiated, effective as of the Petition Date.

43.    **Approval of the Specified Litigation Agreement.**  Pursuant to Article 4.5 of the Plan, on the Effective Date, the Reorganized Debtors are authorized to enter into the Specified Litigation Agreement.

44.    The Plan and the Specified Litigation Agreement shall govern the management and administration of the Specified Litigation Claims and the respective rights, powers and obligations of the parties in pursuit of the Specified Litigation Claims and the beneficiaries thereof.  Upon its execution, the Specified Litigation Agreement shall be binding on the Reorganized Debtors, Avenue and Fortress.  On and after the Effective Date, the Reorganized Debtors, Avenue and Fortress shall be authorized (if and to the extent any such authorization is required from this Court) to take all actions necessary to pursue the Specified Litigation Claims pursuant to the terms of the Specified Litigation Agreement.

45.    **Dissolution of Committee.**  Pursuant to Article 4.17 of the Plan, the Creditors Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in Bankruptcy Code section 1103 and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. On the Effective Date, the Creditors Committee shall be dissolved and the Creditors Committee's members shall be deemed released of all their duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Creditors Committee's Professionals shall terminate, except with respect to (a) any Professional Fee Claims; (b) the review of invoices pursuant to Articles 10.10, 10.11 and 10.12 of the Plan; and (c) any appeals of this Confirmation Order.

46.    **Objections to, Settlement of and Estimation of Claims.**  Pursuant to Article 6.1 of the Plan, prior to the Effective Date, the Debtors or any other party in interest may object to the allowance of any Claim or Administrative Expense claim.  After the Effective Date, only the Reorganized Debtors or Claims Oversight Committee may object to the allowance of any Claim or Administrative Expense Claim and, for the avoidance of doubt, the U.S. Trustee and the Creditors Committee may object to the allowance of the Professional Fee Claims. Subject to Article 6.4 of the Plan (a) the Debtors or Reorganized Debtors, as applicable, shall file objections to Claims on or before the Claims Objection Deadline; (b) after the Effective Date, the Reorganized Debtors shall have the power and authority, but shall have no obligation, to object to, allow or settle and compromise any Claim without notice to any other party, or approval of, or notice to the Bankruptcy Court; and (c) the Debtors or the Reorganized Debtors, as applicable, may at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c) regardless of whether any party has previously objected to such Claim.

47.    **Reserve for Disputed General Unsecured Claims.**  Pursuant to Article 6.2 of the Plan, the General Unsecured Claims Cash Distribution Escrow Agent shall maintain the Distribution Reserve.  Upon the request of the Debtors, Reorganized Debtors or Claims Oversight Committee at any time, the Bankruptcy Court may estimate and determine the Estimated Amount of any Disputed General Unsecured Claim as of the Effective Date and the expected Pro Rata recovery on such Estimated Amount shall be the amount reserved in the Distribution Reserve for such Disputed General Unsecured Claim.  Any claimant holding such a Disputed General Unsecured Claim so estimated will receive no more than such reserved amount from the Distribution Reserve and will not have recourse to the Debtors, the Reorganized

Debtors, or other property transferred pursuant to the Plan should the Allowed General Unsecured Claim of such claimant exceed such Estimated Amount. For the avoidance of doubt, the Former D&O Indemnification Claims shall be deemed Disputed General Unsecured Claims.

48.     **Distributions and Disposition of Distribution Reserve.** All distributions under the Plan shall be made in accordance with the terms and conditions set forth in the Plan, including Article II and Article VII thereof. The provisions of Article VI of the Plan, including the provisions governing procedures for resolving Disputed General Unsecured Claims and maintaining the Distribution Reserve are fair and reasonable and are approved.

49.     **Claims Oversight Committee.** Pursuant to Article 6.4 of the Plan, on the Effective Date, there shall be formed the Claims Oversight Committee. The initial composition of the Claims Oversight Committee shall be determined by the Creditors Committee and thereafter by the Claims Oversight Committee. The identity of the members of the initial Claims Oversight Committee shall be filed with the Bankruptcy Court prior to the Effective Date; *provided, however* if such filing does not occur prior to the Effective Date, Article 6.4 of the Plan and all references in the Plan to the Claims Oversight Committee shall be deemed stricken from the Plan. Within thirty (30) days of the Effective Date, the Claims Oversight Committee shall file with the Bankruptcy Court any documents governing the actions of the Claims Oversight Committee. The remaining terms of Article 6.4 of the Plan are incorporated herein by reference.

50.     **Authorization to Consummate.** The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation set forth in Article 8.1 of the Plan.

49

51.   **Professional Fee Claims.**   Pursuant to Article 2.2 of the Plan, all Professionals seeking allowance by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date. Allowed Professional Fee Claims shall be paid in full (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Professional Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Debtors or, on and after the Effective Date, the Reorganized Debtors.   Pursuant to this Confirmation Order, the Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval, including those of the Creditors Committee solely to the extent the Creditors Committee remains in existence after the Effective Date as set forth in Article 4.17 of the Plan.

52.   **Payment of Advisor Fees and Expenses and Agent Fee Claims.** Pursuant to Articles 10.10, 10.11 and 10.12 of the Plan, and subject to and in accordance with the Restructuring Support Agreement, on the Effective Date or as soon as reasonably practicable thereafter, or at another time as may otherwise be provided for in any prepetition engagement letters, the Debtors or Reorganized Debtors, as the case may be, are authorized to pay in Cash, without the need for the filing of any fee or retention applications in the Chapter 11 Cases, the Consenting First Lien Lender Advisor Fee Claims, the Agent Fee Claims and the Avenue and Fortress Advisor Fee Claims.  Pursuant to article 2.15(b) of the Plan and paragraph 15 of the DIP Facility Order [Docket No. 250], on the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as the case may be, are authorized to pay in Cash

from the Marketing Fund Trusts, without the need for the filing of any fee or retention applications in the Chapter 11 Cases, the unpaid and reasonable and documented fees and expenses incurred through the Effective Date of Vectra (the *"Vectra Fee Claims"*). Any such payment may only be made ten (10) business days following the delivery of an invoice to the Debtors or Reorganized Debtors, as applicable, counsel to the Creditors Committee and the U.S. Trustee, *provided* that, upon any objection to the reasonableness of such fees, the Debtors or Reorganized Debtors shall pay that portion of the Consenting First Lien Lender Advisor Fee Claims, the Agent Fee Claims, the Avenue and Fortress Advisor Fee Claims or the Vectra Fee Claims, as applicable, that are not the subject of such objection within the ten (10) day period and shall pay the Disputed Consenting First Lien Lender Advisor Fee Claim, the Disputed Agent Fee Claim,, the Disputed Avenue and Fortress Advisor Fee Claim or the portion of the Vectra Fee Claims that are disputed, as applicable, following the resolution of such objection or upon an order of the Court.

53.   **Administrative Expense Claims**.   Pursuant to Article 2.1 of the Plan, except to the extent that a Holder of an Allowed Administrative Expense Claim and the Debtors or the Reorganized Debtors agree in writing to less favorable treatment for such Claim, the Debtors (or the Reorganized Debtors, as the case may be) are authorized to pay to each Holder, as applicable, of an Allowed Administrative Expense Claim, in full and final satisfaction of its Administrative Expense Claim, Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided, however,* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of

51

business by the Debtors or liabilities arising under loans or advances to or other obligations incurred by the Debtors, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions. Except as otherwise provided by the Plan, any request for the payment of an Administrative Expense Claim that is not filed and served within thirty (30) days after the Effective Date shall be discharged and forever barred and the Holder of such Administrative Expense Claim shall be enjoined from commencing or continuing any action, process or act to collect, offset or recover on such Claim against any of the Debtors or Reorganized Debtors.

54.    **Return of Deposits**. Any utilities, including any Person who received a deposit or other form of adequate assurance of performance under Bankruptcy Code section 366 during the Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Debtors or the Reorganized Debtors, as the case may be, at the conclusion of the Chapter 11 Cases, if not returned or applied earlier.

55.    **DIP Facility Order.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall modify the terms of the DIP Facility Order, which shall remain in full force and effect.

56.    **Discharge.** Pursuant to Article 9.1 of the Plan, as of the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and satisfaction or termination of all Interests, including any Claims arising under the First Lien Credit Agreement to the extent not

52

reduced and modified by the Amended First Lien Credit Agreement, the Second Lien Credit Agreement, the Marketing Fund Trusts Credit Agreement to the extent not reduced and modified by the Amended Marketing Fund Trusts Credit Agreement, the DIP Facility and the DIP Facility Order. Except as otherwise provided in the Plan or this Confirmation Order, Confirmation shall, as of the Effective Date:  (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, including SARs Claims and Former D&O Indemnification Claims, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i), in each case whether or not (w) a Proof of Claim is filed or deemed filed pursuant to Bankruptcy Code section 501, (x) a Claim based on such debt is Allowed pursuant to Bankruptcy Code section 502, (y) the Holder of a Claim based on such debt has accepted the Plan or (z) such Claim is listed in the Schedules; and (ii) satisfy, terminate or cancel all Interests and other rights of equity security holders in the Debtors other than the Intercompany Interests.

57.    As of the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, or their respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or this Confirmation Order, this Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims and other debts and liabilities against the Debtors and satisfaction, termination or cancellation of all Interests and other rights of equity security holders in the Debtors, pursuant to Bankruptcy Code sections 524 and 1141, and such discharge will void any

judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

58.    **Injunction.** Except as otherwise provided in the Plan or this Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights:  (i) commencing or continuing in any manner any action or other proceeding against the Debtors or the Reorganized Debtors or their respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or the Reorganized Debtors or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors or the Reorganized Debtors or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors or their respective property; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.  Notwithstanding anything contained in this Confirmation Order or the Plan to the contrary, any rights of Holders of Claims under Bankruptcy Code section 553(a) or other applicable law to assert any counterclaims, cross claims, setoff and/or recoupment rights that they may have under applicable law shall not be impaired by this Confirmation Order or the Plan, and subject to applicable law may be asserted and/or exercised after the Effective Date.

59.    **Debtor Releases.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order, on the Confirmation Date and effective as of the Effective Date and to

the fullest extent authorized by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, the Released Parties are deemed released and discharged by the Debtors and their Estates from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Support Agreement, or any related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. For the avoidance of doubt, the Specified Litigation Claims shall not be released pursuant to the Plan, and the Specified Litigation Parties are not Released Parties.

60.    **Releases by Plan Support Releasing Parties.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, the Plan Support Releasing Parties are deemed to have released and discharged the Debtors and their Estates and the Released Parties from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Support Agreement, or any related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  For the avoidance of doubt, the Specified

56

Litigation Claims shall not be released pursuant to the Plan, and the Specified Litigation Parties are not Released Parties.

61.    **Exculpation.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, the Exculpated Parties shall not have nor incur any liability for any claim, cause of action, or other assertion of liability solely for any act taken or omitted in or in connection with the Chapter 11 Cases, the negotiation, formulation, preparation, administration, consummation and/or implementation of the Plan or any contract, instrument, document, or other agreement entered into in connection with the Plan (including the Restructuring Support Agreement); *provided, however,* that the foregoing exculpation shall not affect the liability of any Exculpated Party that otherwise would result from any act or omission to the extent that such act or omission is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; *provided, further,* that with respect to any Exculpated Party that is not also an Estate Fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e).   For greater certainty, except to the extent of any protections afforded by Bankruptcy Code section 1125(e), nothing in the Plan or this Confirmation Order shall impair, enjoin, exculpate or release any claims that the Specified Litigation Parties may have against any Exculpated Party that is not an Estate Fiduciary.  The Exculpated Parties shall be entitled to rely upon the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan and administration thereof.

62.    **Discharge, Injunction, Release and Exculpation Provisions.**   The discharge, injunction, release, exculpation and related provisions set forth in the Plan are

approved and authorized in their entirety, and such provisions are effective and binding on all Persons and entities to the extent provided therein.

63.    **Indemnification and Reimbursement Obligations and E&O and D&O Liability Insurance Coverage.**    Except as otherwise provided by the Plan, the Indemnity Obligations shall survive confirmation of the Plan and are Reinstated, shall remain unaffected by the Plan, and shall not be discharged or Impaired by the Plan, irrespective of whether the indemnification, advancement or reimbursement obligation is owed in connection with any event occurring before, on or after the Petition Date, it being understood that all indemnification provisions in place on and prior to the Effective Date for directors, officers, members, managers or employees and agents of the Debtors as of the Petition Date shall survive the effectiveness of the Plan for claims related to or in connection with any actions, omissions or transactions prior to the Effective Date (including prior to the Petition Date).  For the avoidance of doubt, nothing in Article 5.9 of the Plan shall be a determination of the allowance, disallowance or priority of the Claims, if any, of any directors, officers, members, managers, managing members, employees or agents of any of the Debtors that served in such capacity only prior to the Petition Date.

64.    In addition, the Debtors or Reorganized Debtors, as applicable, are authorized to obtain and maintain the Insurance Coverage for the E&O and D&O Insureds for the remaining term of such policy and shall maintain tail coverage under policies in existence as of the Effective Date for a period of at least six (6) years after the Effective Date, and consistent with historical practice, hereby further additionally indemnify the E&O and D&O Insureds solely to pay for any deductible or retention amount that may be payable in connection with any claim covered under either the foregoing Insurance Coverage or any prior similar policy.

65.    **Payment of U.S. Trustee Quarterly Fees**.  All fees due and payable pursuant to section 1930 of title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Notwithstanding the substantive consolidation of the Debtors called for in the Plan, each and every one of the Debtors shall remain obligated to pay quarterly fees to the office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

66.    **Intercompany Claims**.  Notwithstanding anything to the contrary herein, Intercompany Claims will be adjusted, continued or discharged to the extent determined appropriate by the Debtors, subject to the consent of the Requisite Consenting Parties, which consent shall not be unreasonably withheld, or, after the Effective Date, the Reorganized Debtors in their sole discretion.  Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Debtors or the Reorganized Debtors.  Each Debtor that holds an Intercompany Claim shall be entitled to account for such Intercompany Claim in its books and records as an asset of such Debtor.  The Debtors, with the consent of the Requisite Consenting Parties, which consent shall not be unreasonably withheld, and, after the Effective Date, the Reorganized Debtors, shall have the right to retain any Intercompany Claim, or effect such transfers and setoffs with respect to Intercompany Claims and Intercompany Interests as they may deem appropriate for accounting, tax and commercial business purposes, to the fullest extent permitted by applicable law.

67.    **Withholding and Reporting Requirements**.  In connection with the Plan, the Reorganized Debtors shall comply with all withholding and reporting requirements

imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such distribution. The Reorganized Debtors and any other Distribution Agent has the right, but not the obligation, not to make a distribution until such Holder has made arrangements satisfactory to the Reorganized Debtors for payment of any such tax obligations. The Reorganized Debtors may require, as a condition to the receipt of a distribution, that the Holder of an Allowed Claim complete the appropriate Form W-8 or Form W-9, as applicable to each Holder. If such Holder fails to comply with such request within one year, such distribution shall be deemed an unclaimed distribution.

68.    **Exemption from Certain Transfer Taxes and Recording Fees.** To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfer from a Debtor to a Reorganized Debtor or to any entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any

deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

69.    **Pre-Effective Date Injunctions or Stays.**    All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Chapter 11 Cases pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.

70.    **Retention and Enforcement and Release of Causes of Action.**    Except as otherwise provided in the Plan, or in any document, instrument, release or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b), the Debtors and their Estates are authorized to retain the Causes of Action including, without limitation, the Retained Causes of Action identified in the Plan Supplement; *provided, however,* that the Debtors and their Estates shall release all Causes of Action that may be brought pursuant to Bankruptcy Code section 547 against the Holders of Claims in Classes A4(a), A4(b) and B4. The Reorganized Debtors, as the successors in interest to the Debtors and their Estates, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all Causes of Action, including the Retained Causes of Action. The Debtors or the Reorganized Debtors

expressly reserve all rights to prosecute any and all Causes of Action, including the Retained
Causes of Action against any Person, except as otherwise expressly provided in the Plan, and no
preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion,
claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Cause
of Action or Retained Cause of Action upon, after, or as a consequence of Confirmation or the
occurrence of the Effective Date.   For the avoidance of doubt, the rights of the Debtors and
Reorganized Debtors with respect to the Company Specified Litigation Claims shall be as set
forth in the Specified Litigation Agreement and Article 4.5 of the Plan.

      71.    **Retention of Jurisdiction**. The Court may properly, and upon the
Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters
arising from or relating to the Chapter 11 Cases, including the matters set forth in Article X of
the Plan and Bankruptcy Code section 1142.

      72.    **Severability.**   The provisions of the Plan are (a) valid and enforceable
pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the
Debtors' consent and (c) non-severable and mutually dependent.

      73.    **Modifications to the Plan**.  Pursuant to Article 10.7 of the Plan, subject to
the terms of the Restructuring Support Agreement, the Debtors, with the consent of the Requisite
Consenting Parties, and in consultation with the Creditors Committee, may amend or modify the
Plan, the Plan Supplement, and any schedule or supplement hereto, at any time prior to the
Effective Date in accordance with the Bankruptcy Code, Bankruptcy Rules and any applicable
court order; *provided, however*, that the Debtors may make technical amendments or
modifications upon two (2) days advance notice to the Consenting Parties and the Creditors
Committee. Subject to certain restrictions and requirements set forth in Bankruptcy Code section

1127 and Bankruptcy Rule 3019 and those restrictions on modification set forth in the Plan and the Restructuring Support Agreement, the Debtors, subject to the reasonable consent of the Requisite Consenting Parties, have the express right to alter, amend or modify the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in this Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Interest of such Holder.

74. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, apply and are enforceable notwithstanding any otherwise applicable nonbankruptcy law.

75. **No Waiver.** Neither the failure of a Debtor to list a Claim or Interest in the Debtors' Schedules pursuant to Bankruptcy Code section 521, the failure of a Debtor to object to any Claim, Administrative Expense Claim or Interest for purposes of voting, the failure of a Debtor to object to a Claim, Administrative Expense Claim or Interest prior to the Confirmation Date or the Effective Date, nor the failure of a Debtor to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtor with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of a Debtor or a Reorganized Debtor or their respective successors,

either before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to (a) object to or examine such Claim, Administrative Expense Claim or Interest, in whole or in part, or (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the Holder of such Claim, Administrative Expense Claim or Interest.

76.    **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, Reorganized Debtors, or any entity created to effectuate the provisions of the Plan.

77.    **Revised Definition of "Specified Litigation Parties."** Article 1.164 shall be revised as follows: *"Specified Litigation Parties"* means Greg MacDonald, Dennis Smythe, Richard E. Schaden, Richard F. Schaden, Frederick H. Schaden, Andrew R. Lee, Patrick E. Meyers, John M. Moore, Thomas M. Ryan, and/or any other former directors, officers, managers, equity owners, agents and/or employees of the Debtors that served in any such capacities only prior to January 24, 2012, and any entities related to or affiliated with any of the foregoing, including, but not limited to, Cervantes Capital LLC and Consumer Capital Partners; *provided, however*, that such defined term shall not include Charles Cerny, William Flaherty, Ian Hannah, Mark Heller, Amy Powers, Robert Stewart, Brandon Turner, John Gallivan, Ryan McMonagle or Regina Riley.

78.    **Adjournment of Certain Cure Objections.** The hearings on (a) the *Objection of Barnes & Thornburg LLP to Proposed Cure Amount in Connection with Assumption of Executory Contract* [Docket No. 273] (the *"B&T Objection"*); (b) *Nupetco*

*Highland LLC's Objection to Proposed Cure Amount* [Docket No. 278] (the *"Nupetco Objection"*); (c) the *Objection of Sabert Corporation to Debtors' Proposed Cure Amount in Connection with Assumption of Executory Contract* (the *"Sabert Objection"*) and (d) the *Objection of Packaging Corporation of America to Proposed Cure Amount in Connection with Assumption of Executory Contract* [Docket No. 314) (the *"PCA Objection"* and collectively with the B&T Objection, the Nupetco Objection and the Sabert Objection, the *"Cure Objections"*) have been adjourned to June 4, 2014 at 9:30 a.m.  Any issues raised in the Cure Objections shall not be governed by this Confirmation Order, and all parties' rights with respect thereto are reserved.

79.    **Notice of Confirmation Order and Effective Date.**  The Reorganized Debtors shall serve notice of entry of this Confirmation Order and notice of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the *"Confirmation Order and Effective Date Notice"*) in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims or Interests, the Core Notice Parties, all parties to executory contracts and unexpired leases with the Debtors, and all other parties in interest in the Chapter 11 Cases, including the U.S. Trustee within five (5) business days of the occurrence of the Effective Date.  Notwithstanding the above, no notice of Confirmation or the Effective Date or service of any kind shall be required to be mailed or made upon any Person to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person, or are otherwise aware, of such Person's new address.  The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no further notice is necessary.

80. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127.

81. **References to and Omissions of Plan Provisions.** References to articles, sections and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Court that the Plan be confirmed in its entirety and incorporated herein by this reference.

82. **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

83. **Confirmation Order and Plan Control.** Except as otherwise provided in the Plan, in the event of any inconsistency between the Plan and the Disclosure Statement, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall control. In the event of any inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall control.

84. **Waiver of Stay.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

85.    **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.  All interim orders entered by the Court in the Chapter 11 Cases that are in effect are deemed final by operation of this Final Order.

Wilmington, Delaware
Date: May 2, 2014

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE